UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :

    - v. -                       :

BENJAMIN WEY,                      :
    a/k/a "Benjamin Wei,"
    a/k/a "Tianbing Wei," and  :
SEREF DOGAN ERBEK,
    a/k/a "Dogan Erbek,"       :

        Defendants.          :

- - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9\8\15

**INDICTMENT**

15 Cr. **15 CRIM 611**

JUDGE NATHAN

**COUNT ONE**
(Conspiracy to Commit Securities Fraud and Wire Fraud)

    The Grand Jury charges:

Relevant Persons and Entities

    1.   At all times relevant to this Indictment, New York Global Group, Inc. ("NYGG") was a Delaware corporation doing business in New York, New York.  In conjunction with a New York Global Group entity located in Beijing, China ("NYGG-Asia"), NYGG offered consulting services, among other things, to China-based operating companies that wished to raise funds in the U.S. capital markets.

    2.   At all times relevant to this Indictment, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, was the founder and President of NYGG and oversaw the operations of NYGG-Asia.

3.   At all times relevant to this Indictment, SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendant, was a resident of Switzerland and was employed by a Geneva-based financial services firm.

4.   At certain times relevant to this Indictment, SmartHeat, Inc. ("SmartHeat") was a China-based manufacturer of heat exchangers used in the industrial and residential markets in China to reduce the need for coal.  At various times, SmartHeat's common stock was traded on the Nasdaq Stock Market LLC ("Nasdaq") under the ticker symbol "HEAT."

5.   At certain times relevant to this Indictment, Deer Consumer Products, Inc. ("Deer") was a China-based manufacturer and seller of small kitchen appliances for the domestic Chinese market and export markets.  At various times, Deer's common stock was traded on the Nasdaq under the ticker symbol "DEER."

6.   At certain times relevant to this Indictment, CleanTech Innovations, Inc. ("CleanTech") was a China-based manufacturer of windmills.  At various times, CleanTech's common stock was traded on the Nasdaq under the ticker symbol "CTEK."

<u>Overview of the Conspiracy</u>

7.   From at least in or about 2007 through at least in or about 2011, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendants, and others known and unknown, conspired to defraud

2

the investing public by orchestrating and facilitating (1) WEY's undisclosed amassing of beneficial ownership of more than five percent of the stock of certain publicly traded companies; and (2) manipulation of the market price and demand for the stock of those companies in which WEY had covertly amassed substantial beneficial ownership interests.

Use of Nominees to Acquire Substantial
Ownership Interests in Shell Companies

8.   In furtherance of the conspiracy and scheme to defraud, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, caused certain entities (the "Nominee Entities") that were owned or otherwise associated with a sibling of WEY ("Wey's Sibling"),[1] certain other members of WEY's extended family, and employees of NYGG-Asia (collectively, the "Nominee Owners" and, together with the Nominee Entities, the "Nominees") to obtain a substantial portion of the shares of certain U.S. shell companies (the "Shell Companies") that were trading on the National Association of Securities Dealers' Over-the-Counter Bulletin Board, a regulated quotation service that displays real-time quotes, last-sale prices, and volume information for certain over-the-counter securities.  For example, between in or about 2007 and in or about 2010, WEY caused certain of the Nominees to obtain substantial portions of

---

[1] At all times relevant to this Indictment, Wey's Sibling resided in China and was employed as a manager of NYGG-Asia.

shares of the following three Shell Companies:   Pacific Goldrim Resources, Inc.; Tag Events Corp.; and Everton Capital Corp.

9.   Although records associated with the Nominee Entities, all of which were incorporated offshore, identify certain of the Nominee Owners as the sole shareholders, directors, and/or signatories of the Nominee Entities, in truth and in fact, and unbeknownst to the investing public, the Nominee Entities were actually controlled by BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant.   Among other things, WEY possessed and exercised investment authority over shares of stock held in the names of the Nominees; closely tracked the Nominees' holdings, including gains and losses on stock positions; and directed other parties to take action in matters pertaining to the Nominees, including, for example, the transfer of shares of stock between Nominees.   In executing the scheme to defraud, WEY routinely directed SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendant, who well knew of WEY's control over the Nominees, to conduct stock trading for accounts held in the names of the Nominees.

<u>The Reverse Merger Transactions</u>

10.   As a further part of the conspiracy and scheme to defraud, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, through NYGG-Asia, identified various Chinese operating companies (the "Operating Companies") desirous

4

of raising capital in the U.S. markets, and offered NYGG's services in advising and facilitating reverse merger transactions for the purpose of gaining access to those capital markets. WEY intentionally caused the Operating Companies to merge with particular Shell Companies of which WEY, through the Nominees, held significant ownership stakes.

11. The management of each Operating Company gained ownership of a majority of the outstanding shares of the newly formed publicly traded company. However, management's holdings in these new companies (the "Issuers") typically were subject to lock-up agreements which precluded disposition of management's stock for a period of years.

12. Among the Issuers born of the above-described reverse merger transactions were SmartHeat, Deer, and CleanTech.

<u>Undisclosed Beneficial Ownership of More</u>
<u>Than Five Percent of the Issuers' Stock</u>

13. As a further part of the conspiracy and scheme to defraud, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, caused the Nominees to retain undisclosed control of more than five percent of the shares of each of the Issuers -- shares originally of the Shell Companies that, by virtue of the reverse merger transactions, became shares of the Issuers. Because, as noted, the Issuers' management typically entered into lockup agreements preventing disposition of their

own interests in the Issuers, WEY -- through the Nominees -- at various points effectively controlled a substantial portion of a given Issuer's public stock float. Because WEY, among other things, exercised investment authority over the shares of the Issuers held in the names of the Nominees, WEY was required under Section 13(d) of the Securities Exchange Act of 1934 ("Section 13(d)") and Securities and Exchange Commission Regulation 13D ("Regulation 13D") promulgated thereunder to report his beneficial ownership within 10 days of the acquisition of shares in excess of five percent.

14. As a further part of the conspiracy and scheme to defraud, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, intentionally failed to file the requisite reports under Section 13(d) and Regulation 13D, even though he was well aware of this reporting requirement. In fact, to further obscure from the investing public the extent to which he owned and exercised control over Issuers' stock, and with the assistance of SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendant, WEY purposefully caused the Nominees' holdings to be structured in such a way as to ensure that no single one of the Nominees held a greater-than-five percent beneficial ownership interest in any of the Issuers. For example, on or about July 21, 2010, WEY sent an email to ERBEK, instructing ERBEK to allocate shares among the Nominees so that no one Nominee

possessed more than five percent of the outstanding shares of
Deer stock.   In another email sent by WEY to ERBEK on or about
September 20, 2010, WEY further exhibited his awareness of and
intent to avoid his obligations under Section 13(d) and
Regulation 13D by explaining that, "Under SEC filing
requirements, any individual or entity owning more than five
percent of a company's total outstanding shares must file SEC
13D or 13G forms."

### Deception to Gain Listing of Issuers on the Nasdaq

15.   At or about the time that the Issuers emerged from the
above-described reverse merger transactions, their common stock,
like the stock of the Shell Companies that preceded them, traded
only in over-the-counter markets and in low volumes.   The
Issuers' stock could not be sold in significant quantities in
the open market until a liquid market developed and the shares
traded on an exchange.   To address this problem, and in
furtherance of the conspiracy and scheme to defraud, BENJAMIN
WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant,
caused the Issuers' management to apply for listings on the
Nasdaq, which would have the effect of increasing market
interest and liquidity in the Issuers' securities.

16.   As BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing
Wei," the defendant, well knew, to secure a listing on the
Nasdaq, an issuer had to meet a series of listing standards

designed to ensure, among other things, that there would be
sufficient public float, investor base, and trading interest to
provide the depth and liquidity necessary to promote fair and
orderly markets in each of the Issuers.  Among other things,
Nasdaq required an issuer to have at least 300 "round-lot"
shareholders, defined as shareholders owning at least 100 shares
of common stock each.

17.  To satisfy the Nasdaq's round-lot shareholder
requirement, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing
Wei," the defendant, deceptively caused shares of some of the
Issuers to be transferred from certain of the Nominees to dozens
of WEY's friends, employees, and business associates and/or
their family members as gifts or unsolicited bonuses in
increments of 100 or more, thereby artificially inflating the
number of shareholders in each of the Issuers.  In certain
instances, round-lot share holdings were issued in the names of
individuals who never actually received the share certificates
and had no idea they owned such shares.  The Nasdaq repeatedly
informed attorneys for the Issuers, with whom WEY was in
frequent contact about the 300 round-lot shareholder
requirement, that gifted shares could not contribute to the
minimum shareholder requirement for listing on its exchange
because such shares did not establish "sufficient public float,
investor base, and trading interest" in the company.

Nevertheless, through the deceptive device of stock giveaways to friends, employees, and business associates (and/or their family members), WEY was able to create the appearance of a bona fide shareholder base in the newly formed Issuers. The ruse was in each instance successful. Nasdaq approved the listings of the subject Issuers.

### Manipulation of Issuers' Stock Prices

18.   As a further part of the conspiracy and scheme to defraud, both before and after an Issuer became listed on Nasdaq, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendants, and others known and unknown, caused the share price of its stock to be manipulated in various ways. For example, on multiple occasions, WEY caused two retail brokers located in Manhattan to solicit their customers to buy shares of common stock of the Issuers, often on margin, while those brokers simultaneously actively discouraged the sale of these stocks by their customers, so as to artificially maintain the stock price of each Issuer. Similarly, WEY explicitly instructed ERBEK to maintain the share prices of at least two Issuers' stock held in certain of the Nominees' accounts. For example, on or about February 7, 2011, WEY sent an email to ERBEK stating, "Cleantech just traded at $4.50 per share. Please make sure the trader buys the stock at $5 per share, stay at $5 per share bid price,

not less.  Please make sure this happens right away."  ERBEK
agreed to do so, but cautioned WEY, "Obviously, we need to be
careful to give such orders/make such comments.  I may explain
it over the phone; please call me if you have time."

19.  In addition, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a
"Tianbing Wei," the defendant, orchestrated certain match trades
in the securities of the Issuers, for the purpose of
manipulating the prices of those stocks.  For example, in or
about early July 2010, shortly after CleanTech was listed at an
initial offering price of $3.00 per share, WEY caused the
purchase for a U.S. brokerage account in the name of Wey's
Sibling of approximately 1,000 shares of CleanTech stock, while
also causing a Singapore brokerage account in the name of one of
the Nominee Entities to sell the exact same number of shares.
Both the sale and the purchase were done at a price of $5.10 per
share -- 70% above the $3.00 initial offering price.  After this
match trade had been executed, WEY used email to tout to
prospective investors the apparent 70% increase in CleanTech's
stock price.

20.  At the same time that BENJAMIN WEY, a/k/a "Benjamin
Wei," a/k/a "Tianbing Wei," and SEREF DOGAN ERBEK, a/k/a "Dogan
Erbek," the defendants, were causing the share prices of the
Issuers' stock to be manipulated in the ways described above,
WEY caused shares held in the name of Wey's Sibling and other

10

Nominees at brokerage accounts in the United States and overseas to be sold, thereby generating millions of dollars in proceeds at artificially inflated prices.

### Reaping and Laundering Profits from the Scheme

21.   In furtherance of the conspiracy and scheme to defraud, from in or about 2007 through in or about 2011, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, caused millions of dollars' worth of the Issuers' stock and cash generated from sales of that stock to be transferred from accounts located in the United States in the name of Wey's Sibling and certain of the other Nominees to accounts located overseas, including in Switzerland and Hong Kong.

22.   After the proceeds were moved through these overseas accounts held in the names of Wey's Sibling and certain of the other Nominees, millions of dollars were repatriated to the United States for the benefit of BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant.  For example, more than $20 million in cash was transferred from a Hong Kong account in the name of Wey's Sibling to bank accounts in the United States that WEY and/or WEY's wife controlled.  WEY and his wife used that money to purchase, among other things, an apartment at the Ritz-Carlton Hotel in the Battery Park neighborhood of New York, New York.  These transfers of funds

11

were generally reported on tax returns under WEY's wife's name as untaxable "gifts" from a foreign person.

### Statutory Allegations

23.    From at least in or about 2007 through at least in or about 2011, in the Southern District of New York and elsewhere, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and DOGAN ERBEK, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, namely, (a) fraud in connection with the purchase and sale of securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; and (b) wire fraud, in violation of Title 18, United States Code, Section 1343.

### Objects of the Conspiracy

### Securities Fraud

24.    It was a part and an object of the conspiracy that BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, would and did use and employ manipulative and deceptive devices and contrivances in connection with the

purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making and causing to be made untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

## Wire Fraud

25.  It was further a part and an object of the conspiracy that BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

Overt Acts

26.   In furtherance of the conspiracy and to effect the illegal objects thereof, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendants, and others known and unknown, caused the following overt acts, among others, to be committed in the Southern District of New York and elsewhere:

a.   On or about February 7, 2011, WEY sent an email from New York, New York to ERBEK in Switzerland for the purpose of causing the market price and demand for the common stock of CleanTech to be manipulated artificially.

b.   On or about February 7, 2011, ERBEK sent an email from Switzerland to WEY in New York, New York, advising WEY that ERBEK was working to ensure that the common stock of CleanTech would be traded at an artificially manipulated price.

(Title 18, United States Code, Section 371.)

COUNT TWO
(Securities Fraud)

The Grand Jury further charges:

27.   The allegations contained in paragraphs 1 through 22 and 26 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

28.   From at least in or about 2007 through at least in or about 2011, in the Southern District of New York and elsewhere,

14

BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and
SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendants,
willfully and knowingly, directly and indirectly, by use of the
means and instrumentalities of interstate commerce, the mails,
and the facilities of national securities exchanges, used and
employed manipulative and deceptive devices and contrivances, in
connection with the purchase and sale of securities, in
violation of Title 17, Code of Federal Regulations, Section
240.10b-5, by (a) employing devices, schemes and artifices to
defraud; (b) making untrue statements of material fact and
omitting to state material facts necessary in order to make the
statements made, in the light of the circumstances under which
they were made, not misleading; and (c) engaging in acts,
practices, and courses of business which operated and would
operate as a fraud and deceit upon persons, to wit, WEY, with
the assistance of ERBEK and others, secretly amassed and
concealed a beneficial ownership interest in excess of five
percent of the common stock of each of SmartHeat, Deer, and
CleanTech, and manipulated and caused to be manipulated the
market price and demand for the common stock of those public
companies.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17,
   Code of Federal Regulations, Section 240.10b-5; and Title 18,
                United States Code, Section 2.)

15

## COUNT THREE
### (Securities Fraud)

The Grand Jury further charges:

29.   The allegations contained in paragraphs 1 through 22 and 26 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

30.   From at least in or about 2007 through at least in or about 2011, in the Southern District of New York and elsewhere, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendants, knowingly and intentionally executed a scheme and artifice to (a) defraud persons in connection with securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under section 15(d) of the Securities Exchange Act of 1934, to wit, the common stock of SmartHeat, Deer, and CleanTech; and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under section 15(d) of the Securities Exchange Act of

1934, to wit, the common stock of SmartHeat, Deer, and CleanTech.

(Title 18, United States Code, Sections 1348 and 2.)

### COUNT FOUR
### (Wire Fraud)

The Grand Jury further charges:

31.  The allegations contained in paragraphs 1 through 22 and 26 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

32.  From at least in or about 2007 through at least in or about 2011, in the Southern District of New York and elsewhere, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and DOGAN ERBEK, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, WEY and ERBEK sent certain email communications between New York, New York and, among other places, Switzerland, in furtherance of a scheme

to manipulate the market price and demand for the common stock
of SmartHeat, Deer, and CleanTech.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIVE
### (Failure to Disclose Ownership in
### Excess of Five Percent of Deer Stock)

The Grand Jury further charges:

33.  The allegations contained in paragraphs 1 through 22
and 26 above are hereby repeated, re-alleged, and incorporated
by reference as if fully set forth herein.

34.  From at least in or about April 2009 through at least
on or about September 20, 2010, in the Southern District of New
York and elsewhere, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a
"Tianbing Wei," the defendant, a person who acquired directly
and indirectly the beneficial ownership of an equity security of
a class which was registered pursuant to Section 78l of Title 15
of the United States Code, and was directly and indirectly the
beneficial owner of more than five per centum of such class, to
wit, common stock of Deer, willfully and knowingly failed,
within 10 days after such acquisition, to file with the U.S.
Securities and Exchange Commission ("SEC") a statement
containing any of the information set forth in Title 15, United
States Code, Section 78m(d)(1)(A) through (E), and such
additional information as the SEC by rules and regulations
prescribed as necessary and appropriate in the public interest

and for the protection of investors, to wit, WEY intentionally failed to disclose his beneficial ownership interest in excess of five percent of Deer common stock.

(Title 15, United States Code, Sections 78m(d) & 78ff; Title 18, United States Code, Section 2; Title 17, Code of Federal Regulations, Section 240.13d-1.)

## COUNT SIX
### (Failure to Disclose Ownership in Excess of Five Percent of CleanTech Stock)

The Grand Jury further charges:

35.   The allegations contained in paragraphs 1 through 22 and 26 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

36.   From at least in or about December 2010 through at least in or about December 2011, in the Southern District of New York and elsewhere, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, a person who acquired directly and indirectly the beneficial ownership of an equity security of a class which was registered pursuant to Section 78l of Title 15 of the United States Code, and was directly and indirectly the beneficial owner of more than five per centum of such class, to wit, common stock of CleanTech, willfully and knowingly failed, within 10 days after such acquisition, to file with the U.S. Securities and Exchange Commission ("SEC") a statement containing any of the information set forth in Title 15, United States Code, Section 78m(d)(1)(A) through (E), and such

19

additional information as the SEC by rules and regulations prescribed as necessary and appropriate in the public interest and for the protection of investors, to wit, WEY intentionally failed to disclose his beneficial ownership interest in excess of five percent of CleanTech common stock.

(Title 15, United States Code, Sections 78m(d) & 78ff; Title 18, United States Code, Section 2; Title 17, Code of Federal Regulations, Section 240.13d-1.)

### COUNT SEVEN
### (Money Laundering)

The Grand Jury further charges:

37. The allegations contained in paragraphs 1 through 22 and 26 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

38. From at least in or about 2007 through at least on or about June 8, 2011, in the Southern District of New York and elsewhere, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, knowingly conducted and attempted to conduct such a financial transaction, affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, to wit, fraud in the sale of securities and wire fraud, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the

source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, WEY moved, or caused to be moved, millions of dollars from the sale of shares of SmartHeat, Deer, and CleanTech stock through various accounts located in the United States and overseas before repatriating that money to the United States, in order to conceal that those funds were obtained in connection with his fraud on the investing public.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

## COUNT EIGHT
### (Money Laundering)

The Grand Jury further charges:

39.    The allegations contained in paragraphs 1 through 22 and 26 above are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

40.    From at least in or about 2007 through at least on or about September 23, 2011, in the Southern District of New York and elsewhere, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, knowingly transported, transmitted, and transferred, and attempted to transport, transmit, and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is,

offenses involving fraud in the sale of securities and wire fraud; to wit, WEY transferred, and caused to be transferred, via international wire payments initiated outside of the United States, millions of dollars from the sale of shares of SmartHeat, Deer, and CleanTech stock to accounts in the United States, including into the operating accounts of NYGG, in order to promote the carrying on of the securities and wire fraud schemes alleged in Counts One through Four of this Indictment. (Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

### FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH FOUR

41.  As the result of committing one or more of the offenses alleged in Counts One through Four of this Indictment, BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the above offenses, including, but not limited to, a sum of United States currency, representing the amount of proceeds obtained as a result of the charged offenses.

### FORFEITURE ALLEGATION AS TO COUNTS SEVEN AND EIGHT

42.  As the result of committing the money laundering offenses charged in Counts Seven and Eight of this Indictment,

BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," the defendant, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1) any property, real and personal, involved in such offenses, and any property traceable to such property, including but not limited to a sum in United States currency that in aggregate is property which was involved in the money laundering offenses charged in Counts Seven and Eight of the Indictment or is traceable to such property.

<u>Substitute Assets Provision</u>

43.   If any of the above-described forfeitable property, as a result of any act or omission of BENJAMIN WEY, a/k/a "Benjamin Wei," a/k/a "Tianbing Wei," and SEREF DOGAN ERBEK, a/k/a "Dogan Erbek," the defendants,

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been comingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any

23

other property of WEY and ERBEK, up to the value of the

forfeitable property described above.

(Title 15, United States Code, Sections 78j(b), 78ff;
Title 18, United States Code, Sections 981, 982 and 1956;
Title 21, United States Code, Section 853(p);
Title 28, United States Code, Section 2461; and
Title 17, Code of Federal Regulations, Section 240.10b-5.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

### UNITED STATES OF AMERICA

### - v. -

**BENJAMIN WEY,**
a/k/a "Benjamin Wei,"
a/k/a "Tianbing Wei," and
SEREF DOGAN ERBEK,
a/k/a "Dogan Erbek,"

**Defendants.**

---

### INDICTMENT

15 Cr.

(15 U.S.C. §§ 78m(d), 78j(b) & 78ff;
17 C.F.R. §§ 240.10b-5 & 240.13d-1;
18 U.S.C. §§ 2, 371, 1343,
1348 & 1956)

PREET BHARARA
United States Attorney

**A TRUE BILL**

*Yolanda Ocasio*
_____
Foreperson

---

9/8/15 - Filed Sealed Indictment
cc   Arw's issued
                    J Maas
                    USM2