**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLAN SCOTT, DERIVATIVELY AND ON BEHALF OF 6D GLOBAL TECHNOLOGIES, INC., : : : : | |
| Plaintiff, : | Case No. 1:15-cv-09691-RWS |
| : | |
| v. : | |
| : | |
| BENJAMIN TIANBING WEI A/K/A BENJAMIN WEY; NEW YORK GLOBAL GROUP, INC.; NYGG (ASIA) LTD., TEJUNE KANG; MARK SZYNKOWSKI; ADAM HARTUNG; DAVID S. KAUFMAN; TERRY MCEWEN; ANUBHAV SAXENA; PIOTR A. CHRZASZCZ, and MICHAEL BANNOUT, : : : : : : : : : : : | |
| Defendants, : | |
| and : | |
| : | |
| 6D GLOBAL TECHNOLOGIES, INC., : | |
| : | |
| Nominal Defendant. : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................... 1

II.   SUMMARY OF THE LITIGATION ..................................................................... 3

   A.   Procedural Overview ...................................................................................... 3

   B.   Settlement Negotiations ................................................................................. 4

III.  THE TERMS OF THE PROPOSED SETTLEMENT ........................................... 6

IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............... 6

   A.   Legal Standards for Preliminary Approval of the Settlement ....................... 6

   B.   The Settlement Is Fair, Reasonable, and Adequate ...................................... 8

      i.   The Settlement Is the Result of Non-Collusive, Arm's-Length Negotiations ................ 8

      ii.  The Corporate Governance Reforms Achieved Through Settlement Will Benefit 6D Global ................................................................................ 11

V.   THE NOTICE TO 6D GLOBAL'S SHAREHOLDERS SATISFIES THE REQUIREMENTS OF RULE 23.1(c) AND DUE PROCESS ............................. 13

VI.  PROPOSED SCHEDULE OF EVENTS ............................................................. 15

VII. CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                    **Page Number(s)**

*Arace v. Thompson*,
   2011 U.S. Dist. LEXIS 93105 (S.D.N.Y. Aug. 17, 2011) .................................................. 13, 14

*Armstrong v. Board of School Directors*,
   616 F.2d 305 (7th Cir. 1980) ...................................................................................... 7

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993)......................................................................................11-12

*Chi Kong Leung v. Home Boy Rest.*,
   2009 U.S. Dist. LEXIS 12556 (S.D.N.Y. Feb. 18, 2009).......................................... 11

*Cohn v. Nelson*,
   375 F.Supp.2d 844 (E.D. Mo. 2005).......................................................................... 12

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)........................................................................................... 8

*In re AOL Time Warner S'holder Derivative Litig.*,
   No. 02 CIV. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260 (S.D.N.Y. Sept. 6, 2006) ...... 6, 9, 13

*In re Am. Capital S'holder Derivative Litig.*,
   2013 U.S. Dist. LEXIS 90973 (D. Md. June 28, 2013) ..........................................9-10

*In re Drexel Burnham Lambert Grp. Inc.*,
   995 F.2d 1138 (2d Cir. 1993)..................................................................................... 15

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   No. 04 CIV. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009)............... 8

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................................... 7

*In re NVIDIA Corp. Derivative Litig.*,
   2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 22, 2008) ....................................... 12

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ....................................................................................... 12

*In re PMC-Sierra, Inc. Deriv. Litig.*,
   No. 06 Civ. 05330 (RS), 2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010).................. 15

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)........................................................................... 8

*Klein ex rel. SICOR, Inc. v. Salvi*,
   2004 U.S. Dist. LEXIS 4844 (S.D.N.Y. Mar. 26, 2004) ........................................... 14

*Maher v. Zapata Corp.*,

714 F.2d 436 (5th Cir. 1983) ............................................................................... 3, 6, 12

*Mathes v. Roberts*,
   85 F.R.D. 710 (S.D.N.Y. 1980) ........................................................................ 6, 13

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ............................................................................................. 11

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................. 14

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   2001 U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 10, 2001) ..................................... 9

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................. 8

*Susquehanna Corp. v. Korholz*,
   84 F.R.D. 316 (N.D. Ill 1979) ............................................................................ 13

*United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*,
   447 F.2d 647 (7th Cir. 1971) .............................................................................. 14

*Yong Soon Oh v. AT&T Corp.*,
   225 F.R.D. 142 (D.N.J. 2004) ............................................................................ 14

**Other Authorities**                                                      **Page Number(s)**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002). ........................... 6-7

Fed. R. Civ. P. 23.1 ............................................................................ 1, 6, 12, 13

*Manual for Complex Litigation* (West 1977) ............................................................... 7

*Use of Electronic Media for Delivery Purposes*,
   SEC Release No. 33-7233, 60 Fed. Reg. 53458, 53459 (Oct. 6, 1995) ................................... 14

## I.  INTRODUCTION

Pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, and upon the Stipulation and Agreement of Compromise, Settlement and Release dated November 15, 2017 (the "Stipulation"[1]), Allan Scott ("Scott" or "Derivative Plaintiff"), plaintiff to the above-captioned shareholder derivative action (the "Derivative Action") filed derivatively on behalf of 6D Global Technologies, Inc. ("6D Global," the "Company," or the "Nominal Defendant") respectfully submits this Memorandum of Law in support of his Unopposed Motion for Preliminary Approval of Proposed Settlement.  The proposed Settlement (as defined herein and in the Stipulation) and its terms are offered for preliminary approval as being fair, reasonable, and adequate, and the proposed forms and means of notice of the Settlement is offered as reasonably detailed and disseminated to apprise Current 6D Shareholders of the pendency of the Settlement and afford them a fair opportunity to present any objections.

The Derivative Action is brought derivatively on behalf of 6D Global against the Individual Defendants,[2] who are current and former officers and directors of the Company, and defendants Benjamin Tianbing Wei a/k/a/ Benjamin Wey ("Wey"), New York Global Group, Inc. ("NYGG") and NYGG (Asia), Ltd. ("NYGG-Asia").[3]  *See* Stip., I.A.  The Derivative Action alleges claims for, *inter alia*: (1) breach of fiduciary duty; (2) unjust enrichment; and (3) violations of Section 14

---

[1] All capitalized terms herein, unless otherwise stated herein, have the same definitions as set forth in the Stipulation, which is attached as Exhibit 1 to the Declaration of Timothy W. Brown in support of Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Derivative Settlement ("Brown Decl. or "Brown Declaration").  The Brown Declaration is filed concurrently herewith.

[2] The term "Individual Defendants" refers to, collectively: Tejune Kang ("Kang"), Mark Szynkowski ("Szynkowski"), Adam Hartung ("Hartung"), David S. Kaufman, Terry McEwen, Anubhav Saxena, Piotr A. Chrzaszcz, and Michael Bannout. The Individual Defendants together with Nominal Defendant 6D Global are referred to as the "6D Defendants." The 6D Defendants together with Derivative Plaintiff are referred to as the "Settling Parties."

[3] Defendants Wey, NYGG, and NYGG-Asia are not parties to the Settlement. Wey, NYGG and NYGG-Asia together with the 6D Defendants are referred to collectively as the "Defendants."

of the Securities and Exchange Act of 1934 (the "Exchange Act"). Stip., I.A. Upon Court approval, the Settlement will fully and finally compromise, settle, release, and discontinue the Released Claims. *See* Stip., IV.4.

The Settlement is the product of long-standing litigation and many months of negotiations conducted at arm's-length by competent and experienced counsel, with the assistance of experienced and distinguished mediators Jed Melnick and Simone Lelchuk of JAMS (the "Mediators"). Stip., I.B. Pursuant to the terms of the Settlement, 6D Global will, within sixty (60) days of final approval of the Settlement, take all necessary steps to adopt and implement corporate governance reforms, which are set forth in Exhibit A to the Stipulation, and which were achieved by Derivative Plaintiff through the prosecution and settlement of the Derivative Action (the "Reforms"). Stip., IV.2.

The Reforms are designed to strengthen 6D Global's internal controls over compliance and and enhance general corporate governance through director and employee education. *See* Stip., Ex. A. 6D Global agrees that the implementation, continuation, and documentation of these measures is based on the efforts of Derivative Plaintiff's Counsel who negotiated for the same. Stip., IV.2. The Settling Parties also agree that the Reforms "confer benefits on 6D Global and the Current 6D Shareholders." Stip., I.B, II. After the Settling Parties agreed to the Reforms, the Settling Parties negotiated and agreed to an award of Derivative Plaintiff's Counsel fees and expenses in an amount up to seventy-five thousand dollars ($75,000), including all costs and disbursements (the "Fee and Expense Amount"), which shall include a service award up to one

thousand two hundred and fifty dollars ($1,250) for Derivative Plaintiff (the "Service Award"). Stip., I.B., IV.5.1, 5.6.[4]

For the reasons set forth herein, Derivative Plaintiff respectfully moves the Court to enter the Settling Parties' Proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), attached as Exhibit C to the Stipulation, which: (i) grants preliminary approval of the proposed Settlement on the terms set forth in the Stipulation and dismissal of the Derivative Action with prejudice, upon the terms set forth in the Stipulation; (ii) approves, as to the content and the means of distribution of the Notice of Proposed Settlement of Stockholder Derivative Action (the "Notice") and of the Summary Notice of Proposed Settlement (the "Summary Notice"), attached as Exhibit D and E, respectively, to the Stipulation; and (iii) sets a date for a hearing to determine whether the proposed Settlement should be finally approved (the "Settlement Hearing").  In determining whether preliminary approval is warranted, the issue before the Court is whether the Settlement is within the range of what might be found fair, reasonable, and adequate, such that the Notice and Summary Notice should be provided to Current 6D Shareholders, and the Settlement Hearing should be scheduled.[5]  As detailed herein, the Settlement easily meets this standard, and therefore the Court should preliminarily approve the Settlement, order that the Notice and Summary Notice be provided to Current 6D Shareholders in the form and manner proposed below, and schedule the Settlement Hearing.

## II.     SUMMARY OF THE LITIGATION

### A.     Procedural Overview

---

[4] Additionally, the 6D Defendants shall cause their D&O Carrier to pay to Derivative Plaintiff's Counsel five hundred dollars ($500) for uploading the Stipulation and Exhibits A-F, including the Notice, to its firm website and for maintaining the link thereto. Stip., I.B., IV.3.3.

[5] *See, e.g.*, *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).

On December 11, 2015, Derivative Plaintiff commenced this Derivative Action by filing a verified shareholder derivative complaint on behalf of 6D Global against certain of 6D Global's then current and former officers and directors, and certain third parties.  Stip., I.A.

Prior to the filing of the Derivative Action, a securities class action styled *Castillo IV v. 6D Global Technologies, Inc., et al.,* No. 15-CV-8061-RWD, was filed in this Court against 6D Global and others alleging violations of federal securities laws (the "Class Action").  The Class Action and the Derivative Action were deemed "related" cases.  Stip., I.A.

Given the relatedness of the actions, the Derivative Plaintiff, 6D Global and the Individual Defendants stipulated, on February 16, 2016, to stay the Derivative Action pending the outcome of an anticipated motion to dismiss in the Class Action.  Stip., I.A.

Pursuant to the terms of the February 16, 2016 stipulation, the Derivative Plaintiff filed a verified shareholder derivative amended complaint on July 5, 2016 on behalf of 6D Global against certain of 6D Global's then current and former officers and directors, and certain third parties, alleging claims for breach of fiduciary duty, unjust enrichment, and violations of Section 14 of the Exchange Act.  Stip., I.A.

On August 19, 2016, a motion to dismiss was filed in the Class Action, which, on March 6, 2017, the Court granted with prejudice.  The plaintiffs in the Class Action filed a notice of appeal.  As of October 26, 2017, briefing of the appeal was completed.  Stip., I.A.

**B.**     **Settlement Negotiations**

Beginning as early as May 18, 2016, the Settling Parties commenced arm's length settlement communications.  On July 28, 2016, Derivative Plaintiff's Counsel sent an extensive settlement demand letter to counsel for 6D Global and the Individual Defendants setting forth certain proposed corporate governance reforms at 6D Global and certain monetary consideration

to be paid to 6D Global on behalf of the 6D Defendants by 6D Global's insurance carrier (the "D&O Carrier").  The 6D Defendants at that time began to consider the proposed settlement terms set forth in Derivative Plaintiff's settlement demand letter.  Stip., I.B.

On March 7, 2017, the Settling Parties, and plaintiffs in five other cases that made claims against 6D Global, participated in a full-day global mediation.  Prior to the mediation, the Settling Parties briefed and submitted two rounds of mediation statements.  At the mediation, with the assistance of the Mediators, the Settling Parties had extensive, face-to-face discussions concerning corporate governance reforms to be implemented by 6D Global.  After the mediation, the Settling Parties continued sporadically to discuss settlement, and ultimately reached an agreement to settle the claims.  Stip., I.B.

As a condition of the Settlement, 6D Global shall adopt and/or implement (or continue to implement) certain corporate governance enhancements, which are set forth in Exhibit A to the Stipulation, subject to Court approval.  Stip., I.B.

After reaching agreement on these substantive corporate governance enhancements, the Settling Parties negotiated at arm's length the attorneys' fees and reimbursement of expenses to be paid to Derivative Plaintiff's Counsel in light of the substantial benefits the corporate governance enhancements confer upon 6D Global, subject to Court approval.  Stip., I.B.

As a result of the Settling Parties' arm's-length discussions and negotiations described above, the Settling Parties reached an agreement providing for the settlement of the Derivative Action, which is documented in the Stipulation and the Exhibits thereto, and which will include a release of all claims in the Derivative Action.  Stip., I.B.

The Settling Parties believe that a settlement at this juncture on the terms and conditions set forth herein is fair, reasonable, adequate, and in the best interests of 6D Global and its shareholders.  Stip., I.B.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The Settlement provides corporate governance reforms that are designed to reduce the likelihood that similar alleged lapses giving rise to the Derivative Action recur, and strengthens the Company's overall corporate governance practices and internal controls generally.  *See* Stip., Ex. A.  6D Global agrees that the implementation, continuation, and documentation of these measures is based on the efforts of Derivative Plaintiff's Counsel who negotiated for the same. Stip., IV.2.  The Settling Parties also agree that the Reforms "confer benefits on 6D Global and the Current 6D Shareholders." Stip., I.B, II.

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Legal Standards for Preliminary Approval of the Settlement

Under Rule 23.1 of the Federal Rules of Civil Procedure, the settlement of a derivative action requires the Court's approval. Courts have long found that the settlements of disputed claims, particularly in complex class actions and shareholder derivative litigation, are highly favored and not lightly rejected.  *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302 (SWK), 2006 U.S. Dist. LEXIS 63260, at *7-8 (S.D.N.Y. Sept. 6, 2006); *Mathes v. Roberts*, 85 F.R.D. 710, 713 (S.D.N.Y. 1980) (favoring settlements of derivative cases because such actions are "notoriously difficult and unpredictable"); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).

 "The role of the court and the criteria considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in the class action."  7 Alba Conte & Herbert

Newberg, *Newberg on Class Actions* § 22.110, at 476 (4th ed. 2002).  The procedure for the Court's review of such a settlement is well-established:

> District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."  This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify [stockholders] of the proposed settlement and to proceed with a fairness hearing. *Manual for Complex Litigation* § 1.46, at 53-55 (West 1977).  If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. [Stockholders] are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.  The goal of the fairness hearing is "to adduce all information necessary to enable the judge intelligently to rule on whether the proposed settlement is 'fair, reasonable and adequate.'" *Manual for Complex Litigation* at 57.

*Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980) (footnote omitted).

Therefore, to grant preliminary approval, the Court need only conclude that a settlement of the claims made in the Derivative Action on the agreed terms is within the range of possible approval for purposes of providing notice and holding a future fairness hearing and suffers from no "obvious deficiencies." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Manual for Complex Litigation*, § 23.14 (West 1977). Indeed, the granting of permission to send out a notice of settlement and hearing thereon is not tantamount to a finding that the proposed Settlement is fair and reasonable. It is, at most, a determination that there is what might be termed "probable cause" to submit the proposal to the Company's shareholders and hold a full-scale hearing as to its fairness.  *See Manual for Complex Litigation* § 1.46, at 55, n.10; *Armstrong*, 616 F.2d at 314, n.13.

Derivative Plaintiff submits that this Court can make such a determination of "probable cause" because the Settlement was negotiated in good faith and at arm's-length among experienced counsel, and resulted in benefits for nominal defendant 6D Global. Stip., I.B, IV.7.15.

7

Furthermore, given the complexities of the Derivative Action and the uncertainties inherent in shareholder litigation, the proposed Settlement eliminates the risk that 6D Global might not otherwise recover anything. *See* Stip., II, III. Settlement at this stage in the litigation will also limit the expense of risky, unnecessary, and prolonged litigation, which is in the best interests of 6D Global and the Settling Parties. *See* Stip., II, III. These reasons are more than sufficient to support Derivative Plaintiff's assertion that the Settlement is "within the range of possible approval" and should be preliminarily approved, as set forth below.

### B.   The Settlement Is Fair, Reasonable, and Adequate

#### i.   The Settlement Is the Result of Non-Collusive, Arm's-Length Negotiations

A "strong presumption of fairness" attaches to settlements negotiated at arm's-length by experienced counsel. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003). This presumption applies here because the Settlement was negotiated between experienced counsel possessing a firm understanding of the strengths and weaknesses of the claims and defenses in the Derivative Action, is the product of significant give and take by the Settling Parties, and was reached only after extensive arm's length negotiations, which included active involvement of the Mediators. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *11-12, 26 (S.D.N.Y. Dec. 23, 2009). Furthermore, the Second Circuit has noted that a "mediator's involvement in … settlement negotiations helps to ensure that the proceedings [are] free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Each of the Settling Parties was represented by zealous and able counsel who negotiated the terms of the Settlement aggressively, in good faith, and at arm's-length. The Settling Parties engaged in settlement discussions after they diligently evaluated the risks of

continued litigation and had sufficient information to support their decision regarding the fairness, adequacy, and reasonableness of the Settlement.  *See* Stip., II, III.

Indeed, Derivative Plaintiff's Counsel conducted an extensive investigation relating to the claims and the underlying events alleged in the Derivative Action, including, but not limited to: (1) inspecting, analyzing, and reviewing 6D Global's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) drafting and filing the initial shareholder derivative complaint; (3) researching the applicable law with respect to the claims asserted in the Derivative Action and the potential defenses thereto; (4) reviewing and analyzing the relevant pleadings in the action filed by the SEC against certain of the Defendants, captioned *United States Securities and Exchange Commission v. Benjamin Wey, et al.*, CA No. 15-7116-PKC (S.D.N.Y. September 10, 2015) and in the DOJ action against two individuals, including one of the Defendants, captioned *USA v. Benjamin Wey, et al.*, 15-CR-00611-AJN (S.D.N.Y. September 8, 2015); (5) drafting and filing the amended shareholder derivative complaint; (6) researching corporate governance issues and best practices; (7) preparing an extensive written settlement demand; (8) preparing an extensive mediation statement and a second mediation statement for the Mediators' eyes only; and (9) participating in extensive settlement discussions with the Mediators and Defendants' Counsel.  Stip., III.  This investigation bolstered Derivative Plaintiff's "assessment of the strengths and weaknesses of their positions and informed their negotiation strategies."  *In re AOL Time Warner S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 63260 at *9.  These facts support preliminary approval of the Settlement because "the litigation had progressed to a stage where the court and counsel could evaluate the merits of the case and the probable course of future litigation."  *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 U.S. Dist. LEXIS 20397, at *8 (N.D. Ill. Dec. 10, 2001); *see In re Am. Capital S'holder*

*Derivative Litig.*, 2013 U.S. Dist. LEXIS 90973, at *3-4 (D. Md. June 28, 2013) (granting preliminary approval of a derivative settlement that was reached before plaintiffs responded to a motion to dismiss).

Only after reaching agreement on the substantive corporate governance terms, did the Settling Parties commence negotiations at arm's-length regarding the Fee and Expense Amount to be paid to Derivative Plaintiff's Counsel in light of the benefits conferred upon the Company in connection with the Settlement. Stip., I.B. The Fee and Expense Amount is fair and reasonable in light of the benefits conferred upon 6D Global by the Settlement. *See* Stip., I.B.

Derivative Plaintiff's Counsel believe that the claims asserted in the Derivative Action have merit and that their investigation supports the claims asserted. Stip., III. Without conceding the merit of any of the 6D Defendants' defenses or the lack of merit of any of his own allegations, and solely in order to avoid the potentially protracted time, expense, and uncertainty associated with continued litigation, including a potential trial and appeal, the Derivative Plaintiff has concluded that it is desirable that the Derivative Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation. Stip., III. Derivative Plaintiff's Counsel recognize the expense and length of continued proceedings necessary to prosecute the Derivative Action on behalf of 6D Global against the other Defendants through trial and appeal. Stip., III. Derivative Plaintiff's Counsel also have taken into account the uncertain outcome and the potential risk of any litigation, as well as the difficulties and delays inherent in such litigation, especially given that Your Honor dismissed the related Class Action with prejudice. Stip., I.A, III. Derivative Plaintiff's Counsel are also mindful of the inherent problems of proof of, and possible defenses to, the claims for relief asserted in the Derivative Action. Stip., III.

Based on their evaluation, Derivative Plaintiff and Derivative Plaintiff's Counsel have determined that the Settlement is in the best interests of Derivative Plaintiff, 6D Global, and Current 6D Shareholders.  Stip., III.

These facts demonstrate that the settlement negotiations were conducted at arm's-length, in good faith, and free of collusion.  Thus, the proposed Settlement is presumed fair and warrants preliminary approval.  *See, e.g.*, *Chi Kong Leung v. Home Boy Rest. Inc.*, 2009 U.S. Dist. LEXIS 12556 (S.D.N.Y. Feb. 18, 2009).

### ii. The Corporate Governance Reforms Achieved Through Settlement Will Benefit 6D Global

The Derivative Plaintiff respectfully submits that the Settlement achieved in the Derivative Action, which confers benefits upon nominal defendant 6D Global, easily meets the standards for preliminary approval.  As a threshold matter, the Settling Parties and their counsel agree that the proposed Settlement before the Court is fair, reasonable, adequate, and in the best interests of 6D Global and its shareholders and a beneficial, and practical resolution of highly uncertain litigation, and that its terms fairly account for the risks and potential rewards of the claims being settled.  *See* Stip., I.B, III.  The initiation and prosecution of the Derivative Action, and the ensuing Settlement, provides immediate benefits to 6D Global in the form of the Reforms and the settlement of the Derivative Action, allowing 6D Global to focus on its business while implementing the Reforms.

Exhibit A to the Stipulation details the corporate governance reforms that 6D Global will adopt due to the efforts of Derivative Plaintiff's Counsel who negotiated for the same.  *See* Stip., IV.2, Ex. A.  Courts widely recognize the "substantial benefit" conferred upon public corporations and their shareholders through the adoption of corporate therapeutics that are related to the reforms agreed to in the Stipulation and described above.  *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (citing 4th, 5th, and 6th

Circuit precedents); *In re NVIDIA Corp. Derivative Litig.*, 2008 U.S. Dist. LEXIS 117351, at *5 (N.D. Cal. Dec. 22, 2008) ("As corporate debacles such as Enron, Tyco and WorldCom demonstrate, strong corporate governance is fundamental to the economic well-being and success of a corporation. Indeed, 'Courts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies.'") (citing *Cohn v. Nelson*, 375 F.Supp.2d 844, 853 (E.D. Mo. 2005)).

The Settlement provides for these benefits to 6D Global while eliminating numerous risks, expenses, and burdens of litigation for all concerned, including 6D Global. *See* Stip., II, III. While the Derivative Plaintiff believes that the claims alleged in the Derivative Action are meritorious, continued litigation of the Derivative Action would be costly and of substantial duration. *See* Stip., III. Indeed, significant risks would remain for the Derivative Plaintiff. *See* Stip., III. There is a significant risk that the Derivative Action might not have withstood challenge at the pleading stage, especially given the heightened Rule 23.1 standards for demand futility. Even if the Derivative Plaintiff succeeded, significant risks would remain, including proving damages and bad faith, obtaining a favorable judgment at trial, maintaining that judgment through post-trial motions, and collecting any judgment obtained. The Derivative Plaintiff would have to overcome these hurdles in the context of a shareholder derivative action, which is "notoriously difficult and unpredictable." *Maher*, 714 F.2d at 455. Indeed, "derivative lawsuits are rarely successful." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378, n. 4 (9th Cir. 1995). The foregoing risks are heightened by the fact that Your Honor dismissed the Class Action with prejudice. Should this litigation continue, the Derivative Plaintiff will have to face the high costs associated with lengthy and complex litigation, voluminous discovery and many depositions, potential loss on summary judgment, and the

inherent risks of trial, should the cases progress that far.  Even a favorable judgment at trial would undoubtedly result in extensive post-trial motions and appeal.

The Settlement eliminates these and other risks of continued litigation, including the very real risk of non-recovery for 6D Global after years of additional litigation, while ensuring that the Company and its shareholders receive immediate benefits through the implementation of the Reforms.  The Settlement also secures the benefit of freeing Company resources and time that would otherwise be spent on litigating the Derivative Action to strengthen the internal controls and operations of the Company.  *In re AOL Time Warner S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 63260, at *15-16 (settlement of a derivative action "'obviate[es] the [company's] expenditure of any future time and expense in connection with [the] action,' and will allow the Company to direct its full attention to its substantive business") (quoting *Mathes*, 85 F.R.D. at 714).  Weighed against the substantial risk that continued litigation would yield no benefit for 6D Global, the recovery here is plainly fair, reasonable, and adequate.  Accordingly, the Settlement should be preliminarily approved.  *See Mathes* 85 F.R.D. at 714 ("After weighing plaintiffs' very slight chances for success on the merits against the benefits of settlement, the Court has determined that the amended settlement fairly and adequately serves the interests of [the company] and should be approved"); *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 323-24 (N.D. Ill 1979) (litigation risks favored approval of a derivative settlement).

## V.     THE NOTICE TO 6D GLOBAL'S SHAREHOLDERS SATISFIES THE REQUIREMENTS OF RULE 23.1(c) AND DUE PROCESS

Rule 23.1(c) of the Federal Rules of Civil Procedure requires that the notice of a proposed shareholder derivative settlement be given to shareholders "in the manner that the court orders."  Thus, the Court has discretion in determining the contents of the notice and the manner in which notice will be provided.  *See, e.g.*, *Arace v. Thompson*, No. 08 CIV. 7905 DC, 2011 U.S. Dist.

LEXIS 93105, at *10-11 (S.D.N.Y. Aug. 17, 2011); *United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*, 447 F.2d 647, 654 (7th Cir. 1971) (found notice to be "entirely adequate"). Notice of settlement proceedings in a derivative action must meet the due process requirements of *Mullane v. Central Hanover Bank & Trust Co.* that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950).

Here, the Stipulation and proposed Preliminary Approval Order contemplate that, within ten (10) calendar days after the Court's entry of the Preliminary Approval Order, 6D Global shall: (a) cause a copy of the Summary Notice to be published in the national edition of *Investor's Business Daily*; and (b) Derivative Plaintiff's Counsel shall post the Notice and Stipulation on its firm website. Stip., IV.3.3. 6D Global's D&O insurer(s) shall pay the costs of dissemination of the Notice and Summary Notice. Stip., IV.3.3.

The Settling Parties believe the content of the Notice and the Summary Notice and the manner in which they will be disseminated constitute adequate and reasonable notice to Current 6D Shareholders pursuant to applicable law and due process. Stip., IV.3.5.[6]

---

[6] The use of website posting coupled with other publication has gained broad acceptance in light of the rapid transition of the investment community from a paper-based to a web-based disclosure system. *See* "Use of Electronic Media for Delivery Purposes," SEC Release No. 33-7233, 60 Fed. Reg. 53458, 53459 (Oct. 6, 1995) ("The Commission believes that the use of electronic media should be at least an equal alternative to the use of paperbased media"); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 149 (D.N.J. 2004) (approving settlement of class action in which access to the stipulation was made available by website). Notice programs similar to the notice program that the Setting Parties stipulated to employ in this case – a website posting of the Notice and Stipulation and the publishing of the Summary Notice in the *Investor's Business Daily* -- have been widely used in similar shareholder derivative settlements and approved by numerous courts as meeting due process. *See, e.g., Arace*, 2011 U.S. Dist. LEXIS 93105, at *11 (S.D.N.Y. Aug. 17, 2011) ("a nationally-circulated business-oriented publication catering to investors" such as *Investor's Business Daily* – "sufficiently apprise[s] … shareholders of the nature of the proposed settlement, the upcoming public hearing on the matter, and the opportunity to object"); *Klein ex rel. SICOR, Inc. v. Salvi*, 2004 U.S. Dist. LEXIS 4844, at *10 (S.D.N.Y. Mar. 26, 2004) (approving

Additionally, the Notice is drafted in plain and easily understood language and clearly describes: (i) the nature of the Derivative Action and the claims alleged therein; (ii) the terms of the proposed Settlement (including the Fee and Expense Amount to be paid to Derivative Plaintiff's Counsel by the D&O Carrier, and the Service Award to be paid to the Derivative Plaintiff out of the Fee and Expense Amount); (iii) the considerations that caused the Settling Parties to conclude that the Settlement is fair, reasonable, adequate, and in 6D Global's best interest; (iv) the procedures for objecting to the Settlement; and (v) the date, time, and place of the Settlement Hearing. *See* Stip., Ex. D.  In addition, the Notice invites Current 6D Shareholders who seek additional information to inspect the Stipulation and other documents filed with the Court.  Stip., Ex. D.  As a result, the Notice is more than "reasonably calculated to apprise the parties of the terms of the proposed settlement and the options available in connection with the judicial proceeding."  *In re Drexel Burnham Lambert Grp. Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993).  The Court should, therefore, approve the proposed method and form of notice to Current 6D Shareholders.

## VI.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement and the provisions of the Stipulation, Derivative Plaintiff requests that the Court establish the dates by which: (i) the notice of the Settlement will be disseminated to Current 6D Shareholders; (ii) Current 6D Shareholders may object to the Settlement; and (iii) the final Settlement Hearing shall occur.  The proposed

---

settlement where notice was given by publication in national financial newspapers and on the company's web page); *In re PMC-Sierra, Inc. Deriv. Litig.*, No. 06 Civ. 05330 (RS), 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (providing for notice of proposed derivative settlement by publication in *Investor's Business Daily* and on company's website).

Preliminary Approval Order, attached as Exhibit C to the Stipulation, would implement the following dates agreed to by the Settling Parties:

| Event | Date |
|---|---|
| 6D Global's deadline for causing a copy of the Summary Notice to be published once in the national edition of *Investor's Business Daily* and Derivative Plaintiff's Counsel's deadline to post the Stipulation and its Exhibits, including the Notice, on its firm website | Not later than ten (10) calendar days following the entry of the Preliminary Approval Order |
| Deadline for Settling Parties to file papers with the Court in support of the Settlement | At least twenty-one (21) calendar days prior to the Settlement Hearing |
| Deadline for Current 6D Shareholders to file objections to the Settlement | At least fourteen (14) calendar days prior to the Settlement Hearing |
| Deadline for Settling Parties to file papers with the Court in response to Current 6D Shareholders' objections, if any | At least seven (7) calendar days prior to the Settlement Hearing |
| Settlement Hearing date | At least seventy-five (75) calendar days following the entry of the Preliminary Approval Order |

This schedule is similar to those used in numerous other shareholder derivative settlements and provides sufficient due process to Current 6D Shareholders with respect to their rights pertaining to the Settlement. If this schedule is not convenient to the Court, Derivative Plaintiff requests that the Court utilize similar time intervals for the events in completing the proposed Preliminary Approval Order.

## VII.   CONCLUSION

Given the substantial benefits that the Settlement provides to 6D Global, Derivative Plaintiff respectfully requests that the Court: (i) preliminarily approve the Settlement; (ii) approve the form and manner of dissemination of the Notice and Summary Notice; and (iii) schedule a date for the Settlement Hearing to consider final approval of the Settlement.

16

Dated: November 17, 2017

                                        **THE BROWN LAW FIRM, P.C.**

                                        By: */s/ Timothy W. Brown*

                                        Timothy W. Brown
                                        240 Townsend Square
                                        Oyster Bay, New York 11771
                                        Telephone: (516) 922-5427
                                        Fax: (516) 344-6204
                                        Email: tbrown@thebrownlawfirm.net

                                        *Attorneys for Plaintiff*