**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLAN SCOTT, DERIVATIVELY AND ON BEHALF OF 6D GLOBAL TECHNOLOGIES, INC., | : : : |
| Plaintiff, | : : |
| v. | : : |
| BENJAMIN TIANBING WEI A/K/A BENJAMIN WEY; NEW YORK GLOBAL GROUP, INC.; NYGG (ASIA) LTD., TEJUNE KANG; MARK SZYNKOWSKI; ADAM HARTUNG; DAVID S. KAUFMAN; TERRY MCEWEN; ANUBHAV SAXENA; PIOTR A. CHRZASZCZ, and MICHAEL BANNOUT, | : : : : : : : : : : |
| Defendants, and | : : |
| 6D GLOBAL TECHNOLOGIES, INC., | : : |
| Nominal Defendant. | : |

Case No. 1:15-cv-09691-RWS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED
MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND AN
AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT .................................................................................. 1

II.  OVERVIEW OF THE LITIGATION ..................................................................... 3

    A.  Procedural Overview ................................................................................... 3

    B.  Settlement Negotiations .............................................................................. 4

    C.  Preliminary Approval and Issuance of Notice to Shareholders .................. 5

III.  THE SETTLEMENT CONFERS SUBSTANTIAL BENEFITS UPON 6D GLOBAL AND CURRENT 6D SHAREHOLDERS ......................................................... 6

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ............... 8

    A.  The Law Favors and Encourages Settlements ........................................... 8

    B.  The Settlement is the Product of Adversarial Arm's-Length Negotiations by Experienced Counsel, Overseen in Part by the Mediators, and is Entitled to a Strong Presumption of Fairness, and the Judgment of Plaintiff's Experienced Counsel is Entitled to Considerable Weight ................................................................. 9

    C.  Additional Factors Support the Final Approval of Settlement .................. 11

        1.  The Risks of Establishing Liability and Damages Weigh Heavily in Favor of the Settlement ........................................................................................ 12

            a.  The Risks of Establishing Liability Are Numerous and Substantial .............. 12

            b.  The Risks of Proving and Collecting Damages Are Substantial .................... 14

        2.  The Settlement Is Reasonable in Light of the Complexity, Expense, and Likely Duration of Continued Litigation......................................................... 15

        3.  The Stage of the Proceedings Weighs in Favor of Settlement............................ 16

V.  THE SEPARATELY NEGOTIATED FEE AND EXPENSE AMOUNT IS FAIR AND REASONABLE AND SHOULD ALSO BE APPROVED................................. 18

    A.  The Fee and Expense Amount Resulted from Adversarial Negotiations.................. 18

    B.  The *Goldberger* Factors Confirm the Reasonableness of the Fee and Expense Amount ................................................................................................. 19

        1.  The Benefits Recovered in Relation to the Settlement ......................... 19

        2.  The Contingent Nature of the Fee and Substantial Litigation Risk ...................... 20

        3.  The Quality of Representation .......................................................... 21

        4.  Public Policy Favoring Shareholder Derivative Litigation................... 21

        5.  Counsel's Reasonable Time and Expense Devoted to This Litigation................ 23

i

6. The Magnitude and Complexity of the Derivative Action ................................... 24

C. The Service Award is Reasonable and Should Be Approved ................................... 25

VI. CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page Number(s)**

*Blum v. Stenson*,
    465 U.S. 886 (1984) ........................................................................................................ 20

*Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    No. 09 Civ. 686, 2012 U.S. Dist. LEXIS 79418 (S.D.N.Y. June 7, 2012) .................................. 25

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .................................................................................................. 18, 19

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................ 8, 9, 11, 12, 15, 16, 18, 20, 21

*Clark v. Ecolab Inc.*,
    2010 U.S. Dist. LEXIS 47036 (S.D.N.Y May 11, 2010) ........................................................ 10

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949) ........................................................................................................ 22

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................................. 9

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ......................................................................................... 11, 12

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................................ 25

*Dubin v. E.F. Hutton Grp., Inc.*,
    845 F. Supp. 1004 (S.D.N.Y. 1994) ............................................................................... 21, 23

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ........................................................................................................ 19

*Hertzberg v. Asia Pulp & Paper Co.*,
    197 Fed. Appx. 38 (2d Cir. 2006) ...................................................................................... 11

*In re AOL Time Warner S'holder Derivative Litig.*,
    2006 U.S. Dist. LEXIS 63260 (S.D.N.Y. Sept. 6, 2006) ......................... 8, 9, 10, 12, 13, 15, 16

*In re Apollo Grp., Inc. Sec. Litig.*,
    No. 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) *rev'd on other*
    *grounds*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010) .................... 13

*In re Ashanti Goldfields Sec. Litig.*,
No. CV-00-717(DGT), 2005 U.S. Dist. LEXIS 28431 (E.D.N.Y. Nov. 15, 2005) .................. 21

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996) ............................................................................... 13

*In re Cendant Corp. Derivative Litig.*,
232 F. Supp. 2d 327 (D.N.J. 2002) ....................................................................... 14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .................................................................................. 14

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 12

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96-CIV-1262 RWS, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 U.S. App. LEXIS 17270 (2d Cir. Aug. 20, 2003) ... 14

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23, 2009) ............... 23

*In re Metropolitan Life Derivative Litigation*,
935 F. Supp. 286 (S.D.N.Y. 1996) .......................................................... 9, 11, 15, 16

*In re Northfield Labs., Inc. Sec. Litig.*,
No. 06 C 1493, 2012 U.S. Dist. LEXIS 12741 (N.D. Ill. Jan. 31, 2012) ................................. 16

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ...................................................................... 9, 13, 15

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) *aff'd sub nom. In re PaineWebber Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997) ................................................................................ 10, 14

*In re Pfizer Inc. S'holder Derivative Litig.*,
780 F. Supp. 2d 336 (S.D.N.Y. 2011) .................................................................... 12

*In re Remeron End-Payor Antitrust Litig.*,
Nos. 02-2007 (FSH), 04-5126 (FSH), 2005 U.S. Dist. LEXIS 27011 (D.N.J. Sep. 13, 2005) 25

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ........................................... 8, 25

*In re Telik. Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................................... 10

iv

*In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) ........................................ 22

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd¸* 798 F.2d 35 (2d Cir. 1986).............................. 21, 22

*In re Weatherford Int'l Sec. Litig.*,
    No. 11 Civ. 1646, 2015 U.S. Dist. LEXIS 3370 (S.D.N.Y. Jan. 5, 2015) ............................... 18

*Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co., Inc.*,
    62 B.R. 723 (S.D.N.Y. 1986) ........................................ 21

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) .................................... 9, 18, 19, 20

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)........................................ 8, 11, 12

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ........................................ 22

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................ 15, 17

*Mathes v. Roberts*,
    85 F.R.D. 710 (S.D.N.Y. 1980) ........................................ 8, 9

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)........................................ 18, 19, 20

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)........................................ 9

*Schimmel v. Goldman*,
    57 F.R.D. 481 (S.D.N.Y. 1973) ........................................ 9, 13

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 7691 CM, 2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21, 2014) ................... 19

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ........................................ 13

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................ 8, 10, 17, 25

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966) .................................................................................................... 22

*Unite Nat'l Ret. Fund v. Watts*,
Civil Action No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 27, 2005) 19

*Velez v. Novartis Pharms. Corp.*,
No. 04-09194, 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) ............................ 23

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*,
396 F.3d 96 (2d Cir. 2005) .............................................................................................. 10, 23

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ................................................................................................. 9

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) ............................................................................................................ 8

**Other Authorities**                                                    **Page Number(s)**

Fed. R. Civ. P. 23.1 ............................................................................................................. 6

Fed. R. Civ. P. 23.1(c) ....................................................................................................... 8

Manual for Complex Litigation, Third, § 30.42 (1995) .................................................. 10

Plaintiff Allan Scott ("Derivative Plaintiff," or "Plaintiff"), derivatively on behalf of 6D Global Technologies, Inc. ("6D Global" or the "Company"), respectfully submits this Memorandum of Law in support of his Unopposed Motion for Final Approval of Proposed Settlement and an Award of Attorneys' Fees and Reimbursement of Expenses ("Motion").

## I.      PRELIMINARY STATEMENT

Subject to this Court's approval, the Settling Parties[1] have agreed to settle this shareholder litigation brought derivatively on behalf of 6D Global.  Derivative litigation is known for presenting perilous obstacles to stockholder plaintiffs and for its extreme unpredictability, and this Derivative Action was no different.  Yet in the face of these impediments and great uncertainty, Plaintiff produced an excellent result for 6D Global and its shareholders. The Settlement is the culmination of approximately two years' worth of litigation and arm's-length negotiations among experienced counsel for the Settling Parties, who comprehensively understood and debated the merits of the Derivative Action.  As a result of these efforts, the Settlement provides 6D Global and its shareholders with certain corporate governance reforms (the "Reforms"), which directly address the issues that gave rise to the Derivative Action and which will improve 6D Global's overall governance. The Settling Parties agree that the Reforms will provide benefits to 6D Global. In light of the circumstances surrounding the Derivative Action and the substantial risks, uncertainties, and challenges Plaintiff would face through continued prosecution of the Derivative Action, the Settlement is an excellent result.

On November 21, 2017, the Court entered an Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") (Dkt. No. 29), approving the uploading of the Stipulation and Exhibits A to F thereto, including the Notice, on to the website of

---

[1] Unless otherwise noted, all capitalized terms shall have the same definitions as set forth in the Stipulation and Agreement of Compromise, Settlement and Release, dated November 15, 2017 ("Stipulation" or "Stip.").

The Brown Law Firm, P.C. (the "Derivative Plaintiff's Counsel"), which Derivative Plaintiff's Counsel did, and 6D Global's causing a copy of the Summary Notice to be published once in the national edition of *Investor's Business Daily*, about which publication 6D Global is required to file with the Court proof by affidavit or declaration. The Settling Parties now seek final approval of the Settlement.

The Settlement was reached after significant effort and arm's-length negotiations by the Settling Parties. *See, e.g.*, Stip., § I.B; Declaration of Timothy W. Brown in Support of Plaintiff's Unopposed Motion for Final Approval of Proposed Settlement and an Award of Attorneys' Fees and Reimbursement of Expenses ("Brown Declaration" or "Brown Decl."), ¶¶ 8-13. During these negotiations, Plaintiff's experienced counsel drew upon their extensive investigative efforts and considered the unique circumstances affecting the prosecution of the Derivative Action. *See* Stip., § III.

In recognition of the substantial benefits conferred upon 6D Global's shareholders by Derivative Plaintiff's Counsel's efforts, the Settling Parties agree that Derivative Plaintiff's Counsel is entitled to an award of moderate attorneys' fees and expenses of $75,000 to be paid by the 6D Defendants' insurer (the "Fee and Expense Amount"), which shall include a service award up to $1,250 for Derivative Plaintiff, and which is subject to approval by the Court. Stip., § IV.5.6. The Fee and Expense Amount was negotiated at arm's-length and is fair and reasonable in light of the substantial benefits achieved in the Settlement, the magnitude and complexity of the Derivative Action, and the substantial risks borne by Derivative Plaintiff's Counsel in prosecuting this Derivative Action on a contingency fee basis.

The Settlement is an excellent resolution of this complex, high-risk litigation. Derivative Plaintiff's Counsel's recommendation is based on extensive experience in shareholder

representative litigation, and is informed by an extensive independent investigation, and rigorous evaluation of the strengths and weaknesses of the claims and defenses weighed against the risks, uncertainty, expense, and delays that would entail in attempting to improve the result through continued litigation. *See* Stip., § III. The terms of the Settlement, including the agreed-upon Fee and Expense Amount, are fair, reasonable, and adequate in view of these factors, and merit final approval by the Court.

## II.   OVERVIEW OF THE LITIGATION

### A.   Procedural Overview

On December 11, 2015, Derivative Plaintiff commenced this Derivative Action by filing a verified shareholder derivative complaint on behalf of 6D Global against certain of 6D Global's then current and former officers and directors, and certain third parties.  Stip., § I.A.

Prior to the filing of the Derivative Action, a securities class action styled *Castillo IV v. 6D Global Technologies, Inc., et al.,* No. 15-CV-8061-RWD, was filed in this Court against 6D Global and others alleging violations of federal securities laws (the "Class Action").  The Class Action and the Derivative Action were deemed "related" cases.  Stip., § I.A.

Given the relatedness of the actions, the Derivative Plaintiff, 6D Global and the Individual Defendants stipulated, on February 16, 2016, to stay the Derivative Action pending the outcome of an anticipated motion to dismiss in the Class Action.  Stip., § I.A.

Pursuant to the terms of the February 16, 2016 stipulation, the Derivative Plaintiff filed a verified shareholder derivative amended complaint on July 5, 2016 on behalf of 6D Global against certain of 6D Global's then current and former officers and directors, and certain third parties, alleging claims for breach of fiduciary duty, unjust enrichment, and violations of Section 14 of the Exchange Act.  Stip., § I.A.

On August 19, 2016, a motion to dismiss was filed in the Class Action, which, on March 6, 2017, the Court granted with prejudice. The plaintiffs in the Class Action filed a notice of appeal. As of October 26, 2017, briefing of the appeal was completed. Stip., § I.A. As of today's date, there has been no ruling on the appeal. Brown Decl., ¶ 7.

**B.      Settlement Negotiations**

Beginning as early as May 18, 2016, the Settling Parties commenced arm's-length settlement communications. On July 28, 2016, Derivative Plaintiff's Counsel sent an extensive settlement demand letter to counsel for 6D Global and the Individual Defendants setting forth certain proposed corporate governance reforms at 6D Global and certain monetary consideration to be paid to 6D Global on behalf of the 6D Defendants by 6D Global's insurance carrier. The 6D Defendants at that time began to consider the proposed settlement terms set forth in Derivative Plaintiff's settlement demand letter. Stip., § I.B.

On March 7, 2017, the Settling Parties, and plaintiffs in five other cases that made claims against 6D Global, participated in a full-day global mediation, which lasted 12 hours. Prior to the mediation, the Settling Parties briefed and submitted two rounds of mediation statements. At the mediation, with the assistance of experienced and distinguished mediators Jed Melnick and Simone Lelchuk of JAMS (the "Mediators), the Settling Parties had extensive, face-to-face discussions concerning corporate governance reforms to be implemented by 6D Global. At the mediation, the Settling Parties continued sporadically to discuss settlement, and, as per Derivative Plaintiff's Counsel's understanding, the Settling Parties reached an agreement in principle to settle the claims. Stip., § I.B; Brown Decl., ¶ 9.

Subsequently, the 6D Defendants replaced their counsel. 6D Defendants' former counsel and current counsel both informed Derivative Plaintiff's Counsel that they did not reach an

agreement in principle to settle the claims, and then they re-opened negotiations with Derivative Plaintiff's Counsel. Following further negotiations over the course of several months, the Settling Parties reached another, ultimate agreement in principle to settle the claims. Brown Decl., ¶ 10.

As a condition of the Settlement, 6D Global shall adopt and/or implement (or continue to implement) certain corporate governance enhancements, which are set forth in Exhibit A to the Stipulation, subject to Court approval. Stip., § I.B.

After reaching agreement on these substantive corporate governance enhancements, the Settling Parties negotiated at arm's-length the attorneys' fees and reimbursement of expenses to be paid to Derivative Plaintiff's Counsel in light of the substantial benefits the corporate governance enhancements confer upon 6D Global, also subject to Court approval. Stip., § I.B.

As a result of the Settling Parties' arm's-length discussions and negotiations described above, the Settling Parties reached an agreement providing for the settlement of the Derivative Action, which is documented in the Stipulation and the Exhibits thereto, and which will include a release of all claims in the Derivative Action. Stip., § I.B.

The Settling Parties believe that a settlement at this juncture on the terms and conditions set forth in the Stipulation and herein is fair, reasonable, adequate, and in the best interests of 6D Global and its shareholders. Stip., § I.B.

### C. Preliminary Approval and Issuance of Notice to Shareholders

On November 21, 2017, this Court entered the Preliminary Approval Order and, as to form and content, the notice of the Settlement to Current 6D Global Shareholders. Specifically, the Court approved the "Notice of Proposed Settlement of Stockholder Derivative Action," substantially in the form of Exhibit D to the Stipulation (the "Notice") and the "Summary Notice of Proposed Settlement," substantially in the form of Exhibit E to the Stipulation (the "Summary

Notice"), and found that within ten (10) calendar days of the Court's having entered the Preliminary Approval Order: (1) Derivative Plaintiff's Counsel's uploading of the Stipulation and Exhibits A to F thereto, including the Notice, which is Exhibit D, on to Derivative Plaintiff's Counsel's website, together with (2) 6D Global's causing a publication of the Summary Notice once in the national edition of *Investor's Business Daily*, meets the requirements of Fed R. Civ. P. 23.1 and due process and constitutes valid, due, reasonable, and sufficient notice of all matters relating to the Settlement. Preliminary Approval Order, ¶¶ 6-7; Dkt. 29; Brown Decl., ¶ 15.

In accordance therewith, on November 29, 2017, Derivative Plaintiff's Counsel uploaded the Stipulation and its exhibits on to their website. Brown Decl., ¶ 16.

By or before January 31, 2018, pursuant to the Preliminary Approval Order, the 6D Defendants Counsel is required to file with the Court proof by affidavit or declaration of 6D Global's publication of the Summary Notice and Derivative Plaintiff's Counsel's posting of the Stipulation and its exhibits. Preliminary Approval Order, ¶ 8; Dkt. 29.

As of this filing on January 17, 2018, no shareholders have objected to the Settlement. Brown Decl., ¶ 18.

## III.   THE SETTLEMENT CONFERS SUBSTANTIAL BENEFITS UPON 6D GLOBAL AND CURRENT 6D SHAREHOLDERS

The Settling Parties have agreed to the significant and comprehensive corporate governance reforms, set out fully in Exhibit A to the Stipulation, that directly address certain of Plaintiff's allegations, are designed to reduce the likelihood that events giving rise to the Derivative Action recur, and will strengthen 6D Global's overall corporate governance practices and internal controls generally. Brown Decl., ¶ 19.

The Reforms, which will be in place as provided below, will strengthen 6D Global's internal controls over compliance and enhance general corporate governance through director and

employee education, and will offer 6D Global and its shareholders the benefit of substantial, immediate, and lasting corporate governance measures that provide for additional oversight and improvements to 6D Global's policies and practices.  Brown Decl., ¶ 19.  Specifically, the Reforms are as follows:

### New Employees to Certify Compliance

- 6D Global shall maintain its extant Code of Ethics, 6D Global shall continue its practice of having all employees read the Code of Ethics and certify that they have read and understand the provision of the Code of Ethics. All new employees hired on or after January 1, 2016 shall be provided a copy of the Code of Ethics and will be required to sign a statement confirming that they have read and understand its terms and conditions. The 6D Global Code of Ethics includes, among other things, provisions regarding strict compliance with securities laws, accurate public reporting and avoidance of conflicts of interest.

### Employee Education and Training

- 6D Global agrees to require employee training for employees who are employed in the Company's executive offices, on issues relevant to the Company on securities, compliance, insider trading, ethics, and conflict of interest issues, for a period of at least one (1) year following final approval of the Settlement. This employee training may be conducted by 6D Global through the use of on-line, in-person or other resources, at 6D Global's discretion.

### Director Education

- Currently, 6D Global's stock is not publicly traded. Within 12 months of 6D Global's stock becoming publicly traded, 6D Global agrees to require education/training for its Directors (the "Directors") on issues relevant to the Company on securities, compliance, Board professionalism, insider trading, ethics, and conflict of interest issues, for a period of at least five (5) years following final approval of the Settlement. This Director education/training may be conducted by 6D Global through the use of on-line, in-person or other resources such as courses, training and/or learning modules provided by NACD or equivalent, at 6D Global's discretion.  Nothing herein shall preclude 6D's extension of such education and training beyond the five-year term herein provided.

Brown Decl., ¶ 19.

The Settling Parties acknowledge and agree that the Reforms confer benefits upon 6D Global and 6D Global's shareholders. Stip., §§ I.B, II; Brown Decl., ¶ 20.  Plaintiff respectfully

submits that the Settlement is an excellent resolution in light of the overall circumstances. Brown Decl., ¶ 21.

## IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.     The Law Favors and Encourages Settlements

It is well settled that "[c]ompromises of disputed claims are favored by the courts . . . ." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).[2] This is particularly true in a derivative context, where courts have long recognized that "settlements are favored" because "shareholder derivative actions are notoriously difficult and unpredictable." *Mathes v. Roberts*, 85 F.R.D. 710, 713 (S.D.N.Y. 1980). Fed. R. Civ. P. 23.1(c) provides that a derivative action may only be settled "with the court's approval." Approving a settlement "is left to the sound discretion" of the district court, which should be exercised "in light of the strong judicial and public policies that favor settlements." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003); *see also In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (same).

Before approving a settlement, the Court must determine whether the settlement "is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). This evaluation necessarily includes consideration of whether "the compromise 'fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted.'" *In re AOL Time Warner S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 63260, at *6 (S.D.N.Y. Sept. 6, 2006). Recognizing that a settlement represents an exercise of judgment by the settling parties, the Second Circuit has cautioned that while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell*

---

[2] As throughout unless otherwise noted, all emphasis is added, and citations (as here) and footnotes are omitted.

*Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated*

*Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As the Second Circuit has explained:

> [T]he role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial.

*Newman v. Stein*, 464 F.2d 689, 691-92 (2d Cir. 1972).

The settlement of disputed claims, especially in complex class and shareholder derivative

litigation, is highly favored because such litigation is "'notoriously difficult and unpredictable.'"

*Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973); *Mathes*, 85 F.R.D. at 713.[3] "There

are weighty justifications, such as the reduction of litigation and related expenses, for the general

public policy favoring the settlement of litigation." *AOL Time Warner*, 2006 U.S. Dist. LEXIS

63260, at *7-8 (same); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).

Consistent with these policies, the Court's role is to determine whether the proposed

Settlement is "'fair, reasonable and adequate[,]'" *In re Metropolitan Life Derivative Litigation*,

935 F. Supp. 286, 292 (S.D.N.Y. 1996), and "'fairly and adequately serves the interests of the

corporation on whose behalf the derivative action was instituted.'" *Mathes*, 85 F.R.D. at 713; *In*

*re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377-78 (9th Cir. 1995). The Court need not try the issues

or decide the merits of the case in making this determination. *City of Detroit v. Grinnell Corp.*,

495 F.2d 448, 462 (2d Cir. 1974) ("*Grinnell*"), *abrogated on other grounds by sub nom.*

*Goldberger*, 209 F.3d 43 ("settlement hearing must not be turned into a trial or a rehearsal of the

trial").

**B.    The Settlement is the Product of Adversarial Arm's-Length Negotiations by Experienced Counsel, Overseen In Part by the Mediators, and is Entitled to a**

---

[3] *Accord Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (observing "the general view of federal courts that settlements of shareholder derivative suits are 'particularly favored'").

**Strong Presumption of Fairness, and the Judgment of Plaintiff's Experienced Counsel is Entitled to Considerable Weight**

A strong presumption of fairness applies to settlements negotiated at arm's-length by experienced counsel. *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *In re Telik. Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125, 132 (S.D.N.Y. 1997), *aff'd sub nom. In re PaineWebber Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997). "There is a strong initial presumption that a proposed settlement negotiated during the course of litigation is fair and reasonable." *Strougo*, 258 F. Supp. 2d at 257. The Second Circuit has held that a "presumption of fairness, adequacy, and reasonableness may attach to a [] settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (*quoting* Manual for Complex Litigation, Third, § 30.42 (1995)). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *17-18 (S.D.N.Y May 11, 2010).

The presumption of fairness is appropriate here because the Settlement was reached without collusion by capable counsel experienced in shareholder derivative litigation after arm's-length negotiations before, in part, the highly experienced and distinguished Mediators. *See Telik*, 576 F. Supp. 2d at 577 (finding that a presumption of fairness was appropriate where the securities class action settlement was "negotiated at arm's length by sophisticated counsel before an experienced mediator"). Similarly, the recommendation of informed, experienced counsel to approve a settlement reached at arm's-length is entitled to "great" or "considerable" weight.[4] Here,

---

[4] *PaineWebber Ltd. P'ship.*, 171 F.R.D. at 125 ("'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *AOL Time Warner*, 2006 U.S. Dist. LEXIS 63260, at *8-9 (showing "considerable weight" to counsel's recommendation to approve a settlement that came "on

the presumption of fairness applies, and Derivative Plaintiff's Counsel's recommendation to approve the Settlement is entitled to considerable weight. Brown Decl., ¶ 25. *First*, the Settlement is the product of hard-fought, arm's-length negotiations. Brown Decl., ¶ 25. *Second*, all Parties were represented by counsel experienced in complex shareholder litigation. Brown Decl., ¶ 25. *Third*, Derivative Plaintiff's Counsel's position during the negotiations was also informed by careful analysis of applicable law, thorough examination of the facts, and consideration of the Company's present circumstances. Brown Decl., ¶ 25. *Fourth*, negotiations occurred in part before the highly experienced Mediators. Brown Decl., ¶ 25.

## C.    Additional Factors Support the Final Approval of Settlement

Courts in the Second Circuit apply the factors set forth in *City of Detroit v. Grinnell Corp.* to evaluate the fairness, reasonableness, and adequacy of the settlement, including: (1) risks of establishing liability and damages; (2) the reasonableness of the settlement recovery in light of those risks and in light of the best possible recovery; (3) the complexity, expense and likely duration of the litigation; (4) the reaction of shareholders to the settlement; and (5) the stage of the proceedings and discovery. 495 F.2d at 463; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001); *Giuliani*, 218 F.3d at 138.[5] In evaluating substantive fairness, "not every factor must weigh

---

the heels of extensive arms-length negotiations, overseen and assisted by a court-appointed special master, with all parties represented by experienced counsel," where the parties engaged in discovery and "negotiations between the parties spanned an extended period of time and benefited from multiple proposals passed between the parties throughout this period"); *Metropolitan Life*, 935 F. Supp. at 294 (counsel's recommendation to approve settlement was "entitled to 'considerable weight'" where the settlement "[wa]s the result of extensive arm's-length negotiations among counsel" who were "experienced in litigating derivative suits and class actions" and had "thoroughly investigated and evaluated Plaintiff's claims").

[5] *Grinnell* also suggests that the Court may consider: (1) the risks of maintaining a class through trial; and (2) the ability of defendants to withstand a greater judgment. 495 F.2d at 463. The risk of maintaining a class through trial has no bearing in this shareholder derivative action. The ability of Defendants to withstand a greater judgment is of great importance here. *See Hertzberg v. Asia Pulp & Paper Co.*, 197 Fed. Appx. 38, 41 (2d Cir. 2006) ("The Court [] assessed 'the range of reasonableness of the settlement fund in light of the best possible recovery' and determined that 'the ability of [APP] to withstand a greater judgment' was irrelevant because plaintiffs were unlikely to recover any of whatever larger award of damages might be achieved by further litigation.") quoting *Grinnell*, 495 F.2d at 463.

in favor of settlement[;] 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004). While *Grinnell* was an antitrust class action, courts in this District considering derivative settlements also consider the relevant factors enumerated by the Second Circuit in *Grinnell. See, e.g.*, *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011); *AOL Time Warner*, 2006 U.S. Dist. LEXIS 63260, at *10.   Here, the *Grinnell* factors strongly support the Settling Parties' conclusion that the Settlement is fair, reasonable, and adequate, and thus, strongly support final approval of the proposed Settlement.   Brown Decl., ¶ 28.

1.      **The Risks of Establishing Liability and Damages Weigh Heavily in Favor of the Settlement**

In assessing the fairness, reasonableness, and adequacy of the Settlement, the Court must balance the continuing risks of litigation with the benefits afforded to 6D Global and its shareholders and the immediacy and certainty of a substantial recovery. *Grinnell*, 495 F.2d at 463; *D'Amato*, 236 F.3d at 86 ("In reviewing the risks of proceeding to trial, establishing liability and damages, and the complexity, length and expense of litigation, the District Court concluded that, given the difficulties…and the existence of possible defenses, the settlement was fair, reasonable and adequate."); *Joel A.*, 218 F.3d at 138, 144 (affirming approval of settlement where district court found that "the pending action presented many unsettled and complex legal issues, and a trial would take five months or more and be 'extremely costly'").

a.      **The Risks of Establishing Liability Are Numerous and Substantial**

Although Plaintiff believes in the strength of his claims asserted against the Defendants and continues to believe that the claims are meritorious, he is aware that derivative actions are

notoriously complex and costly. Brown Decl., ¶ 30; *see AOL Time Warner*, 2006 U.S. Dist. LEXIS 63260, at *8 (quoting *Schimmel*, 57 F.R.D. at 487) (approving shareholder derivative settlement and stating that "shareholder derivative actions are 'notoriously difficult and unpredictable.'"); *Pac. Enters.*, 47 F.3d at 378 (affirming approval of derivative action settlement and noting that "derivative lawsuits are rarely successful").[6]

In addition to the challenges inherent in derivative litigation, the Defendants would likely assert numerous defenses, including categorizing Plaintiff's claims as being solely "*Caremark*" claims seeking recovery for the Individual Defendants' failure to exercise oversight over the Company's business, financial condition, and risk management. Brown Decl., ¶ 31. The Individual Defendants would argue that *Caremark* liability only arises if Plaintiff shows that "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." Brown Decl., ¶ 32; *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

A *Caremark* claim is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). Although Plaintiff disagrees that *Caremark* is the correct standard, its application would increase Plaintiff's risks in establishing liability. Brown Decl., ¶ 33. However, even if a different, less stringent standard is applied, obstacles would still remain because Plaintiff faces lengthy discovery, motion practice, expert testimony, trial, and likely appeals. Brown Decl.,

---

[6] Even a victory at trial is no guarantee that a judgment would ultimately be sustained on appeal. Substantial judgments awarded by trial courts in shareholder litigation have been reversed on appeal. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) *rev'd on other grounds*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010) (overturning $277 million jury verdict based on insufficient trial evidence to support finding of loss causation). Add to these appellate risks the difficulty and unpredictability of a lengthy and complex trial – where witnesses could suddenly become unavailable or the fact finder could react to the evidence in unforeseen ways – and the benefits of the Settlement become all the more apparent.

¶ 33.

Further, experts would need to be prepared and expert discovery conducted. Brown Decl.,

¶ 34. In addition, a myriad of complex issues of law and fact would need to be mastered in trying

the case and pursuing it through appeal – all without any guarantee of materially improving on the

Settlement's recovery. Brown Decl., ¶ 34. Balanced against such risks, especially given that Your

Honor dismissed the related Class Action with prejudice, the Settling Parties and their counsel

believe that the Settlement represents a fair, reasonable, adequate, beneficial, and practical

resolution of a complex and costly litigation, and is in the best interests of 6D Global and its

shareholders. Brown Decl., ¶ 35.

### b. The Risks of Proving and Collecting Damages Are Substantial

Plaintiff also took into account the substantial difficulties and risks in attempting to prove

that 6D Global suffered cognizable damages. Brown Decl., ¶ 36. Even assuming liability could be

established, the issue of damages would have been hotly disputed and the subject of costly,

competing expert testimony. Brown Decl., ¶ 36. Expert testimony on damages could rest on many

assumptions and premises, any one of which could be rejected by a trier of fact as speculative or

unreliable. Brown Decl., ¶ 36; *see In re Lloyd's Am. Trust Fund Litig.*, No. 96-CIV-1262 RWS,

2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination of

damages…is a complicated and uncertain process, typically involving conflicting expert opinions.

The reaction of a jury to such complex expert testimony is highly unpredictable"), *aff'd sub nom.*

*Adams v. Rose*, No. 03-7011, 2003 U.S. App. LEXIS 17270, (2d Cir. Aug. 20, 2003).

Defense experts might succeed in persuading a trier of fact that 6D Global's losses were

caused by factors other than the Defendants' alleged wrongdoing or were *de minimis*. Brown Decl.,

¶ 37; *see, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001); *PaineWebber*, 171

F.R.D. at 129.

Additionally, the monetary damages allegedly suffered by 6D Global as a result of the Defendants' misconduct "are not easily recovered at trial." Brown Decl., ¶ 38; *AOL Time Warner*, 2006 U.S. Dist. LEXIS 63260, at *11; *Metropolitan Life*, 935 F.Supp., at 293 (noting that damages such as "loss of good will and loss of future sales . . . are usually difficult to prove."). Even if Plaintiff established damages, he would face challenges collecting on a judgment. Brown Decl., ¶ 39. There is very little money available from the insurer, which has been depleted by defending, and making payments connected to, multiple lawsuits. Brown Decl., ¶ 39. Given the foregoing circumstances, this factor weighs in favor of approving the Settlement. Brown Decl., ¶ 40.

## 2. The Settlement Is Reasonable in Light of the Complexity, Expense, and Likely Duration of Continued Litigation

The complexity, expense, and likely duration of the litigation also are important factors weighing in favor of settlement. Brown Decl., ¶ 41; *Grinnell*, 495 F.2d at 463. Derivative Plaintiff's Counsel face the formidable task of conducting costly, time-consuming discovery, and then establishing liability and damages at trial. Brown Decl., ¶ 42. Here, the Settling Parties would have to review, analyze, and present at trial a considerable documentary record, including the work-product of any internal investigations. Brown Decl., ¶ 43. Further, the investment of additional time and expense in further litigation would not ensure a better result for 6D Global and its shareholders. Brown Decl., ¶ 44. If the case were fully litigated, 6D Global shareholders may have received less than what the Settlement provides or, worse, nothing at all. Brown Decl., ¶ 45. "[T]he odds of winning [a] derivative lawsuit [are] extremely small[.]" *Pac. Enters.*, 47 F.3d at 378. Where, as here, 6D Global's insurance coverage would probably reach its limits due to the ongoing cost of defending the Derivative Action and several other cases against the Company, the outcome at trial, even on a plaintiff verdict, could be pyrrhic. Brown Decl., ¶ 46; *Maley v. Del*

*Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) ("One viable source of funds is the Directors' and Officers' insurance policies covering the individual defendants, but those policies would be significantly depleted by defense costs or the possibility of the insurance carriers disclaiming."); *In re Northfield Labs., Inc. Sec. Litig.*, No. 06 C 1493, 2012 U.S. Dist. LEXIS 12741, at *17 (N.D. Ill. Jan. 31, 2012).

Here, the proposed Settlement ensures substantial benefits for the Company and will allow 6D Global to resolve the Derivative Action promptly and efficiently. Brown Decl., ¶ 47. The Settlement obviates the expenditures of further time and expenses, and favorably resolves the Derivative Action, further justifying approval. Brown Decl., ¶ 47; *see AOL Time Warner*, 2006 U.S. Dist. LEXIS 63260, at *15-16; *Metropolitan Life*, 935 F. Supp. at 293-94 (settlement in the best interest of all parties "[i]n view of the effort and expense that would be required to take this case to and through trial").

### 3. The Stage of the Proceedings Weighs in Favor of Settlement

The stage of the proceedings is another factor that the Court may consider in determining the fairness, reasonableness, and adequacy of the proposed settlement. Brown Decl., ¶ 48; *Grinnell*, 495, F.2d at 463. Here, the Derivative Action has been pending for more than two years. Brown Decl., ¶ 49. The Settlement was negotiated after Derivative Plaintiff's Counsel had completed an extensive investigation into the facts and law underlying Plaintiff's claims, including: (1) inspecting, analyzing, and reviewing 6D Global's public filings with the U.S. Securities and Exchange Commission (the "SEC"), press releases, announcements, transcripts of investor conference calls, and news articles; (2) drafting and filing the initial shareholder derivative complaint; (3) researching the applicable law with respect to the claims asserted in the Derivative Action and the potential defenses thereto; (4) reviewing and analyzing the relevant pleadings in

the action filed by the SEC against certain of the Defendants, captioned *United States Securities and Exchange Commission v. Benjamin Wey, et al.*, CA No. 15-7116-PKC (S.D.N.Y. September 10, 2015) and in the DOJ action against two individuals, including one of the Defendants, captioned *USA v. Benjamin Wey, et al.*, 15-CR-00611-AJN (S.D.N.Y. September 8, 2015); (5) drafting and filing the amended shareholder derivative complaint; (6) researching corporate governance issues and best practices; (7) preparing an extensive written settlement demand; (8) preparing an extensive mediation statement and a second mediation statement for the Mediators' eyes only; and (9) participating in extensive settlement discussions with the Mediators and Defendants' Counsel. Brown Decl., ¶ 49.

Derivative Plaintiff's Counsel's extensive investigation provided Plaintiff with a clear picture of the strengths and weaknesses of the Derivative Action, as well as Defendants' legal and factual defenses. Brown Decl., ¶ 50. Having enough information to properly evaluate the claims and defenses, Plaintiff has managed to resolve the Derivative Action on a highly favorable basis to the Company and its shareholders without the substantial expense, risk, delay, and uncertainty of continued litigation. Brown Decl., ¶ 50. Thus, the Settling Parties reached an agreement to settle the Derivative Action at a point when they had an adequate understanding of the legal and factual issues surrounding the case. Brown Decl., ¶ 50; *see Maley,* 186 F.Supp. 2d at 363-64 (finding that plaintiffs' counsel, after conducting an "intensive and extensive investigation into the alleged wrongdoing of the Defendants . . . possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement"); *Strougo*, 258 F.Supp. 2d at 259 ("Given the extensive history of this litigation, [plaintiff] was in a good position to make informed judgments as to the merits of the proposed settlement and had a 'clear view of the strengths and

weaknesses of their cases.'").

## V.    THE SEPARATELY NEGOTIATED FEE AND EXPENSE AMOUNT IS FAIR AND REASONABLE AND SHOULD ALSO BE APPROVED

Counsel who secure a substantial benefit, as is the case here, are entitled to an award of reasonable attorneys' fees and expenses commensurate with the value of the benefit, the risks undertaken in prosecuting the action, and the amount of legal work reasonably performed. Brown Decl., ¶ 51; *see, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-81 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-94 (1970).   Here, the agreed-upon Fee and Expense Amount of $75,000 – to be paid by the 6D Defendants' insurer – was reached only after the substantive terms of the settlement were reached.  Brown Decl., ¶ 52.

Second Circuit courts apply the following factors in evaluating attorneys' fees awards: (i) the benefit recovered in relation to the settlement; (ii) the magnitude and complexities of the litigation; (iii) the risk in litigation (i.e., the contingent nature of the fee); (iv) the quality of representation; (v) public policy considerations; and (vi) the time and labor spent. *Goldberger*, 209 F.3d at 50; *Grinnell*, 495 F.2d at 470.  Here, the *Goldberger* factors confirm the reasonableness of the Fee and Expense Amount. Brown Decl., ¶ 53. Moreover, the process by which it was reached serves as an additional consideration supporting its approval.  Brown Decl., ¶ 54.

### A.    The Fee and Expense Amount Resulted from Adversarial Negotiations

This Court and the Second Circuit have at times indicated a desire that the reasonableness of fee awards be tested by an adversarial process. *See, e.g.*, *In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646, 2015 U.S. Dist. LEXIS 3370, at *5-6 (S.D.N.Y. Jan. 5, 2015) ("The courts asked to approve [fees in a securities class action] thus are left without any effective adversarial testing of the claimed lodestar except in rare cases."); *Goldberger*, 209 F.3d at 52 ("We appreciate that fixing a reasonable fee becomes even more difficult because the adversary system is typically diluted—

indeed, suspended—during fee proceedings.").

Such is the case here. Brown Decl., ¶ 55. The Parties began to negotiate the Fee and Expense Amount after they had agreed on the substantive terms of the Settlement. Brown Decl., ¶ 56; *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7691 CM, 2014 U.S. Dist. LEXIS 37872, at *85 (S.D.N.Y. Mar. 21, 2014) ("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness.").

**B.     The *Goldberger* Factors Confirm the Reasonableness of the Fee and Expense Amount**

**1.     The Benefits Recovered in Relation to the Settlement**

The U.S. Supreme Court has long recognized that counsel is entitled to adequate compensation for obtaining a "substantial benefit" in resolving claims, and has endorsed this type of consensual resolution as the ideal toward which litigants should strive. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a [benefit for] persons other than himself or his client is entitled to a reasonable attorney's fee."); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

The value of the substantial benefits conferred on 6D Global and its shareholders by the Settlement has been recognized by other courts that have awarded attorneys' fees and approved settlements comprised of a non-monetary benefit. Brown Decl., ¶ 58. Courts widely recognize that "a corporation may receive a 'substantial benefit' from a derivative suit . . . regardless of whether the benefit is pecuniary in nature." *Mills*, 396 U.S. at 395; *see Unite Nat'l Ret. Fund v. Watts*, Civil Action No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *18 (D.N.J. Oct. 27, 2005) ("the great benefit conferred upon Shell as a result of the new corporate governance principles provided for in the settlement agreement . . . will serve to prevent and protect Shell from

the reoccurrence of certain alleged wrongdoings."). In particular, non-monetary benefits may support a settlement where "the relief is intended to prevent future harm." *Watts*, 2005 U.S. Dist. LEXIS 26246, at *9. A non-monetary benefit is a "substantial benefit" where it is "'something more than technical in its consequence and . . . accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to stockholder's interest.'" *Mills*, 396 U.S. at 396.

The Settlement achieved by Derivative Plaintiff's Counsel confers substantial benefits upon 6D Global and its shareholders in the form of corporate governance enhancements and will allow 6D Global to resolve the Derivative Action promptly and efficiently. Brown Decl., ¶ 59. Indeed, the Settling Parties acknowledge that the Settlement confers benefits on 6D Global and its shareholders. Stip., §§ I.B, II; Brown Decl., ¶ 60.

### 2. The Contingent Nature of the Fee and Substantial Litigation Risk

Courts have consistently recognized that litigation risks make the contingent nature of the fee a critical factor in evaluating its reasonableness. *Grinnell*, 495 F.2d at 471 ("Perhaps the foremost of [the less objective] factors is the attorney's 'risk of litigation,' *i.e.*, the fact that, despite the most vigorous and competent of efforts, success is never guaranteed."); *Goldberger*, 209 F.3d at 54 (noting the risk of non-payment is the most important factor in determining attorneys' fees). "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, irrespective of whether they win or lose." *Blum v. Stenson*, 465 U.S. 886, 903 (1984).

Unlike counsel for Defendants, who are regularly paid handsome hourly rates and reimbursed for expenses, Derivative Plaintiff's Counsel have not been compensated for any of their time or expenses since the Derivative Action was initiated in December 2015, except for a

$500 payment by the 6D Defendants' insurer for uploading the Stipulation and its exhibits on Derivative Plaintiff's Counsel's website. Preliminary Approval Order, ¶ 7; Dkt. 29; Brown Decl., ¶ 64. Derivative Plaintiff's Counsel undertook the Derivative Action on a wholly contingent basis with no assurance that they would be paid for their 369 hours of hard work or the thousands of dollars in costs and expenses that they advanced that were required to vigorously and effectively prosecute this very difficult case. Brown Decl., ¶ 65.

### 3. The Quality of Representation

"The 'quality of representation' factor is designed to reward 'particularly resourceful' legal work that 'secures a substantial benefit . . . with a minimum of time invested.'" *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717(DGT), 2005 U.S. Dist. LEXIS 28431, at *10 (E.D.N.Y. Nov. 15, 2005); *Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 737 (S.D.N.Y. 1986) (same). Derivative Plaintiff's Counsel are seasoned practitioners in this highly specialized area of the law. *See* Exhibit 1 to Brown Decl.; Brown Decl., ¶ 66.

"The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) (same) *aff'd¸* 798 F.2d 35 (2d Cir. 1986); *Grinnell*, 495 F.2d at 471. Here, 6D Global and the Individual Defendants are represented by experienced and capable counsel from well-respected law firms, who were formidable adversaries and tough negotiators in this case. Brown Decl., ¶ 67. 6D Global and the Individual Defendants were also formerly represented by experienced and capable counsel from another well-respected law firm, who were also formidable adversaries and tough negotiators in this case. Brown Decl., ¶ 68.

### 4. Public Policy Favoring Shareholder Derivative Litigation

"[T]his action [is] 'worthy of judicial encouragement[.]'" *Dubin v. E.F. Hutton Grp., Inc.*,

845 F. Supp. 1004, 1018 (S.D.N.Y. 1994). Derivative actions like this case play an important role in protecting corporate interests and holding management accountable. Brown Decl., ¶ 69; *see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (a derivative action can "protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers'"); *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966) ("derivative suits have played a rather important role in protecting shareholders of corporations from the designing schemes and wiles of insiders"); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949) (the derivative action "was long the chief regulator of corporate management" and "without it there would be little practical check" on abuses by management).

Accordingly, as in securities class action litigation, an award of attorney's fees in these complex derivative actions should be informed by the public policy that shareholders of distressed corporations "should have reasonable access to counsel with the ability and experience necessary to analyze and litigate complex cases." Brown Decl., ¶ 70; *In re Union Carbide Corp. Consumer Products Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989); *Warner Commc'ns*, 618 F. Supp. at 750-51 ("private lawsuits should be encouraged" in furtherance of federal securities laws' "purpose of protecting investors and consumers").

In this Derivative Action, Plaintiff alleges that the Company lacked sufficient controls, which in turn resulted in, among other things, false and misleading statements that, when exposed, cost and have continued to cost the Company dearly. Brown Decl., ¶ 72. Yet, as a result of the Derivative Action, the shareholders will obtain an immediate, long-lasting, and substantial benefit from the Reforms, as opposed to the very real risk of no recovery at all. Brown Decl., ¶ 72.

Derivative Plaintiff's Counsel seek fees that would compensate them modestly for their work and the substantial benefits they secured for 6D Global and its shareholders. Brown Decl., ¶

73.  The Fee and Expense Amount, therefore, "will not 'provide an incentive for counsel to flood the courts with unmeritorious litigation.'" *Dubin*, 845 F. Supp. at 1018.  Indeed, Derivative Plaintiff's Counsel benefitted the Company by containing litigation expenses that would likely have drained limited insurance funds. Brown Decl., ¶ 73.

### 5.  Counsel's Reasonable Time and Expense Devoted to This Litigation

Counsel's lodestar can serve as a cross-check for assessing the reasonableness of a fee award. *Velez v. Novartis Pharms. Corp.*, No. 04-09194, 2010 U.S. Dist. LEXIS 125945, at *62-63 (S.D.N.Y. Nov. 30, 2010).  "[W]here [lodestar is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *58 (S.D.N.Y. Dec. 23, 2009).

Derivative Plaintiff's Counsel has collectively devoted 369.2 hours to the commencement, litigation, and resolution of the Derivative Action. Brown Decl., ¶¶ 75, 81. Their aggregate lodestar is $221,792.50, which is significantly higher than the agreed-upon Fee and Expense Amount. *See* Brown Decl., ¶¶ 75-76, 81.  Thus, the requested fee represents a negative lodestar of 2.96. Brown Decl., ¶ 77.  This multiplier is well below the fees awarded in other corporate governance settlements of derivative cases and is reasonable, especially given the substantial benefits achieved and the complexity of the issues presented.  Brown Decl., ¶ 77; *see, e.g.*, *Wal-Mart Stores*, 396 F.3d at 123 (affirming multiplier of 3.5); *Velez*, 2010 U.S. Dist. LEXIS 125945, at *64-65 (awarding a multiplier of 2.4 and noting that it "falls well within (indeed at the lower end) of the range of multipliers accepted within the Second Circuit") (collecting cases approving lodestar multipliers ranging from 2.09 to 5.5).

A review of the tasks and the hours devoted to the Derivative Action demonstrates that the

work done was reasonably necessary and substantially contributed to Derivative Plaintiff's Counsel's ability to secure the benefit conferred. Brown Decl., ¶ 80. The tasks that consumed the vast majority of Derivative Plaintiff's Counsel's time included: (1) inspecting, analyzing, and reviewing 6D Global's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) drafting and filing the initial shareholder derivative complaint; (3) researching the applicable law with respect to the claims asserted in the Derivative Action and the potential defenses thereto; (4) reviewing and analyzing the relevant pleadings in the action filed by the SEC against certain of the Defendants, captioned *United States Securities and Exchange Commission v. Benjamin Wey, et al.*, CA No. 15-7116-PKC (S.D.N.Y. September 10, 2015) and in the DOJ action against two individuals, including one of the Defendants, captioned *USA v. Benjamin Wey, et al.*, 15-CR-00611-AJN (S.D.N.Y. September 8, 2015); (5) drafting and filing the amended shareholder derivative complaint; (6) researching corporate governance issues and best practices; (7) preparing an extensive written settlement demand; (8) preparing an extensive mediation statement and a second mediation statement for the Mediators' eyes only; (9) participating in extensive settlement discussions with the Mediators and Defendants' Counsel; (10) drafting the Stipulation; and (11) preparing the motion papers in support of settlement approval. Brown Decl., ¶ 80.

Furthermore, Derivative Plaintiff's Counsel incurred and advanced a total of $3,524.79 in unreimbursed expenses in connection with prosecuting the Derivative Action (not including the expense connected to uploading the Stipulation and its exhibits to Derivative Plaintiff's Counsel's website). Brown Decl., ¶ 83.

### 6. The Magnitude and Complexity of the Derivative Action

Courts recognize that the greater risks attending complex actions that raise difficult or

novel issues should be accounted for in the multiplier. Brown Decl., ¶ 78; *see, e.g.*, *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999). Derivative Plaintiff's Counsel would be required to expend significant time and effort to master an enormous body of complex facts and law to effectively pursue and successfully resolve the claims. Brown Decl., ¶ 79.

### C. The Service Award is Reasonable and Should Be Approved

It is well-settled that service awards may be given to compensate named plaintiffs for efforts expended "'for the benefit of the lawsuit.'" *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001). Plaintiff has devoted his time and energy to this uncertain litigation, standing up for the Company and its shareholders. Brown Decl., ¶ 85. The requested Service Award of $1,250 – to be paid out of the Fee and Expense Amount – is modest compared to those awarded in similar complex representative actions and approved by federal courts. Brown Decl., ¶ 85; *see, e.g.*, *Bd. of Trs. of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 686, 2012 U.S. Dist. LEXIS 79418, at *8-9 (S.D.N.Y. June 7, 2012) (awarding $50,000 to each of the three named class representatives); *Strougo*, 258 F. Supp. 2d at 263-64 (collecting cases and granting an award of $15,000 to class representative); *see also, e.g.*, *In re Remeron End-Payor Antitrust Litig.*, Nos. 02-2007 (FSH), 04-5126 (FSH), 2005 U.S. Dist. LEXIS 27011, at *93-95 (D.N.J. Sep. 13, 2005) (approving $30,000 awards); *In re Cendant Corp. Derivative Litig.*, 232 F. Supp. 2d 327 (D.N.J. 2002) (approving $25,000 award). Accordingly, the Service Award should be finally approved. Brown Decl., ¶ 86.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the Settlement.

DATED: January 17, 2017                    Respectfully submitted,

                                                          **THE BROWN LAW FIRM, P.C.**

By:      _/s/Timothy W. Brown_
               Timothy W. Brown (TB-1008)
               240 Townsend Square
               Oyster Bay, New York 11771
               Tel: (516) 922-5427
               Fax: (516) 344-6204
               Email: tbrown@thebrownlawfirm.net

               _Counsel for Plaintiff Allan Scott_