UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLAN SCOTT, DERIVATIVELY AND
ON BEHALF OF 6D GLOBAL
TECHNOLOGIES INC.,

               Plaintiff,

v.

BENJAMIN TIANBING WEI A/K/A/
BENJAMIN WEY, NEW YORK GLOBAL
GROUP, INC., NYGG (ASIA), LTD.,
TEJUNE KANG, MARK SZYNKOWSKI,
ADAM HARTUNG, DAVID S.
KAUFMAN, TERRY MCEWEN,
ANUBHAV SAXENA, PIOTR A.
CHRZASZCZ, and MICHAEL BANNOUT,

               Defendants,

and

6D GLOBAL TECHNOLOGIES INC.,

               Nominal Defendant.

Civil Action No. 1:15-cv-09691 (RWS)

---

## OBJECTIONS OF THE TRUST OBJECTORS
## TO PROPOSED SETTLEMENT OF DERIVATIVE ACTION

**PRESS KORAL LLP**
825 Third Avenue, Second Floor
New York, NY  10022
Telephone:  (212) 922-1111
Facsimile:  (347) 342-3882
mpress@presskoral.com

# TABLE OF CONTENTS

**Page:**

| | | | |
|---|---|---|---|
| **I.** | **Introduction**................................................................................................................1 | | |
| **II.** | **Statement of Facts**....................................................................................................2 | | |
| | A. | Plaintiff's Claims ...............................................................................................2 | |
| | B. | The Court's Decision in *Puddu*........................................................................2 | |
| | C. | The Proposed Settlement ..................................................................................3 | |
| **III.** | **Argument**..................................................................................................................5 | | |
| | A. | The Proposed Settlement Provides No Meaningful Benefits to the Company or its Shareholders............................................................................6 | |
| | B. | Substantial Grounds Exist to Dismiss This Action on the Merits .........................7 | |
| | C. | The Company and its Shareholders Would Benefit Substantially More From a Dismissal of the Action on the Merits ...................................................7 | |
| **Conclusion** ........................................................................................................................8 | | | |

# TABLE OF AUTHORITIES

**Cases**

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974) ............................................... 6

*In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302(SWK), 2006 WL 2572114 at *3 (S.D.N.Y. Sept. 6, 2006) ................................................................................................ 6

*In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) 5

*In re Pfizer Inc. S'holder Derivative Litig.*, 780 F.Supp.2d 336, 340 (S.D.N.Y.2011) .................. 5

*Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 118 (S.D.N.Y. 1999) ............................... 7

*Puddu v. 6D Global Technologies, Inc.*, 239 F.Supp.3d 694 (S.D.N.Y. 2017) .......................... 1, 2

*Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982) ................................................................ 5

**Federal Statutes**

FED. R. CIV. P. 23.1 ........................................................................................................................ 5

Objectors Capricorn Irrevocable Grantor Trust, Epics Grantor Retained Annuity Trust I, Epics Grantor Retained Annuity Trust II, Epics Grantor Retained Annuity Trust III, Kaskade Grantor Retained Annuity Trust, and The Le Cheval Irrevocable Grantor Trust (the "Trust Objectors") submit the following objections to the proposed settlement (the "Proposed Settlement") of this shareholders' derivative action, as set forth below.

I. **INTRODUCTION**

The Trust Objectors, which collectively own a total of 13,173,188 shares of the common stock of 6D Global Technologies, Inc. (the "Company"), object to the Proposed Settlement on grounds that it is not fair, reasonable or adequate—and thus should not be approved—because it provides no meaningful benefits to the Company and its shareholders. As set forth below, and in the prior Objections of shareholder NYGG (Asia) Ltd.,[1] the sole "benefits" the Proposed Settlement purports to provide are empty corporate governance measures, designed as a fig leaf to mask a simple payoff of Plaintiff's counsel. On the other hand, the Proposed Settlement is harmful to the Company and its shareholders because, in requiring the Company to implement apparently remedial measures, it gives unwarranted credence to the allegations in Plaintiff's Amended Complaint.

In view of the likelihood that the untested complaint in this action can be dismissed outright—like the complaint in the related case *Puddu v. 6D Global Technologies, Inc.*, 239 F.Supp.3d 694 (S.D.N.Y. 2017)—the Court should not approve the Proposed Settlement. Instead, the Court should set the stage for Defendants to make a motion to dismiss the action on the merits, which alone will restore the reputation of the Company.

---

[1] The Trust Objectors join NYGG (Asia) Ltd. in its prior objections.

II.   **STATEMENT OF FACTS**

The Trust Objectors incorporate herein, by reference, the Factual Background in the accompanying Objections of NYGG (Asia) Ltd. to the Proposed Settlement. *See* Dkt. Nos. 37 & 38. In addition, the Trust Objectors state as follows.

   A.   **Plaintiff's Claims**

In his Amended Complaint, Plaintiff largely pleads alleged misconduct by Benjamin Tianbing Wei a/k/a/ Benjamin Wey ("Wey") and claims that the Company failed to disclose to the investing public and NASDAQ that Wey allegedly was the beneficial owner of more than 5% of the Company—through an alleged ownership interest in NYGG (Asia) Ltd.—and allegedly exercised control over its day to day operations. *See* Dkt. No. 17 ¶¶ 109-279. The allegations of the Amended Complaint substantially track the complaint in *Puddu*, 239 F.Supp.3d at 694, and are focused upon alleged failures to disclose material facts—*i.e.*, federal securities violations—rather than, for example, alleged mismanagement or related party transactions. *See id.* Both *Puddu* and the present action, in turn, were based upon allegations in an Indictment against Wey by the United States Attorney for the Southern District of New York, and an accompanying enforcement action by the United States Securities Exchange Commission, each of which subsequently was withdrawn. *See* Declaration of Michael Firestone ("Firestone Dec."), Dkt. No. 38, Exhs. D & E.

The principle damages to the Company alleged in the Amended Complaint are costs it incurred in responding to the alleged violations by Wey and others, and overall injury to the reputation and good will of the Company. *See id.* ¶¶ 280-83.

   B.   **The Court's Decision in *Puddu***

In *Puddu*, this Court dismissed a securities class action complaint alleging substantially the same facts as those set forth in the Amended Complaint. The Court found the complaint failed to sufficiently allege that Wey was a beneficial owner of more than 5% of the Company. *See Puddu*,

2

239 F. Supp. 3d at 704 ("Plaintiffs have not alleged any other facts demonstrating that Wey beneficially owned more than five percent of 6D shares, which is the threshold required to be a 'beneficial owner' under Item 403."). The complaint also failed to sufficiently allege that Wey usurped the authority of the Company's board, and anything short of complete usurpation was not actionable. *See id.* at 705 ("Absent allegations that Wey controlled the 6D Board, this alleged omission is insufficient to state a claim.").

Furthermore, the Court found that the Plaintiffs failed to plead facts establishing the Defendants' motive or opportunity to commit fraud. *See id.* at 706.

> The only "motive" that Plaintiffs attempt to plead is that "Defendants concealed Wey's involvement because they knew they could not reveal to investors that he was associated with 6D," and that "[i]t is plain that Defendants understood that being associated with Wey was a serious liability." SAC ¶¶ 173, 178.
>
> However, as set forth above, it was disclosed in public SEC filings that Wey was a representative of 6D's largest if not controlling shareholder, NYGG (Asia), and had interactions with 6D in that context. This disclosure counters the Plaintiffs' "motive and opportunity" theory that "Defendants concealed Wey's involvement because they knew they could not reveal to investors that he was associated with 6D."

*Id.*

Finally, the Court found that complaint failed to plead facts establishing that any loss to the Company's shareholders was attributable to its alleged failure to disclose the ownership and control of Wey. *See id.* at 708-9 ("Plaintiffs have also not adequately pled facts which, if proven, would show that [their] loss was caused by the alleged misstatements as opposed to intervening events.").

### C.   The Proposed Settlement

The Plaintiff filed this action on December 11, 2015. On February 11, 2016, the Plaintiff agreed to stay the action pending the outcome of the motion to dismiss in the *Puddu* action. *See*

3

Dkt. No. 6. During the period of the stay, Plaintiff filed the present Amended Complaint, which substantially tracks the allegations of the complaint in *Puddu*. As set forth above, on March 6, 2017, this Court dismissed the *Puddu* action in its entirety. To date, the sufficiency of the Complaint in this action has not yet been tested.

On November 15, 2017, the Plaintiff and the Individual Defendants executed the Proposed Settlement. *See* Dkt. No. 27, Proposed Settlement. In the Proposed Settlement, the Company would receive no monetary consideration. *See* Proposed Settlement § IV.2 & Exh. A. Instead, the Company would "adopt and/or implement certain corporate governance measures at the Company (or continue to implement certain of them)." *See* Notice of Proposed Settlement § III. The proposed corporate governance measures are as follows:

- The Company shall "continue" to "maintain its extant Code of Ethics," and "continue its practice of having all employees read the Code of Ethics and certify that they have read and understand the provision of the Code of Ethics."[2]

- For a period of one year after final approval of the Settlement, the Company "agrees to require employee training for employees who are employed in the Company's executive offices, on issues relevant to the Company on securities, compliance, insider trading, ethics, and conflict of interest issues."[3]

- Solely in the event that the Company is re-listed as a publicly traded company, "[w]ithin 12 months of 6D Global's becoming public again, 6D Global agrees to require education/training for its Directors (the "Directors") on issues relevant to the Company on securities, compliance, Board professionalism, insider trading, ethics, and conflict of interest issues, for a period of five (5) years following final approval of the Settlement."[4]

---

[2] Plaintiff acknowledged in the Complaint that the Company already has a robust Code of Ethics. *See* Am. Compl. ¶¶ 104-107.
[3] However, the Proposed Settlement does not require any particular amount of training or identify the nexus between these topics and any facts alleged in the Complaint.
[4] Again, the Proposed Settlement does not require any particular amount of training or identify the

4

On the other hand, the Proposed Settlement provides that Plaintiff's counsel will be paid an award of attorneys' fees and expenses in the amount of $75,0000. *See* Proposed Settlement § 5.1.

### III. ARGUMENT

Under Rule 23.1 of the Federal Rules of Civil Procedure, a "derivative action may be settled . . . only with the court's approval." FED. R. CIV. P. 23.1. In determining whether to approve a settlement, the "central question ... is whether the compromise is fair, reasonable and adequate." *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) (Sweet, J.) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982)). "[T]his requires consideration, in particular, of whether the settlement is the result of arm's-length negotiations in which plaintiffs' counsel has effectively represented the interest of the shareholder class, and whether the substantive terms of the settlement are in the interests of [the company] and its shareholders relative to the likely rewards of litigation." *Fab*, 148 F. Supp. 3d at 280 (quoting *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F.Supp.2d 336, 340 (S.D.N.Y.2011)).

In determining whether the substantive terms of a settlement are in the interest of the company and its shareholders, the Court should consider factors including: (1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to proposed settlement. *See Fab*, 148 F. Supp.3d at 281 (quoting *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302(SWK), 2006 WL 2572114 at *3 (S.D.N.Y. Sept. 6, 2006); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974)).

---

nexus between these topics and any facts alleged in the Complaint.

5

### A. The Proposed Settlement Provides No Meaningful Benefits to the Company or its Shareholders

Under this standard, the Proposed Settlement is not "fair, reasonable or adequate," and thus should not be approved, because it provides no meaningful benefits to the Company and its shareholders. The sole "benefits" it purports to provide are empty corporate governance measures, designed as a fig leaf to mask a simple payoff of Plaintiff's counsel. Indeed, the first such "measure" concededly is not a new measure at all, but that the Company shall "maintain its *extant* Code of Ethics." Notice § III.1 (emphasis added). This specious "measure" obviously does not provide any new benefit to the Company or its shareholders, and its emptiness is indicative of the transaction as a whole.

The remaining two corporate governance "measures"—unspecified general corporate ethics training for executive office employees and directors—likewise are illusory. The first is generalized corporate ethics training for "employees who are employed in the Company's executive offices," for a period of at least one year following the Settlement. *See* Proposed Settlement, Exh. A. By its terms, such training would only be given to a small subset of the Company's employees, those working in the Company's "executive offices," and only for a single year. Nothing in the Proposed Settlement specifies the quantity or rigor of the training, or the method of delivery. For example, such training could consist merely of reviewing the extant Code of Ethics. Furthermore, the proposed training, "on securities, compliance, insider trading, ethics, and conflict of interest issues," *id.*, is too generalized and is not targeted at remedying the conduct alleged by the Plaintiff in the Complaint.

The second training measure, training of the Company's directors, is not triggered unless the Company again becomes publicly traded, and thus is of zero benefit to the Company and its shareholders unless that contingency occurs. However, even if the Company does again become

publicly traded, as in the case of the ersatz employee training, the Proposed Settlement would allow wholly perfunctory training, with little nexus to anything alleged in the Complaint.

Because the Company and its shareholders will receive nothing of value in the Proposed Settlement, it is unfair and cannot be approved, as a matter of law. *See Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 118 (S.D.N.Y. 1999) (declining to approve class action settlement where class received nothing of value).

### B. Substantial Grounds Exist to Dismiss This Action on the Merits

In the judgment of the Trust Objectors, the Complaint in this action is deficient for the same reasons as the complaint in *Puddu*, and there are substantial grounds to dismiss it on the merits. In addition, Plaintiff cannot establish, among other things, standing to sue derivatively on behalf of the Company.

### C. The Company and its Shareholders Would Benefit Substantially More From a Dismissal of the Action on the Merits

Plaintiff states in Paragraph 283 of the Complaint that the allegations against Defendants have been harmful to the reputation and good will of the Company. By causing the Company to adopt purported corporate governance measures, the Proposed Settlement inappropriately appears to validate Plaintiff's claims and the existence of violations and corporate governance failures at the Company. This is harmful to the Company's reputation and ability to operate its business. On the other hand, an outright dismissal of the Complaint would demonstrate to the market that the claims set forth in the Complaint are without merit and would restore the reputation of the Company.

Given the illusory benefits of the Proposed Settlement, and the strong prospect that this action would be dismissed, the Trust Objectors submit that the Court should deny approval of the Proposed Settlement and instead set the stage for a motion to dismiss the Complaint on the merits.

## CONCLUSION

For the reasons stated above, the Trust Shareholder Objectors respectfully requests that the Court deny approval to the Proposed Settlement.

Dated: New York, New York
February 14, 2018

                              Respectfully submitted,

                              **PRESS KORAL LLP**

                              By:   */s/ Matthew J. Press*
                                         Matthew J. Press

                              825 Third Avenue, Second Floor
                              New York, NY  10022
                              tel: (212) 922-1111
                              fax: (347) 342-3882
                              cell: (347) 419-0983

                              *Attorneys for the Trust Objectors*