UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALLAN SCOTT, DERIVATIVELY AND ON BEHALF OF 6D GLOBAL TECHNOLOGIES, INC., <br><br>                    Plaintiff, <br><br>      -   against - <br><br> BENJAMIN TIANBING WEI A/K/A BENJAMIN WEY; NEW YORK GLOBAL GROUP, INC.; NYGG (ASIA) LTD., TEJUNE KANG; MARK SZYNKOWSKI; ADAM HARTUNG; DAVID S. KAUFMAN; TERRY MCEWEN; ANUBHAV SAXENA; PIOTR A. CHRZASZCZ, and MICHAEL BANNOUT, <br><br>                 Defendants. | Case No. 1:15-cv-09691-RWS |

**MEMORANDUM OF LAW IN SUPPORT OF THE 6D DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S PROPOSED SECOND AMENDED COMPLAINT**

CATAFAGO FINI LLP
350 Fifth Ave., Suite 7710
New York, NY 10118
(212) 239-9669

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS........................................................................................... 3

    A.   The Parties................................................................................................. 3

    B.   The Section 14(a) Claim ........................................................................... 5

    C.   The Breach of Fiduciary Duty Claims ...................................................... 6

    D.   The Unjust Enrichment Claims ................................................................. 7

    E.   Allegations Regarding Other Lawsuits Against 6D ................................... 7

    F.   The Alleged Demand Futility...................................................................... 8

    G.   6D's Bylaws Contain a Forum Selection Clause that Designates Delaware Chancery Court as the Sole and Exclusive Forum for any Derivative Action ...................................... 8

    H.   6D's Certificate of Incorporation Explicitly Exculpates the Board Members in Connection with Claims for Fiduciary Duty ......................................................... 8

ARGUMENT.............................................................................................................. 8

    I.   Plaintiff's Section 14(a) Claim Must be Dismissed for Failure to State a Claim Under Rule 12(b)(6) and for Lack of Standing Pursuant to Fed. R. Civ. P. 23.1 .............................. 8

        A.   Plaintiff has Improperly Added a Section 14(a) Claim in an Attempt to Avoid the Proper Jurisdiction of the Delaware Chancery Court......................................................... 8

        B.   Because Defendants Kang and NYGG-Asia Had Sole Voting Power Over a Majority of 6D's Shares, Plaintiff's Section 14(a) Claim Fails for Lack of Causation..................... 11

        C.   Plaintiff Lacks Standing to Bring the Section 14(a) Claim......................... 11

    II.   The Forum Selection Clause in 6D's Bylaws Requires Dismissal Under the Doctrine of *Forum Non Conveniens* ...................................................................... 13

    III.   Plaintiff's Claim Must be Dismissed for Lack of Demand or DEMAND Futility .......... 15

        A.   Plaintiff Has Failed to Plead with Particularity Facts Showing that a Majority of the Board is Personally Interested in the Outcome of the Litigation ....................................... 16

        B.   Plaintiff Has Failed to Plead with Particularity Facts Showing that a Majority of the Board Lacks Independence ................................................................ 23

        C.   Plaintiff Has Failed to Adequately Allege that the Challenged Transactions Were Not the Product of a Valid Exercise of Business Judgment ................................................. 24

CONCLUSION .........................................................................................................25

## CASES

*Aronson v. Lewis*, 473 A.2d 805 (Del.1984) ........................................................... 16, 19

Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49 (2013)................ 13

*Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934 (Del. Ch. 2013)....... 14

*Brautigam v. Rubin*, 55 F. Supp. 3d 499 (S.D.N.Y. 2014)....................................................passim

*Brewer v. Breen*, 2018 WL 565267 (S.D.N.Y. Jan. 23, 2018) ............................................17, 18

*Canty v. Day*, 13 F. Supp. 3d 333 (S.D.N.Y. 2014)............................................................passim

*Central Laborers' Pension Fund v. Dimon*, 2014 WL 3639185 (S.D.N.Y. July 23, 2014) ........ 19

*Citi Structure Const. v. Zurich Am. Ins. Co.*, 2015 WL 4934414 (S.D.N.Y. Aug. 18, 2015)...... 14

*Cruise v. Castleton, Inc.*, 449 F. Supp. 564 (S.D.N.Y. 1978) .................................................... 14

*Distribuidora De Discos Karen C. Por A. v. Universal Music Grp., Inc.*, 2017 WL 1019697
    (S.D.N.Y. Mar. 15, 2017) ......................................................................................... 1

*F5 Capital v. Pappas*, 856 F.3d 61 (2d Cir. 2017) .................................................................. 17

*F5 Capital, a Cayman Islands Corp. v. Pappas*, 2016 WL 900389 (S.D.N.Y. Feb. 17, 2016)... 24

*In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2010 WL
    5248815 (S.D.N.Y. Dec. 14, 2010) ........................................................................ 11

*In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp.
    2d 260 (S.D.N.Y. 2010) ......................................................................................... 13

*In re BJ's Wholesale Club, Inc.*, 2013 WL 396202 (S.D.N.Y. Jan. 21, 2013)........................... 24

*In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del.Ch.1996) .................................. 20

*In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106 (Del. Ch. 2009)....................16, 19

*In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148 (2d Cir. 2015) ........ 12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445 (S.D.N.Y. 2013)........ 12

*In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963 (Del.Ch.2007)............................................. 15

*In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453 (S.D.N.Y. 2010) ................... 22

*In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d 366 (S.D.N.Y. 2013) ........................ 16, 17, 18

*In re Symbol Tech. Sec. Litig.*, 762 F. Supp. 510 (E.D.N.Y. 1991) ....................................15, 22

*Kahn v. M & F Worldwide Corp.*, 2014 WL 996270 (Del. Mar. 14, 2014)................................. 24

*Levine v. Smith*, 591 A.2d 194 (Del. 1991), ............................................................................ 24

*Limmer v. Gen. Tel. & Elecs. Corp.*, 1977 WL 1029 (S.D.N.Y. Mar. 21, 1977)......................... 9

*Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385 (S.D.N.Y. 2011) ......................................... 11

*Maldonado v. Flynn*, 597 F.2d 789 (2d Cir. 1979) ...............................................................9, 10

*MasterCard Int'l Inc. v. Argencard Sociedad Anonima,* 2002 WL 432379 (S.D.N.Y. Mar. 20,
    2002)..................................................................................................................... 14

*Rahbari v. Oros*, 732 F. Supp. 2d 367 (S.D.N.Y. 2010) .................................................18, 19, 20

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ......................................................................... 24

*See In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574 (S.D.N.Y. 2007)...................... 17

*St. Claire Shores General Employees Retirement System v. Eibeler*, 2006 WL 2849783
   (S.D.N.Y. Oct. 4, 2008) ...................................................................................................... 11

*Steinberg v. Dimon*, 2014 WL 3512848 (S.D.N.Y. July 16, 2014) ........................................... 22

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) ................................................................................ 21

*Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835 (S.D.N.Y. 2017) ............ 13

*Tiberius Capital, LLC v. PetroSearch Energy Corp.,* 2011 WL 1334839 (S.D.N.Y. Mar. 31,
   2011)................................................................................................................................. 11

*Witchko v. Schorsch*, 2016 WL 3887289 (S.D.N.Y. June 9, 2016) ....................................1, 9, 10

Defendants 6D Global Technologies, Inc. ("6D"), Tejune Kang ("Kang"), Mark Szynkowski ("Szynkowski"), Terry McEwen ("McEwen"), Piotr A. Chrzaszcz ("Chrzaszcz"), and Michael Bannout ("Bannout") (collectively, the "6D Defendants") respectfully submit the following Memorandum in Support of their Motion to Dismiss Plaintiff's proposed Second Amended Complaint pursuant to Fed. R. Civ. P. 9(b), 12(b)(3), 12(b)(6), 23.1(b), and the doctrine of *forum non conveniens*.[1]

## PRELIMINARY STATEMENT

Plaintiff's derivative action is completely without merit, and should be dismissed, for several independent reasons.

First, Plaintiff's Section 14(a) claim is defective on its face as a matter of law for three separate reasons.

The first independent reason that Plaintiff's Section 14(a) claim fails is because the Section 14(a) claim does not challenge a specific transaction, but instead alleges that the Defendants used the proxy materials to remain in power and thus continue their fiduciary breaches. The courts in this circuit have held that this does not state a Section 14(a) claim. As the Southern District of New York recently held, in a case involving the same law firm that is currently representing the Plaintiff, allegations that the alleged bad actors used the proxies to be reelected in order to continue breaching their fiduciary duties does not state a Section 14(a) claim. *See Witchko v. Schorsch*, 2016 WL 3887289, at *7 (S.D.N.Y. June 9, 2016). Rather, it is a futile attempt to wrap what is essentially a state law breach of fiduciary duty claim in the guise of a federal Section 14(a) claim.

The second independent reason that Plaintiff's Section 14(a) claim is defective is that, as a matter of law, Plaintiff cannot show any causation. To assert a claim under Section 14(a), Plaintiff must plausibly allege that the challenged proxy materials were an essential link in the accomplishment of the proxy vote being challenged. Where, as here, it is undisputed on a motion

---

[1] A motion to amend is reviewed under the same standard as a motion to dismiss. *Distribuidora De Discos Karen C. Por A. v. Universal Music Grp., Inc.*, 2017 WL 1019697, at *2 (S.D.N.Y. Mar. 15, 2017) ("Motions to amend and motions for judgment on the pleadings are considered under the same standard as a motion to dismiss for failure to state a claim.").

to dismiss that the alleged wrong-doers had sole voting power over a *majority* of the company's outstanding shares, courts have held that a Section 14(a) claim should be dismissed, because the outcome of the proxy vote was a foregone conclusion.  Thus, Plaintiff's claim here must be dismissed because Plaintiff cannot possibly demonstrate that the alleged misrepresentations in the proxies affected the outcome of the proxy vote.

The third independent reason that Plaintiff's Section 14(a) claim is defective is that Plaintiff lacks standing to bring the claim.  In order to bring a derivative action, the Plaintiff must have been a shareholder at the time of the events complained of.  However, Plaintiff did not purchase his 6D shares until *August 17, 2015*, months *after* the April 2015 proxies were voted on at the June 3, 2015 Annual Shareholder Meeting.

Incredibly, Plaintiff's counsel deliberately concealed the date that Plaintiff purchased his 6D shares in the Original Complaint and the First Amended Complaint.  *See* Doc. 59-2, ¶ 50. Plaintiff admitted to the belated date of purchase *for the first time* only in his proposed Second Amended Complaint and only *after* counsel for the 6D Defendants demanded that Plaintiff disclose this date.

Second, in light of the fact that the sole federal claim must be dismissed, Plaintiff's remaining state law claims must be dismissed because 6D's bylaws contain a forum selection clause, which designates Delaware Chancery Court as the *sole* and *exclusive* forum for any derivative action.  Courts in the Second Circuit and Delaware Chancery Court have routinely held that forum selection clauses in company bylaws are valid and enforceable.  Thus, Plaintiff's remaining state law breach of contract and unjust enrichment claims must also be dismissed.

Third, just as the Plaintiff does not have standing as to the Section 14(a) claim, many of his state law claims arise from events that allegedly took place prior to August 17, 2015, the date when Plaintiff first purchased his shares.  Accordingly, Plaintiff lacks standing to bring these claims as well, and, for this reason alone, they too must be dismissed.

Finally, Plaintiff's derivative action must be dismissed for his failure to make a demand on the 6D Board of Directors or plead facts sufficient to adequately allege that demand would have

been futile, or that the Board's alleged actions would not be protected by the business judgment rule.

Plaintiff's pleading is rife with false assertions regarding Tejune Kang and the other directors.[2]  Because the pleading is defective on its face as a matter of law as explained herein, it is subject to dismissal without the need to rebut each of these distortions.

## STATEMENT OF FACTS

### A. The Parties

#### i. *Plaintiff*

Derivative plaintiff Allan Scott ("Plaintiff") is alleged to be a current 6D shareholder who has continuously held 6D shares at all relevant times.  *See* Plaintiff's proposed Second Amended Complaint, Doc. 59-2 ("SAC"), ¶ 387.  However, Plaintiff admits *for the first time* in the SAC that he did not purchase his shares of 6D until August 17, 2015.  SAC ¶ 50.

#### ii. *The 6D Defendants*

Nominal Defendant 6D is a Delaware corporation with principal executive offices located in New York.  SAC ¶ 51.

Defendant Kang is the Chief Executive Officer of 6D and has served as Chairman of the Board of Directors of 6D (the "Board") since September 2014.  SAC ¶ 64.  As of April 20, 2015, Kang had sole voting power over 29.7% of 6D's outstanding shares.  SAC ¶ 65.

Defendant Szynkowski served as the Chief Financial Officer of 6D from December 2014 to December 2017.  SAC ¶ 70.

Defendant McEwen served as a member of the Board of Directors of CleanTech Innovations, Inc. ("CleanTech"), and then subsequently as a member of the 6D Board until October

---

[2] For example, the complaint takes out of context certain facts relating to Adam Hartung's departure from the 6D Board.  SAC ¶¶ 286-92.  While the legal arguments made herein do not turn on these allegations, to keep things in context we respectfully advise that Adam Hartung was attempting to himself become CEO at a high salary for himself i.e. shortly before he made his unsuccessful motion regarding the CEO position he voted to essentially double the salary for the CEO position.

5, 2015.  SAC ¶ 79.  McEwen also served as interim Chief Executive Officer and Chairman of the Board from June 11, 2014 until September 2014.  SAC ¶ 80.

Defendant Chrzaszcz began serving as a member of 6D's Board on October 24, 2015, when he was nominated to fill the vacancy created by the resignation of David Kaufman.  SAC ¶ 87.  As of February 14, 2018, he was no longer a member of the Board.  SAC ¶ 87.

Defendant Bannout began serving as a member of 6D's Board on October 24, 2015 to fill the vacancy created by the resignation of Defendant Saxena.  SAC ¶ 90.  As of February 14, 2018, he was no longer a member of the Board.  SAC ¶ 90.

### iii. *The Outside Directors*

The former outside directors are Defendants Adam Hartung ("Hartung"), David S. Kaufman ("Kaufman") and Anubhav Saxena ("Saxena") (collectively, the "Outside Directors").

The Outside Directors are alleged to have served on 6D's Board during the following time periods: Adam Hartung from September 2014 to April 16, 2016 (SAC ¶ 73); David S. Kaufman from September 2014 to September 30, 2015 (SAC ¶ 76); and Anubhav Saxena from September 2014 to September 30, 2015 (SAC ¶ 84).  There are no allegations that the Outside Directors were involved in the day-to-day operations of 6D or that the Outside Directors were conflicted in any way.  None of the Outside Directors are alleged to have been officers of 6D.

None of the Outside Directors currently serve on 6D's Board.  Defendants Kaufman and Saxena resigned on or about September 30, 2015 and Defendant Hartung resigned on or about April 16, 2016.  SAC ¶¶ 73, 76, 84.

### iv. *The NYGG Defendants*

The "NYGG Defendants" are Defendants New York Global Group, Inc. ("NYGG"), NYGG (Asia), Ltd. ("NYGG-Asia"), and Benjamin Wey ("Wey").

As of April 20, 2015, NYGG-Asia owned 44.9% of 6D's outstanding shares.  SAC ¶ 56.

**B.  The Section 14(a) Claim**

Plaintiff brings a claim against the Individual Defendants[3] under Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934 (17 C.F.R. §240.14a-9) ("Section 14(a)").  SAC ¶¶ 440-44.

*i.      The "2015 Proxies"*

Plaintiff's Section 14(a) claim concerns what the SAC refers to as the "2015 Proxies," which are defined in the SAC as the Company's Schedule 14A preliminary proxy statement, filed on April 17, 2015, (the "Preliminary Proxy") (Ex. 1),[4] and the Schedule 14A definitive proxy statement, filed on April 30, 2015, (the "Definitive Proxy") (Ex. 2).  SAC ¶¶ 241-42.  These proxy materials were filed "in connection with the Company's solicitation of proxies for use at the Company's 2015 annual meeting of stockholders…to take place on Wednesday, June 3, 2015[.]" Ex. 2 at 4.  The 2015 Proxies sought the reelection to 6D's Board of the five nominees named in the Proxy Statement, namely Kang, Hartung, Kaufman, McEwen, and Saxena.  *See* Ex. 2 at 5.  In addition to the reelection of the 6D Directors, the Proxies also sought: ratification of the appointment of BDO USA, LLP as 6D's public accounting firm; approval of several amendments to 6D's Certificate of Incorporation; and several advisory resolutions.  *See id.*

The Definitive Proxy also listed each individual or entity with sole voting power over more than 5% of 6D's shares.  Ex. 2 at 17.  According to the Definitive Proxy, Defendant Kang had sole voting power over 23,250,561 shares, or 29.7% of the total outstanding shares of 6D.  *Id.* Defendant NYGG-Asia had sole voting power over 35,149,883 shares, or 44.9% of the total outstanding shares.  *Id.*  Thus, these two defendants had a combined sole voting power over 74.7% of 6D's outstanding shares.  *See* SAC ¶ 395.

The vote totals for each of the proposals voted on at the June 3, 2015 Annual Shareholder Meeting ("2015 Shareholder Meeting") were reported in the Form 8-K that 6D filed on June 9,

---

[3] The SAC defines the "Individual Defendants" as Defendants Wey, Kang, Szynkowski, Hartung, Kaufman, McEwen, Saxena, Chrzaszcz, and Bannout. SAC at 2.

[4] "Ex." refers to exhibits to the Declaration of Tom M. Fini dated August 30, 2018 ("Fini Dec."), submitted herewith.

2015.  *See* Ex. 3.  All of the proposals passed with a significant margin.  *See id.*  Notably, each of the five nominees for members of the Board of Directors received 58,491,443 votes.  *See* Ex. 3, Proposal 1.

    ii.  *The Section 14(a) Allegations*

Plaintiff alleges that the 2015 Proxies violated Section 14(a) because "they omitted material information regarding the fact that Defendant Wey beneficially owned NYGG-Asia's Company stock and controlled the Company's day-to-day operations, and included by reference materially false and misleading financial statements."  SAC ¶ 441.  Plaintiff alleges that these material misrepresentation and omissions "formed an essential link in the accomplishment of the continuation of Defendants' continued violation of their fiduciary duties[.]"  SAC ¶ 443.  Plaintiff does not challenge a specific transaction, but instead alleges that the defendants used the proxy materials to remain in power and thus continue their fiduciary breaches.  *See* SAC ¶¶ 440-44.

**C. The Breach of Fiduciary Duty Claims**

Plaintiff's remaining claims are state law derivative claims.  With respect to the breach of duty claims, Plaintiff alleges that Defendants "violated and breached his or her fiduciary duties of [i] candor, [ii] good faith, [iii] loyalty, [iv] reasonable inquiry, [v] oversight, and [vi] supervision."  SAC ¶ 427.

Plaintiff alleges in a conclusory fashion that the Defendants: willfully participated in misrepresentation of 6D's business operations and prospects (SAC ¶ 429); failed to correct 6D's public statements about 6D (*id.*); and failed to properly oversee 6D's business and internal controls (*id.*).

Plaintiff also lumps together nine of the Defendants, which he calls the "Investment-Related Misconduct Defendant"[5] and alleges that they further breached their fiduciary duties by

---

[5] The SAC defines the "Investment-Related Misconduct Defendants" as Defendants Wey, Kang, Szynkowski, Hartung, Kaufman, McEwen, Saxena, NYGG, and NYGG-Asia.  SAC ¶ 40.

"engag[ing] in and/or allow[ing] the Company to engage in the Investment-Related Misconduct." SAC ¶ 430.

### D. The Unjust Enrichment Claims

Plaintiff also brings a state law derivative claim against all Defendants for unjust enrichment.  SAC ¶¶ 436-39.  Plaintiff alleges in a conclusory fashion that the Defendants were unjustly enriched "[b]y their wrongful acts and the omissions of material fact that they caused to be made[.]"  SAC ¶ 437.  Plaintiff rattles off a list of ways that he speculates that the Defendants could have been enriched, but Plaintiff does not provide any factual basis for these allegations. *See* SAC ¶ 438.

### E. Allegations Regarding Other Lawsuits Against 6D

More than a quarter of the SAC consists of Plaintiff merely reciting the allegations from four other lawsuits that have been brought against 6D and several of its directors.  *See* SAC ¶¶ 270-380.[6]  However, none of the lawsuits are derivative in nature.

Moreover, none of these lawsuits were resolved on the merits.  As Plaintiff himself admits, the *Discover* Litigation was voluntary dismissed with prejudice against 6D on June 22, 2017 (SAC ¶ 278) and the *Swellpath* Litigation and the *Larson* Litigation were both settled (SAC ¶¶ 312, 380, fn 16).[7]  The *Cottam* Litigation has not been resolved and is currently pending in the Southern District of New York.

---

[6] Three of the lawsuits were filed in the Southern District of New York: *Discover Growth Fund v. 6D Global Technologies, Inc., et al*, 1:15-cv-07618 (PKC) ("*Discover* Litigation"); *Cottam v. Global Emerging Capital Group LLC, et al.*, 1:16-cv-04584 (RJS) ("*Cottam* Litigation"); and *6D Global Technologies v. Adam Ware, et al*, 1:16-cv-05625 (PAE) ("*Swellpath* Litigation").  The final litigation was filed in state court in Florida:  *Larson v. 6D Global Technologies, Inc., et al.*, 17-ca-001313 ("*Larson* Litigation").

[7] It is notable that, with respect to the two litigations that have settled, Plaintiff alleges that the damage to 6D flows from these settlements, but he concedes that he is not aware of the terms of the settlements.  SAC ¶ 312 (*Swellpath* Litigation); SAC ¶ 380, fn 16 (*Larson* Litigation).

### F. The Alleged Demand Futility

Plaintiff seeks to excuse his failure to make any demand on the board by offering a series of conclusory statements to support his argument that "demand upon the Board…is futile."  SAC ¶¶ 392-424.

### G. 6D's Bylaws Contain a Forum Selection Clause that Designates Delaware Chancery Court as the Sole and Exclusive Forum for any Derivative Action

Article XI of 6D's bylaws provide that: "Unless the Corporation consents in writing to the selection of an alternative forum, the ***Court of Chancery of the State of Delaware shall be the sole and exclusive forum*** for (a) ***any derivative action*** or proceeding brought on behalf of the Corporation, [and] (b) ***any action asserting a claim of breach of a fiduciary duty*** owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders[.]"  Ex. 4 at H-10 (Bylaws).

### H. 6D's Certificate of Incorporation Explicitly Exculpates the Board Members in Connection with Claims for Fiduciary Duty

6D's publicly filed Certificate of Incorporation explicitly exculpates board members in connection with claims for breach of fiduciary duty.  Specifically, Section 1 of Article X of the Certificate of Incorporation states that:

> "Each person who was or is made a party or is threatened to be made a party… in any actual or threatened action, suit or proceeding…by reason of the fact that such person is or was a director of the Corporation or is or was serving at the request of the Corporation as a…officer…***shall be indemnified and held harmless by the Corporation to the full extent authorized by the General Corporation Law of the State of Delaware***[.]"  Ex. 5 at 11.

## ARGUMENT

### I. PLAINTIFF'S SECTION 14(a) CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6) AND FOR LACK OF STANDING PURSUANT TO FED. R. CIV. P. 23.1

#### A. Plaintiff has Improperly Added a Section 14(a) Claim in an Attempt to Avoid the Proper Jurisdiction of the Delaware Chancery Court

Because the Delaware Chancery Court properly applies an increasingly strict pleading requirement to derivative actions, a common strategy of derivative plaintiffs is to lump into a

derivative action a Section 14(a)[8] claim in efforts to manufacture federal jurisdiction, and thus evade the Delaware Chancery Court.[9]

In light of this tactic, there is now a well-established line of authority dismissing cases where the plaintiff has attempted to use the Section 14(a) claim as "an avenue for access to the federal courts in order to redress alleged mismanagement or breach of fiduciary duty." *Witchko v. Schorsch*, 2016 WL 3887289, at *7 (S.D.N.Y. June 9, 2016) *appeal dismissed sub nom. Serafin v. Kahane*, 2016 WL 9411240 (2d Cir. Nov. 15, 2016) (quoting *Maldonado v. Flynn*, 597 F.2d 789, 796 (2d Cir. 1979)); *Limmer v. Gen. Tel. & Elecs. Corp.*, 1977 WL 1029, at *2 (S.D.N.Y. Mar. 21, 1977) ("This Court concludes…that the connection between the exercise of corporate suffrage and the acts of waste from which plaintiffs seek relief is too tenuous to support federal intervention in a cause of action otherwise squarely posited on violations of state law.").

Where, as here, the Section 14(a) claim does not challenge a specific transaction, but instead alleges that the defendants used the proxy materials to remain in power and thus continue their fiduciary breaches, the courts in this circuit have held that does not state a cause of action. *Witchko v. Schorsch*, 2016 WL 3887289, at *7 (S.D.N.Y. June 9, 2016) ("A Section 14 action based on an alleged material misrepresentation or omission in proxy materials therefore should be sustained only when it challenges a transaction that was the subject of the proxy materials[.]"). Alleging, as Plaintiff does here, that the defendants used the proxies to be reelected in order to continue breaching their fiduciary duties, does not state a Section 14(a) claim. *Id.* ("[T]he mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary

---

[8] "Section 14(a) makes it 'unlawful for any person…in contravention of such rules and regulations as the Commission may prescribe…to solicit or to permit the use of his name to solicit any proxy.'" *In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 293 (S.D.N.Y. 2010) (quoting 15 U.S.C. § 78n(a)(1)).

[9] *See* Matthew D. Cain et al., *ESSAY: The Shifting Tides of Merger Litigation*, 71 VAND. L. REV. 603, 608 (2018) ("[A]s we predicted, plaintiffs appear, in the short term at least, to be trying to avoid the effects of the changes in Delaware law by filing their cases elsewhere. Litigation brought in the Delaware Chancery Court has declined substantially.").

loss.") (quoting *Gen. Elec. Co. by Levit v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992)).  Rather, it is an attempt to wrap what is essentially a state law breach of fiduciary duty claim in the guise of a federal Section 14(a) claim.

The SAC here suffers from the same defect as in *Witchko*.  The Plaintiffs' Section 14(a) claim does not identify any transaction that was the subject of the proxy.  *See* SAC ¶¶ 440-44.  Instead, the 2015 Proxies sought the reelection to the 6D Board of Defendants Kang, Hartung, Kaufman, McEwen, and Saxena.  *See supra* 5; Ex. 1, 2.  Thus, just as in *Witchko*, the Section 14(a) claim here merely alleges that the proxies allowed "the *continuation* of Defendants' continued violation of their fiduciary duties."  SAC ¶ 443.  But, as the courts in this circuit make clear, such a theory – that reelection based on omissions or misrepresentations allowed the "continuation" of the breach of fiduciary duties – does not state an independent Section 14(a) claim, but merely dresses a state law fiduciary duty claim in the guise of a federal claim.  *Witchko*, 2016 WL 3887289, at *7 ("[t]he case appears to be another attempt to use s 14(a) and Rule 14a-9 as an avenue for access to the federal courts in order to redress alleged mismanagement or breach of fiduciary duty on the part of corporate executives."); *see also Maldonado v. Flynn*, 597 F.2d 789, 796 (2d Cir. 1979) ("efforts to dress up claims of the latter type in a s 14(a) suit of clothes have consistently been rejected").

Tellingly, one of the attorneys who appeared on the brief in *Witchko* for a plaintiff, and whose Section 14(a) claim was dismissed there, was the same attorney for plaintiff here – *Timothy Brown, Esquire*.  The fact that the same attorney in *Witchko* supported the same faulty theory to support a Section 14(a) claim only highlights the baseless nature of this action.

Further highlighting that the Plaintiff's Section 14(a) claim simply duplicates the state law derivative claims, the section of the Complaint titled "Derivative Allegations" does not allege or specify any additional facts special to the Section 14(a) claim.  *See* SAC ¶¶ 385-87.  This section refers only to "Defendants' breaches of their fiduciary duties as directors, officers, and/or

controlling shareholders of 6D Global and unjust enrichment, as well as the aiding and abetting thereof." SAC ¶ 385.[10]

**B. Because Defendants Kang and NYGG-Asia Had Sole Voting Power Over a Majority of 6D's Shares, Plaintiff's Section 14(a) Claim Fails for Lack of Causation**

It is well established that where, as here, in a Section 14(a) claim the alleged wrong-doers had sole voting power over a majority of 6D's shares, then the outcome of the vote is deemed to be a foregone conclusion and Plaintiff cannot allege causation, *i.e.*, that the omission or misrepresentation affected the outcome of the challenged proxy vote. *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 396 (S.D.N.Y. 2011) ("[P]laintiffs would be unable to establish the required element under Section 14(a) and Rule 14a-9 of causation…because, given DryShips' ownership and control of 50.5% of OceanFreight's shares, a majority vote in favor of the merger was a foregone conclusion.") (citing *Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000)); *Tiberius Capital, LLC v. PetroSearch Energy Corp.*, 2011 WL 1334839, at *7 (S.D.N.Y. Mar. 31, 2011), *aff'd*, 485 F. App'x 490 (2d Cir. 2012) (granting motion to dismiss and holding that "[a] minority shareholder whose votes were not necessary to approve the passage of a proposal is generally unable, as a matter of law, to plead transaction causation."). As set forth above, defendants Kang and NYGG-Asia collectively had sole voting power over a majority of the outstanding shares of 6D (*see supra* at 5-6), and thus Plaintiff's Section 14(a) fails for lack of causation.

**C. Plaintiff Lacks Standing to Bring the Section 14(a) Claim**

An additional and independent reason that Plaintiff's Section 14(a) claim must be dismissed is that Plaintiff lacks standing to bring this claim.[11] It is well-established that "Federal

---

[10] Of course, if Plaintiff attempted to bring a Section 14(a) not on a derivative basis, but as a direct claim, this would also fail. *See, e.g.*, *St. Claire Shores General Employees Retirement System v. Eibeler*, 2006 WL 2849783, at *7 (S.D.N.Y. Oct. 4, 2008) ("Courts in this Circuit have long found that plaintiffs attempting to advance derivative and direct claims in the same action face an impermissible conflict of interest."); *In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2010 WL 5248815, *1 (S.D.N.Y. Dec. 14, 2010) ("a plaintiff who maintains a direct claim against a corporation is not a fair and adequate representative of other shareholders in enforcing a right of the corporation derivatively").

[11] Just as the Plaintiff does not have standing as to the Section 14(a) claim, many of his state law claims arise from events that allegedly took place prior to August 17, 2015, the date when Plaintiff first purchased his shares.

Rule of Civil Procedure 23.1 requires that the plaintiff in a derivative action demonstrate possession of an ownership interest in the company it seeks to represent that is contemporaneous with the conduct for which it seeks recovery." *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 157 (2d Cir. 2015). "In essence, this 'contemporaneous ownership rule' is a procedural requirement that 'denies a derivative plaintiff standing to challenge transactions that occurred prior to the time the plaintiff became a shareholder.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 922 F. Supp. 2d 445, 459 (S.D.N.Y. 2013) (Sweet, J.), *aff'd sub nom. In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148 (2d Cir. 2015). Thus, "Rule 23.1 requires that a plaintiff be a shareholder 'at the time of the transaction complained of.'" *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 160 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23.1(b)(1)).

Here, it is undisputed that Plaintiff did not own shares of 6D stock until August 17, 2015 (SAC ¶ 50), *after* the 2015 Proxies were distributed in April 2015 (SAC ¶ 241-242) and more than two months *after* the proxy votes were taken at the June 3, 2015 Annual Shareholder Meeting. As such, Plaintiff does not have standing to bring a derivative suit based on actions that occurred prior to August 17, 2015.[12]

Incredibly, Plaintiff's counsel deliberately concealed the date that Plaintiff purchased his 6D shares in the Original Complaint and the First Amended Complaint. Plaintiff admitted to the date of his purchase *for the first time* in his proposed Second Amended Complaint and only *after* counsel for the 6D Defendants raised the issue of standing with Plaintiff's counsel and demanded to know the dates of purchase.

Accordingly, Plaintiff lacks standing to bring these claims as well, and, for this reason alone, they too must be dismissed.

[12] Moreover, Plaintiff's attempt to satisfy the contemporaneous ownership requirement of Rule 23.1 by simply alleging that he "is, and at all relevant times has been, a 6D Global shareholder" is unavailing. SAC ¶ 387. The Second Circuit has made clear that "[a] formulaic recitation of the derivative standing requirements will not suffice." *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 159-160 (2d Cir. 2015) (holding that plaintiff had "failed to make an adequate allegation of share ownership through the pre-IPO period of alleged misconduct" where plaintiff alleged that she "is a stockholder of Facebook and was a stockholder during the misconduct alleged in her complaint and has been such continuously since then").

Thus, because Plaintiff's Section 14(a) claim is based on "misrepresentations and omissions in the 2015 Proxies" (SAC ¶ 441-44) and both the proxies and the shareholder vote predated Plaintiff's ownership of 6D shares, Plaintiff's Section 14(a) claim must be dismissed for lack of standing.[13]

## II.   THE FORUM SELECTION CLAUSE IN 6D'S BYLAWS REQUIRES DISMISSAL UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

Since the sole federal claim under Section 14(a) must be dismissed, all that remains are Plaintiff's state law derivative claims. Pursuant to the doctrine of *forum non conveniens*, Plaintiff's remaining state law claims must also be dismissed.[14] 6D's corporate bylaws contain a forum selection clause designating Delaware Chancery Court as the sole and exclusive forum for claims relating to the corporation's internal affairs, including "any derivative action" and "any action asserting a claim of breach of a fiduciary duty[.]" *See* Ex. 4 at H-10. Specifically, the 6D bylaw provides that:

> Unless the Corporation consents in writing to the selection of an alternative forum, the **Court of Chancery of the State of Delaware <u>shall be the sole and exclusive forum</u>** for (a) <u>**any derivative action**</u> or proceeding brought on behalf of the Corporation, [and] (b) <u>**any action asserting a claim of breach of a fiduciary duty**</u> owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders[.] Ex. 4 at H-10.

---

[13] A separate and independent reason that the Section 14(a) claim brought against Michael Bannout must be dismissed is that he did not serve on 6D's Board when the 2015 Proxies were solicited. "According to the plain language of Section 14(a), liability attaches only to defendants who actually solicited proxies or permitted the use of their name to solicit proxies." *In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 293 (S.D.N.Y. 2010). Here, the challenged proxy statements state that "[t]his proxy is solicited by the Board of Directors." *See* Ex. 2. But, as Plaintiff concedes, Mr. Bannout did not serve on 6D's Board until October 24, 2015 (SAC ¶ 90), more than four months *after* the June 3, 2015 Shareholder Meeting. Therefore, as a matter of law, Mr. Bannout cannot be liable for the 2015 Proxies under Section 14(a).

[14] The Supreme Court has held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Accordingly, Plaintiff's state law claims must be dismissed pursuant to the doctrine of *forum non conveniens*. *Thyssenkrupp Materials NA, Inc. v. M/V Kacey*, 236 F. Supp. 3d 835, 838 (S.D.N.Y. 2017) ("The appropriate procedural mechanism for filing a motion to enforce a forum selection clause designating a foreign forum is a motion to dismiss for *forum non conveniens*.") (granting defendants motion to dismiss pursuant to the doctrine of *forum non conveniens*).

It is well settled in this circuit that a written forum selection clause is presumptively enforceable. *Citi Structure Const. v. Zurich Am. Ins. Co.*, 2015 WL 4934414, at *2 (S.D.N.Y. Aug. 18, 2015) ("A valid forum selection clause must be given 'controlling weight in all but the most exceptional cases.'") (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)).

Courts within the Second Circuit have consistently held that forum selection clauses in a company's bylaws are enforceable. *See, e.g., MasterCard Int'l Inc. v. Argencard Sociedad Anonima,* 2002 WL 432379, at *4 (S.D.N.Y. Mar. 20, 2002) (In holding that a forum selection clause was enforceable, the court held that "[a]s an initial matter, Argencard is a member of MasterCard, and, as a member, it has indisputedly consented to be governed by its By-laws."); *Cruise v. Castleton, Inc.*, 449 F. Supp. 564 (S.D.N.Y. 1978) (Holding that a forum selection provision in Association's bylaws encompasses any suits by a member against the Association.).[15]

In addition, the Delaware Chancery Court has explicitly held that "a forum selection clause adopted by a board with the authority to adopt bylaws is valid and enforceable under Delaware law to the same extent as other contractual forum selection clauses." *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013).

For the reasons above, as a matter of law, the forum selection clause that appears in 6D's bylaws is clearly enforceable. It is undisputed that the forum selection language is mandatory on its face. The bylaw states the Court of Chancery of the State of Delaware "shall be the sole and exclusive forum" for the enumerated claims.

In addition, it cannot be disputed that 6D's forum selection provision covers Plaintiff's derivative claims. The bylaw explicitly states that: "the Court of Chancery of the State of Delaware

---

[15] Under Delaware law, as a shareholder of 6D, Plaintiff is deemed to be bound by the forum selection clause in 6D's bylaws. *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934, 958 (Del. Ch. 2013) ("In sum, stockholders contractually assent to be bound by bylaws that are valid under the DGCL—that is an essential part of the contract agreed to when an investor buys stock in a Delaware corporation.") (discussing the validity of a forum selection bylaw). Moreover, the forum selection clause in 6D's bylaws explicitly states that: "Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Section." Ex. 4 at H-10.

shall be the sole and exclusive forum for (a) **any derivative action**...[and] (b) **any action asserting a claim of breach of a fiduciary duty**." Ex. 4 at H-10.  Therefore, the forum selection clause clearly encompasses Plaintiff's derivative claims.

Thus, the forum selection clause in the 6D bylaws should be enforced by its terms.  This derivative case must be dismissed, and if Plaintiff wishes to pursue his frivolous derivative claims, he must bring them in Delaware Chancery Court, which he desperately sought to avoid by asserting the baseless Section 14(a) which must also be dismissed as explained above.

## III.   PLAINTIFF'S CLAIM MUST BE DISMISSED FOR LACK OF DEMAND OR DEMAND FUTILITY

In light of the above arguments, the Court need not address the failure of the Plaintiff to allege demand futility, as this derivative action belongs in Delaware Chancery Court.  However, regardless of where the case is heard, the Plaintiff has failed to adequately allege demand futility. Plaintiff does not allege that he made any demand on the 6D Board to bring any of the claims asserted against any of the Defendants.  Rather, Plaintiff seeks to excuse this failure by offering a series of vague allegations to support his conclusory statements that the 6D Directors "are not independent or disinterested, but are beholden to Defendant Wey" (SAC ¶¶ 394, 398, 400, 408, 420) and that they "face a substantial likelihood of liability…which render them unable to impartially investigate the charges and decide whether to pursue action…" (SAC ¶¶ 393, 394, 399, 408, 416, 417, 420).

However, it is axiomatic that in a derivative action, allegations of demand futility must be plead *with particularity*.  *See* Fed. R. Civ. P. 23.1*; In re Symbol Tech. Sec. Litig.*, 762 F. Supp. 510, 514 (E.D.N.Y. 1991) (The "Second Circuit requires strict enforcement of the `particularity' requirements of Federal Rule 23.1.").  Federal courts applying Delaware law have been extremely strict that "vague or conclusory allegations do not suffice to challenge the presumption of a director's capacity to consider demand.'" *Brautigam v. Rubin*, 55 F. Supp. 3d 499, 505 (S.D.N.Y. 2014), *aff'd*, 618 F. App'x 723 (2d Cir. 2015) (quoting *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del.Ch.2007)).  Therefore, "[c]onsistent with the long-standing principle that

directors and not shareholders manage a corporation, the Delaware precedents on demand futility make clear that the bar is high, the standards are stringent, and the situations where demand will be excused are rare." *Canty v. Day*, 13 F. Supp. 3d 333, 345 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015).

Moreover, the demand requirement applies separately to each cause of action asserted in a derivative suit and requires an independent demand futility analysis for each cause of action alleged. *Canty,* 13 F. Supp. 3d at 344 ("A derivative complaint must plead facts specific to each director, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand."). "The 'group' accusation mode of pleading demand futility' is insufficient." *Id.* (quoting *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 n. 36 (Del. Ch. 2009)).

To plead demand futility under Delaware law, a derivative plaintiff "must plead particularized facts sufficient to create a reasonable doubt as to whether (1) a majority of the directors are disinterested and independent or (2) the challenged transaction was the product of a valid exercise of business judgment." *Brautigam v. Rubin,* 55 F. Supp. 3d 499, 508 (S.D.N.Y. 2014), *aff'd,* 618 F. App'x 723 (2d Cir. 2015) (citing *Aronson v. Lewis*, 473 A.2d 805, 811 (Del.1984)). Moreover, the determination of futility "is gauged by the circumstances existing at the commencement of a derivative suit and such reasonable doubt must be raised as to a majority of the board of directors sitting at the time the complaint is filed." *In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d 366, 377 (S.D.N.Y. 2013), *aff'd sub nom. Welch v. Havenstein*, 553 F. App'x 54 (2d Cir. 2014).

**A. Plaintiff Has Failed to Plead with Particularity Facts Showing that a Majority of the Board is Personally Interested in the Outcome of the Litigation**

In order to create a reasonable doubt that a majority of the board is interested, a plaintiff must plead with particularity facts showing that a majority of the board is either (1) "personally interested in the outcome of the litigation, in that the director will personally benefit or suffer as a result of the lawsuit" or (2) "faces a substantial likelihood of liability related to the subject of the

16

proposed demand." *Canty v. Day*, 13 F. Supp. 3d 333, 344 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015) (applying Delaware law).  Here, Plaintiff can demonstrate neither.

The interestedness of the board must be assessed through a "detailed, fact-intensive, director-by-director analysis[.]" *F5 Capital v. Pappas*, 856 F.3d 61, 83 (2d Cir. 2017) (applying Delaware law).  Thus, the allegations must include "facts specific to each director" to show that the director "could not have exercised disinterested business judgment in responding to a demand." *Canty v. D*ay, 13 F. Supp. 3d at 344.

Here, Plaintiff does not allege with particularity how a majority of 6D's Board is personally interested.  Indeed, much of Plaintiff's allegations are not attributed to any specific director, but rather to a group of directors.  *See, e.g.*, SAC ¶ 393 ("Demand is excused as to all of the Initial Directors because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of their scheme and false and misleading statements and omissions of material fact...").  For this reason, alone, Plaintiff has failed to plead facts sufficient to demonstrate demand futility. *Brewer v. Breen*, 2018 WL 565267, at *6 (S.D.N.Y. Jan. 23, 2018) (Holding that plaintiffs had not shown that demand was futile, in part because "'group pleading' with respect to demand futility is insufficient on a motion to dismiss.") (applying Delaware law).

### i. *Plaintiff Has Not Demonstrated that a Majority of the Board Will be Materially Affected by a Decision of the Board*

Under Delaware law, "[a] director is interested if he will be materially affected, either to his benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders."  *In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d 366, 377 (S.D.N.Y. 2013), *aff'd sub nom. Welch v. Havenstein*, 553 F. App'x 54 (2d Cir. 2014).  This "personal benefit" test is satisfied where a director "appear[s] on both sides of a transaction [or] expect[s] to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally."  *See In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 603 (S.D.N.Y. 2007).

Where, as here, Plaintiff does not allege that any of the Directors appeared on both sides of a transaction, he must show that the Directors "will be materially affected…by a decision of the board, in a manner not shared by the corporation and the stockholders." *In re SAIC Inc. Derivative Litig.*, 948 F. Supp. 2d at 377. Plaintiff has failed to meet this burden.

Plaintiff attempts to meet this "personal benefit" test by alleging – in conclusory fashion – that the Individual Defendants "benefitted from their illegal stock manipulation scheme and/or…were improperly over-compensated by the Company, including through bonuses and other compensation connected the…scheme of intentional and/or reckless misconduct." SAC ¶ 43. However, this allegation is insufficient to demonstrate "interestedness" for several reasons.

First, Plaintiff fails to allege "facts specific to each director." As discussed above, 'group pleading' with respect to demand futility is insufficient on a motion to dismiss." *Brewer v. Breen*, 2018 WL 565267, at *6 (S.D.N.Y. Jan. 23, 2018).

Second, Plaintiff does not allege any facts to support his claim that the Directors benefitted from their alleged stock manipulation scheme or that they were improperly overcompensated. Moreover, "mere allegations of substantial compensation are insufficient to establish futility without an allegation of unreasonableness." *Rahbari v. Oros*, 732 F. Supp. 2d 367, 387 (S.D.N.Y. 2010). Here, Plaintiff does not make any allegation that the Defendants' compensation was unreasonable. Indeed, Plaintiff does not allege what the Directors' received as compensation or that it changed. Thus, Plaintiff has failed to adequately plead that a majority of the board is interested due to any "personal benefit."

### ii. *Plaintiff Has Not Demonstrated that a Majority of the Board Faces a "Substantial Likelihood of Liability"*

Plaintiff has also failed to demonstrate that a majority of the Board is interested because they face a "substantial likelihood of liability."

In order to adequately plead interestedness based on a director's facing a substantial likelihood of liability, Plaintiff "must allege particularized facts that demonstrate a director faces a substantial likelihood of liability related to the subject of the proposed demand." *Canty v. Day*,

13 F. Supp. 3d 333, 344 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015).  However, "[t]he 'mere threat' of personal liability is not enough to render a director interested[.]" *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984)).  Moreover, "demand is not excused solely because the directors would be deciding to sue themselves." *Central Laborers' Pension Fund v. Dimon*, 2014 WL 3639185, at *3 (S.D.N.Y. July 23, 2014) (quoting *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009)).  Indeed, it is well-established that "[i]t is a rare case where defendants' actions were so egregious that a substantial likelihood of director liability exists." *Brautigam v. Rubin*, 55 F. Supp. 3d 499, 506 (S.D.N.Y. 2014), *aff'd*, 618 F. App'x 723 (2d Cir. 2015).

Where, as here, the company's certificate of incorporation contains an exculpation provision (*see* Ex. 5), Plaintiff faces a heightened pleading standard.  Because the 6D Directors are exculpated from liability in connection with claims for breach of fiduciary duty except for claims based on intentional or bad-faith conduct, Plaintiff "must also plead particularized facts that demonstrate that the directors acted with scienter." *Brautigam*, 55 F. Supp. 3d at 506.

Plaintiff fails to plead any particularized facts that demonstrate that the Directors acted with scienter.  For example, Plaintiff alleges that Defendants Chrzaszcz and Bannout face a substantial likelihood of liability "for failing to cure the Investment-Related Misconduct to the extent that it was still occurring when they were appointed to the Board."  SAC ¶ 399.  Not only does this allegation fail to allege that these defendants had actual or constructive knowledge of the misconduct, it does not allege that the misconduct was even occurring under Chrzaszcz's and Bannout's watch.

Plaintiff attempts to plead around the exculpation provision by alleging in conclusory fashion that the defendants – lumped together – acted "intentionally," recklessly," negligently," and "willfully." *See* SAC ¶¶ 394, 416, 417.  However, these allegations are entirely speculative and vague, and do not particularize any specific facts to support such conclusory assertions. *Rahbari v. Oros*, 732 F. Supp. 2d 367, 384 (S.D.N.Y. 2010) (Plaintiff "cannot meet [his] burden of particularized pleading with respect to the demand excused standard" where Plaintiff alleges

"that the directors…either knew of, or recklessly disregarded, the false statements and misrepresentations made in the Company's 2007 10–K" but does not allege "the mechanism by which the knowledge required under the bad faith inquiry would be obtained by the board.").

For example, Plaintiff alleges that "[i]n complete abdication of their fiduciary duties, the Initial Directors either participated in or were recklessly unaware of the fraudulent scheme to inflate the Company's stock price[.]" SAC ¶ 394. However, Plaintiff fails to allege a single fact that demonstrates that any of these defendants had any knowledge of the alleged scheme or how a lack of knowledge would be reckless. *See Rahbari*, 732 F. Supp. 2d at 384.

Moreover, many of Plaintiff's allegations regarding demand futility attempt a lack of oversight theory, i.e., the Directors' alleged failure to implement and maintain adequate internal controls. *See* SAC ¶¶ 394, 407, 417. However, it is well-established that "[f]ailure of oversight is 'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *Brautigam v. Rubin*, 55 F. Supp. 3d 499, 506 (S.D.N.Y. 2014), *aff'd*, 618 F. App'x 723 (2d Cir. 2015) (quoting *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del.Ch.1996)). Accordingly, "[i]n order to establish a failure-of-oversight claim, a plaintiff must show that (a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee operations thus disabling themselves from being informed of risks or problems requiring their attention." *Brautigam v. Rubin*, 55 F. Supp. 3d 499, 506 (S.D.N.Y. 2014), *aff'd*, 618 F. App'x 723 (2d Cir. 2015) (applying Delaware law). Thus, Plaintiff must allege more than that the directors have turned a blind eye on the wrong-doing.

Here, Plaintiff fails to allege that any facts demonstrating that Defendants had knowledge of the alleged misconduct. For example, Plaintiff alleges in conclusory fashion that: "The Directors knowingly or recklessly disregarded any such controls by causing and facilitating the scheme," and accordingly "The Directors breached their fiduciary duties in failing to implement such internal controls and, therefore, face a substantial likelihood of liability[.]" SAC ¶ 417. Plaintiff merely states that Defendants knowingly or recklessly disregarded internal controls. But

20

Plaintiff fails to allege any facts that actually demonstrate that the Defendants had knowledge of the misconduct or that the internal controls were inadequate.  *See Stone v. Ritter*, 911 A.2d 362 (Del. 2006) ("The Court of Chancery found that the plaintiffs did not plead the existence of "red flags" -- "facts showing that the board ever was aware that AmSouth's internal controls were inadequate, that these inadequacies would result in illegal activity, and that the board chose to do nothing about problems it allegedly knew existed.").

Plaintiff also alleges that demand is excused as to Defendants Kang, Hartung, Chrzaszcz, and Bannout "because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of their scheme and false and misleading statements and omissions of material fact, which render them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme." SAC ¶ 393. However, it is well established that "a director is not liable for an omitted disclosure unless the director withheld facts *knowingly* and the omission was material." *Brautigam,* 55 F. Supp. 3d at 508.  With respect to Plaintiff's claims for these alleged disclosure violations, "plaintiff[] must allege that the Director Defendants *deliberately* misinformed shareholders or knowingly disseminated false information." *Canty v. Day*, 13 F. Supp. 3d 333, 348 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015).  Here, Plaintiff fails to allege any facts that demonstrates that the 6D Defendants knowingly or deliberately withheld any information.

Finally, Plaintiff points to other litigations that were not decided on the merits, in support for the conclusory assertion that Defendants face a substantial likelihood of liability.  *See* SAC ¶¶ 270-380.  But Plaintiff is unable to adequately plead any derivative claim based on such other litigation.  With respect to the *Discover* Litigation, 6D prevailed in that case, and successfully opposed a motion for preliminary injunction by plaintiff.  *See Discover Growth Fund v. 6D Global Technologies, Inc., et al*, 1:15-cv-07618 (PKC), Doc. 52.  As 6D prevailed, Plaintiff cannot and does not explain how it can form the basis of a derivative claim.  With respect to the *Cottam* Litigation, that litigation is still pending.  But courts have made clear that a plaintiff cannot assert a derivative claim based on other litigation that has not been resolved.  *See In re Symbol*

21

*Technologies Sec. Litigation*, 762 F. Supp. 510, 516 (E.D.N.Y. 1991) (Where there has been no resolution of the other pending action, "no injury has been sustained for which plaintiff may sue to recover.").

With respect to the *Swellpath* Litigation and the *Larson* Litigation, those cases were both settled, and decisions to settle litigation are protected by the business judgment rule.

With respect to Plaintiff's unjust enrichment claims, they are premised on the same alleged breaches of fiduciary duty described above.  As such, demand cannot be excused for the same reasons as set forth above.  *Canty v. Day*, 13 F. Supp. 3d 333, 350 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015) (Demand is not excused where "Plaintiffs' claims for unjust enrichment…are premised on the same alleged breaches of fiduciary duty…which the Court has found fail to create a substantial likelihood of liability for the Director Defendants so as to excuse demand.").

In addition, Plaintiff's unjust enrichment claims against Defendants Szynkowski, Mcewen, Bannout and Chrzaszcz fail as a matter of law.  Under New York law, a derivative claim against directors for unjust enrichment "cannot be maintained where, as here, the 'only enrichment alleged by plaintiffs consists of defendants' salaries, benefits, and unspecified bonuses.'"  *Steinberg v. Dimon*, 2014 WL 3512848, at *4 (S.D.N.Y. July 16, 2014) (quoting *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010)).  Here, the SAC is devoid of allegations that these directors received any "enrichment" outside of their normal director compensation.  Accordingly, the unjust enrichment claim against these directors fails as a matter of law.[16]

---

[16] As set forth above, the Section 14(a) claim is facially defective and should be dismissed.  However, it also suffers from the failure to adequately plead demand futility, as Plaintiff's demand futility allegations are based entirely on the allegation that "[i]n the exercise of reasonable care, Individual Defendants should have known that the statements contained in the 2015 Proxies were materially false and misleading."  SAC ¶ 442.  This is precisely the type of speculative pleading that the courts do not allow.  Moreover, because the Section 14(a) claims fail as a matter of law as explained in Point I above, Plaintiff cannot show any likelihood of liability – much less a substantial likelihood of liability – for the alleged Section 14(a) violations fails as a matter of law.

**B. Plaintiff Has Failed to Plead with Particularity Facts Showing that a Majority of the Board Lacks Independence**

Moreover, Plaintiff has failed to establish that a majority of the 6D Board lacks independence. In order to demonstrate that a Director lacks independence, Plaintiff must plead facts that demonstrate that a "non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." *Canty v. Day*, 13 F. Supp. 3d 333, 346 (S.D.N.Y. 2014), *aff'd*, 599 F. App'x 20 (2d Cir. 2015).

Many of Plaintiff's allegations regarding the Directors' alleged lack of "independence" are entirely conclusory. For example, the SAC alleges that: "The Directors have longstanding business and personal relationships with each other and the Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders." SAC ¶ 418. However, Plaintiff fails to provide *any* details regarding the nature of these "longstanding business and personal relationships," much less facts that are sufficient to show that "the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." *Canty,* 13 F. Supp. 3d at 346 (S.D.N.Y. 2014).

With respect to Defendant Kang, the allegations that he is beholden to Wey, and thus interested, are equally unavailing. For example, Plaintiff alleges that Kang is beholden to Wey because he "had extensive contacts with Defendant Wey" (SAC ¶ 405), he "is the CEO of the Company and depends on Defendant Wey for his primary source of income" (SAC ¶ 399), or that he "borrowed money from Defendant Wey's wife" (SAC ¶ 407). These allegations are insufficient to rebut the presumption of independence. *See, e.g., Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004) ("Allegations that Stewart and the other directors moved in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' even when coupled with Stewart's 94% voting power, are insufficient, without more, to rebut the presumption of independence.").

First, the "existence of some financial ties between the interested party and the director, without more, is not disqualifying." *Kahn v. M & F Worldwide Corp.*, 2014 WL 996270, at *10 (Del. Mar. 14, 2014).  In addition, the fact that "an entity is entitled to nominate an individual to the board does not mean that the individual is under the entity's control."  *F5 Capital, a Cayman Islands Corp. v. Pappas*, 2016 WL 900389, at *5 (S.D.N.Y. Feb. 17, 2016), *aff'd sub nom. F5 Capital v. Pappas*, 856 F.3d 61 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 473 (2017).

## C.  Plaintiff Has Failed to Adequately Allege that the Challenged Transactions Were Not the Product of a Valid Exercise of Business Judgment

Finally, Plaintiff has not alleged that the challenged transactions were not the product of a valid exercise of the business judgment rule.  In order for demand to be excused, "stockholder plaintiffs must overcome the powerful presumptions of the business judgment rule before they will be permitted to pursue the derivative claim."  *Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993); *Levine v. Smith*, 591 A.2d 194, 207 (Del. 1991), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

Under Delaware law, the business judgment rule compels dismissal unless Plaintiff can allege specific facts to show that the Directors acted in bad faith. *See In re BJ's Wholesale Club, Inc.,* 2013 WL 396202, at *13 (S.D.N.Y. Jan. 21, 2013) (dismissing fiduciary duty claim and holding "[e]xcept for conclusory allegations, however, the Complaint 'pleads nothing reasonably supportive of the proposition that any omission from the merger proxy statement resulted from disloyalty (including bad faith) on the part of the [D]efendant [D]irectors").

Here, Plaintiff has failed to allege any specific facts that show that the Directors had any conflicts or acted in bad faith.  Thus, Plaintiff has failed to allege facts sufficient to demonstrate that demand is excused.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's derivative claims with prejudice.

Dated: New York, New York
        August 30, 2018

**CATAFAGO FINI LLP**

By:  _____/s/  Tom M. Fini_____
Tom M. Fini, Esq.
Jacques Catafago, Esq.
Sarah M. Dyer, Esq.
The Empire State Building
350 Fifth Avenue, Suite 7710
New York, NY  10118
212-239-9669
tom@catafagofini.com
*Counsel for Defendants 6D Global*
*Technologies, Inc., Tejune Kang,*
*Mark Szynkowski, Terry Mcewen,*
*Michael Bannout and Piotr A.*
*Chrzaszcz*
