## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | |
| | ) | |
| ALLAN SCOTT, DERIVATIVELY AND ON BEHALF OF 6D GLOBAL TECHNOLOGIES INC., | ) ) ) | Case No. 1:15-cv-09691-RWS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BENJAMIN TIANBING WEI A/K/A/ BENJAMIN WEY, NEW YORK GLOBAL GROUP, INC., NYGG (ASIA), LTD., TEJUNE KANG, MARK SZYNKOWSKI, ADAM HARTUNG, DAVID S. KAUFMAN, TERRY MCEWEN, ANUBHAV SAXENA, PIOTR A. CHRZASZCZ, and MICHAEL BANNOUT, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| 6D GLOBAL TECHNOLOGIES INC., | ) | |
| | ) | |
| Nominal Defendant. | ) | |
| | ) | |
| | ) | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff Allan Scott ("Plaintiff") respectfully submits this reply memorandum of law in support of his Motion For Leave (the "Motion") To File Second Amended Complaint (the "SAC").

To promote judicial economy, Plaintiff adopts by reference its Memoranda of Law in Opposition to: (a) the Motion to Dismiss filed by Defendants Tejune Kang, Mark Szynkowski, Terry McEwen, Piotr A. Chrzaszcz, and Michael Bannout (collectively, the "6D Defendants"); (b) the Motion to Dismiss filed by Defendants Adam Hartung, David S. Kaufman and Anubhav Saxena (collectively, the "Former Directors"); and (c) the Motion to Dismiss filed by Defendants Benjamin Wey and NYG Capital, LLC a/k/a New York Global Group (collectively, the "Wey Defendants"), and incorporates all arguments made in those briefs as if fully stated herein.[1]

## PRELIMINARY STATEMENT

Instead of contesting the SAC on the merits, the Former Directors seek to block its filing on procedural grounds, unnecessarily opposing Plaintiff's Motion to Amend while also moving to dismiss his prior complaint. This inefficient tactic fails. The Former Directors fail to even *address* their heavy burden to demonstrate that the amendment, to be "freely given," was filed in bad faith or would be prejudicial. The Motion should be granted for that basis alone. Instead, the Former Directors focus solely on futility. But they do not even come close demonstrating that all claims alleged as to all Defendants in the SAC are "clearly frivolous or legally insufficient on its face." Instead, they focus solely on the SAC's new allegations – largely pertaining to other Defendants – to claim that they do not state a claim as against the Former Directors. But the Former Directors fail to address the gravamen of Plaintiff's claims against them: that they completely abdicated their oversight role as Directors, in breach of their duties of loyalty, in favor of Chairman Kang

---

[1] Capitalized terms not defined herein are defined in the Statement of Facts section of the Memorandum of Law in Opposition to the Motion to Dismiss filed by the Wey Defendants and in the Procedural History section of the Memorandum of Law in Opposition to the Motion to Dismiss filed by the Former Director Defendants.

and Defendant Wey, who have systematically abused and exploited the Company for years, up until the point when they abandoned their duties by fleeing the Company when the truth began to emerge.  In fact, the Former Directors *admit* the SAC alleges "at length" that Kang and Wey took control over the Company and were in "control" of 6D Global, instead of being prudently managed by the Directors as advertised.  *See* Opp. at 1 n.2, 2, 5.  For the reasons set forth below, in Plaintiff's moving brief, and in Plaintiff's oppositions to Defendants' motions to dismiss, the Motion should be granted.

## ARGUMENT

### I.     The Former Directors Have Failed To Carry Their Burden To Oppose The Motion

Leave to amend should be "freely give[n]." Fed. R. Civ. P. 15(a)(2).  A court should not deny a timely motion to amend unless there is evidence of undue delay, undue prejudice to the defendant, bad faith, or if the proposed amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Critically, the non-moving party carries the burden to demonstrate bad faith or prejudice as a basis for denying leave.  *See City of New York v. Grp. Health Inc*., 649 F.3d 151, 157 (2d Cir. 2011) ("The rule in our circuit is to allow a party to amend its complaint *unless* the nonmovant demonstrates prejudice or bad faith.") (emphasis added).  Here, the Former Directors do not address, let alone demonstrate, either of these threshold factors.  Because Defendants have failed to carry their burden, the Motion should be granted on that basis alone.  *Id*.

### II.    The Proposed Amendment Is Not Futile

The Former Directors solely argue that the Motion should be denied because the allegations in the SAC are "futile."  *See* Opp. at 4-5.  That argument fails. For this independent basis, the Motion should be granted.

The Former Directors argue that a motion to amend should be denied if the complaint could "not survive a motion to dismiss."  Opp. at 3.  That proposition is incomplete.  More specifically,

2

courts in the Second Circuit deem claims futile only where "no colorable grounds exist to support the proposed claim." *Allison v. Closette Too, L.L.C.*, No. 14-cv-1618 (LAK)(JCF), 2015 U.S. Dist. LEXIS 2826, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015). Put another way, a motion to amend should be denied only if each claim "is clearly frivolous or legally insufficient on its face." *Halloran v. Harleysville Preferred Ins. Co.*, No. 3:16-cv-00133 (VAB), 2017 U.S. Dist. LEXIS 217240, at *24 (D. Conn. Feb. 8, 2017) (quoting *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996)). The futility analysis should be assessed on a claim-by-claim and party-by-party basis. *See Hopkins v. Kawasaki Rail Car, Inc.*, No. 3:17-CV-839 (CSH), 2017 U.S. Dist. LEXIS 138163, at *27 (D. Conn. Aug. 28, 2017).

Here, the Former Directors utterly fail to carry their heavy burden to demonstrate that each claim alleged in the SAC as to each Defendant "is clearly frivolous" and "legally insufficient on its face." Instead, the Former Directors simply presume, without any argument or elaboration, that all of the claims and allegations in Plaintiff's case are futile, and then myopically focus on a handful of new allegations in the SAC and argue that they are futile as to the Former Directors. *See* Opp. at 4. That tactic is insufficient and fails.

First, the SAC makes new allegations that the Former Directors breached their duty of oversight through their failure to control the Investment-Related Misconduct, instead allowing Wey, Kang, and other Defendants to mislead and violate agreements with Company investors and a former employee, resulting in costly litigation and settlements (including the Swellpath Litigation, Cottam Litigation, and Larson Litigation), which has further damaged the Company. *See* SAC ¶¶ 37-42, 297-380. Those breaches are the result of Wey's, Kang's, and other Defendants' systemic abuses of 6D Global's shares and operations, which the Former Directors failed to control or stop up through the time they resigned. As alleged in the SAC, the Former

3

Directors' supervisory positions at the Company and the multiple (at best) red flags of Wey's manipulation going to the core operations of 6D Global (including Wey's review of its securities filings, breach of its bylaws by awarding stock options to employees at NYGG, control over its personnel, legal and acquisition strategy, and beyond) make it implausible to infer that the Former Directors were *not* aware of this systemic abuse and manipulation when the Investor-Related Misconduct occurred.  *See* Pl's Opp. MTD Former Directors at 12-14.  In fact, at least one Former Director (Hartung) <u>admitted</u> he was aware of Wey's adverse domination in July 2015, well before the truth was revealed to the public and he resigned from the Company.  SAC ¶ 401.  The SAC thus alleges facts that he and the other Former Directors were well aware of Wey's abuses during the course of the Investor-Related Misconduct – which continued well into late 2015 and beyond (through Defendants' refusing to lift restrictions on shares in violation of investment agreements and breaching an employment contract with a former employee) – and thus breached their duty of loyalty and oversight by failing to implement and maintain adequate controls to stop it.  *See id.* ¶¶ 310, 335-36, 379-80, 430.

In sum, the SAC alleges far more than that the Former Directors were "with" the Company concerning these new allegations (*see* Opp. at 5); it alleges they breached their must fundamental duty as directors to oversee and control the Company, as had been represented to investors (SAC ¶ 222), instead allowing the Investment-Related Misconduct to flourish.  *See id.* ¶ 430 ("In further breach of their fiduciary duties owed to 6D Global, the Investment-Related Misconduct Defendants [including the Former Directors] engaged in *and/or allowed* the Company to engage in the Investment-Related Misconduct.") (emphasis added).

Second, the SAC makes new allegations concerning Kang's efforts to take further control of the Company (and thus strengthen Wey's control) through Kang's recent entrenchment efforts.

Those actions have caused 6D Global to fail to (a) make periodic reports and filings required by the SEC and (b) hold an annual meeting of stockholders since its last Annual Meeting of Stockholders on August 19, 2016, in violation of Delaware law and 6D Global's By-laws.  SAC ¶ 42.  Kang has "further breached his fiduciary duties by causing the Company to violate its By-laws by having too few directors on the Board, and thus strengthening his control over 6D Global." *Id.* ¶ 42.  These wrongful entrenchment actions were only possible because, as alleged in the SAC, the Former Directors abandoned the Company in 2015 and 2016.  *Id.* ¶¶ 73, 76, 84, 412.  This abandonment of the Company's independent directors, including its chair of the Audit Committee, did nothing but strengthen Kang's (and by extension Wey's) ability to maintain hostile control. *See In re Puda Coal, Inc. S'holders Litig.*, C.A. No. 6476-CS, 2013 Del. Ch. LEXIS 338, *9, *19-22 (Del Ch. Feb. 6, 2013) (denying motion to dismiss on failure to state a claim and demand futility grounds where some directors were alleged to have abandoned the company, and remaining director who had committed wrongdoing was left in a position of control).  Because the Former Director's abandonment and Kang's subsequent entrenchment efforts are inextricably intertwined, these new allegations *strengthen* Plaintiff's abandonment claim against the Former Directors, both in terms of liability and damages.  The Former Directors fail to even address these claims in their Oppposition.

The Former Directors likewise fail to address other allegations as to them (let alone the remaining Defendants) in both the SAC and Amended Complaint, including:

- The Former Directors' breach of their duty of loyalty and oversight by their failure to maintain adequate internal and financial controls, resulting in (among other things) (a) Wey's adverse control over 6D Global and his manipulation of its shares, and (b) the dissemination of false and misleading statements concerning Wey's adverse control to the

5

investing public, private investors, the SEC, and NASDAQ.  *See* SAC ¶¶ 1, 29, 99, 114, 222-23, 394, 417, 429.

- Related to the above, the Former Directors' failure to stop and control Wey from running roughshod over the enter enterprise up until the point they resigned, causing direct damage to the Company, including through illicitly manipulating the Company's shares for their personal profit (SAC ¶¶ 383, 438), hiring overly-expensive accountants and lawyers for the Company with personal connections to Wey (*id*. ¶ 184), granting unauthorized Company stock options to NYGG employees (*id*. ¶ 186), and taking control over irrational acquisitions and acquisition strategies that made no sense to the Company's bottom line but benefited Wey's interests personally (*id*. ¶¶ 187-200).

- Related to the above, the Former Directors' failure to control the Company's (and other Defendants') issuance of false and misleading statements to the investing public and NASDAQ, resulting in the Company being named in the Securities Class Action, the suspension of trading of the Company's shares on NASDAQ, and other damages.  SAC ¶ 43, 382.

- Related to the above, the Former Directors being named in the Discover Litigation for allowing the Company (and other Defendants) to issue false and misleading statements to a private Company investor concerning Wey's ownership and domination of 6D Global, causing further damage to the Company.  *See* SAC ¶¶ 270-95 & Ex. C.

- The Former Directors' breach of their duties of loyalty and good faith by permitting the dissemination of statements in SEC filings, including through soliciting proxy statements that omitted Wey's ownership and domination of the Company, the falsity of which was first revealed to the public starting on September 10, 2015 (*see* SAC ¶¶ 244 *et seq*.) and

have since caused the Company to be named in the Securities Class Action and other damages.[2]  *See* SAC ¶¶ 237, 241-43, 429, 432.

- As noted above, the Former Directors' abandonment of the Company in September 2015 (Kaufman and Saxena) and April 2016 (Hartung) when the truth about Wey began to emerge before the public and the indictments and lawsuits commenced, in further breach of their fiduciary duties and setting the stage for Kang to entrench himself to the Company's detriment.  *See* SAC ¶¶ 73, 76, 84, 412; *see also id.* ¶ 42 (Kang's taking control of Company from shareholders).

With respect to these allegations, the SAC (as with the Amended Complaint) alleges facts that give rise to a plausible inference that the Former Directors were well aware of Defendant Wey's adverse control and misconduct over the Company, and surrendered such control to Defendant Wey with little to no oversight.  *See* Pl's Opp. MTD Former Directors at 12-14.

The Former Directors have no retort to any of these allegations, either in their motion to dismiss or opposition to Plaintiff's motion to amend.  Instead, the best they can muster is that the SAC is "illogical" because it alleges that Wey was in charge while also naming the Former Directors as liable for his misconduct.  *See* Opp. at 81.  Far from illogical, that is the *basis* of one of Plaintiff's primary claims against the Former Directors:  that Defendant Wey (through assistance of Defendant Kang) improperly, and in violation of the bylaws, took over the Company's operations and management, and that the Former Directors knowingly permitted such control and breached their duty of loyalty by failing to disclose it or stop it.

In sum, the Former Directors' paltry presentation is insufficient to demonstrate that each

---

[2] The Former Directors claim there are no specific facts to demonstrate they were "involved" in the 2015 Proxies, but these documents, incorporated into the SAC by reference, clearly demonstrate that the Company's Board of Directors at the time (including the Former Directors) caused these proxy statements to issue.  *See, e.g.*, *see* Dkt. No. 83-1, 83-2 at 3 (noting statements signed by Defendant Kang "by Order Of The Board of Directors").

claim as to each Defendant "is clearly frivolous or legally insufficient on its face."  In fact, their six-page opposition fails to even address (and thus concedes the validity of) the lion's share of the claims actually alleged in the SAC, both against the Former Directors and, independently, as to the other Defendants.  For this independent basis, too, the Motion must be granted.

## III.    The Former Directors' Opposition Is Wasteful Given Option To Move To Dismiss

Finally, the Former Directors' opposition is particularly wasteful in view of their sole argument that amendment would be "futile".  Because "futility" constitutes their sole basis to oppose amendment, the Former Directors should have done what other Defendants did, and simply move to dismiss the SAC for failure to state a claim (which they failed to do).  Instead, the Former Directors' engage in piecemeal litigation that is contrary to the interests of judicial economy.  For this reason, too, the Motion should be granted.  *See Gutierrez v. Vergari*, 499 F. Supp. 1040, 1045 (S.D.N.Y. 1980) (granting motion to amend where defendants' attack on proposed amendment focused on failure to state a claim:  "a Rule 12(b)(6) motion will be required for these defendants to obtain dismissal of this action.").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully submits that the Court should grant the Motion.

Dated: October 5, 2018                                        Respectfully submitted,

**THE BROWN LAW FIRM, P.C.**

By: _/s/ Alexander P. McBride_
Timothy W. Brown
Alexander P. McBride
Matthew H. Lee
240 Townsend Square
Oyster Bay, New York 11771
Telephone: (516) 922-5427
Facsimile: (516) 344-6204
Email: tbrown@thebrownlawfirm.net
        amcbride@thebrownlawfirm.net
        mlee@thebrownlawfirm.net

*Counsel for Plaintiff*