UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLAN SCOTT, DERIVATIVELY AND ON BEHALF OF 6D GLOBAL TECHNOLOGIES INC., <br><br> Plaintiff, <br><br> -against- <br><br> BENJAMIN TIANBING WEI A/K/A/ BENJAMIN WEY, NEW YORK GLOBAL GROUP, INC., NYGG (ASIA), LTD., TEJUNE KANG, MARK SZYNKOWSKI, ADAM HARTUNG, DAVID S. KAUFMAN, TERRY MCEWEN, ANUBHAV SAXENA, PIOTR A. CHRZASZCZ, and MICHAEL BANNOUT, <br><br> Defendants, <br><br> and <br><br> 6D GLOBAL TECHNOLOGIES INC., <br><br> Nominal Defendant. | Case No. 1:15-cv-09691(RWS) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE FORMER OUTSIDE DIRECTORS' MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED <u>SHAREHOLDER DERIVATIVE COMPLAINT</u>**

MANATT, PHELPS & PHILLIPS, LLP
Andrew L. Morrison
Samantha J. Katze
7 Times Square
New York, New York 10036
Tel.: (212) 790-4500
Fax: (212) 790-4545
amorrison@manatt.com
skatze@manatt.com
*Attorneys for Defendants Adam Hartung, David S. Kaufman, and Anubhav Saxena*

## TABLE OF CONTENTS

                                                            **Page**

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

POINT I     PLAINTIFF FAILS TO STATE A FEDERAL CLAIM AGAINST THE FORMER OUTSIDE DIRECTORS .......................................................................... 1

POINT II    PLAINTIFF FAILS TO STATE A COMMON LAW CLAIM AGAINST THE FORMER OUTSIDE DIRECTORS ............................................................. 2

        A.    The Amended Complaint Fails To Specify The Former Outside Directors' Alleged Misconduct .................................................................................... 2

        B.    The Amended Complaint Fails To Plead A Non-Exculpated Claim ..................... 4

        C.    Plaintiff Cannot Overcome The Business Judgment Rule ..................................... 8

        D.    The Unjust Enrichment Claim Fails As A Matter Of Law .................................... 9

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

                                                                                          **Page**

### CASES

*Central Laborers' Pension Fund v. Dimon*,
   No. 14 CIV. 1041 (PAC), 2014 WL 3639185 (S.D.N.Y. July 23, 2014), *aff'd*,
   638 F. App'x 34 (2d Cir. 2016) ........................................................................................7

*In re Asyst Techs., Inc. Derivative Litig.*,
   No. C-06-04669 EDL, 2008 WL 2169021 (N.D. Cal. May 23, 2008) ..................................10

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996)............................................................................4, 5, 6, 7, 8

*In re China Agritech, Inc.*,
   C.A. No. 7163-VCL, 2013 WL 2181514 (Del. Ch. May 21, 2013) .........................................8

*In re Citigroup, Inc. Shareholder Deriv. Litig.*,
   964 A.2d 106 (Del. Ch. 2009)................................................................................................9

*In re Puda Coal, Inc.*,
   C.A. No. 67476-CS (Del. Ch. Feb. 6, 2013)........................................................................8

*In re Shengdatech, Inc. Sec. Litig.*,
   No. 11 Civ. 1918(LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ...............................2, 3

*In re Wells Fargo & Co. Shareholder Deriv. Litig.*,
   282 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................................9, 10

*Marchand v. Barnhill*,
   C.A. No. 2017–0586–JRS, 2018 WL 4657159 (Del. Ch. Sept. 27, 2018) ..............................5

*Oklahoma Firefighters Pension & Ret. Sys. v. Corbat*,
   C.A. No. 12151–VCG, 2017 WL 6452240 (Del. Ch. Dec. 18, 2017).......................................5

*OptimisCorp v. Waite*,
   C.A. No. 8773-VCP, 2015 WL 5147038 (Del. Ch. Aug. 26, 2015), *aff'd,* 137
   A.3d 970 (Del. 2016) ..............................................................................................................8

*Pfeiffer v. Toll*,
   989 A.2d 683 (Del. Ch. 2010), *abrogated by Kahn v. Kohlberg Kravis Roberts
   & Co., L.P.*, 23 A.3d 831 (Del. Ch. 2011) ...........................................................................6, 7

*Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*,
   66 A.3d 963 (Del. Ch. 2013).............................................................................................6, 7

*Sampson v. Robinson*,
   No. 07 CIV. 6890 (PAC), 2008 WL 3884386 (S.D.N.Y. Aug. 20, 2008).................................7

*Shaev v. Baker*,
   No. 16-CV-05541-JST, 2017 WL 1735573 (N.D. Cal. May 4, 2017) .....................................6

*Steinberg v. Sherman*,
   No. 07 Civ. 1001(WHP), 2008 WL 2156726 (S.D.N.Y. May 8, 2008) ....................................2

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ................................................................................................6, 9

**RULES**

Fed. R. Civ. P. 9(b) ........................................................................................................................3

Fed. R. Civ. P. 14a-9......................................................................................................................1

**PRELIMINARY STATEMENT**

Although Plaintiff's opposition brief protests mightily that the Former Outside Directors' motion to dismiss is without merit, it is obvious that Plaintiff actually believes the motion to be well taken because, in response to the motion, Plaintiff has (1) withdrawn his federal securities claim under Section 14(a) (*see* Plaintiff's Opp. Br. (Dkt. No. 102) at 11, n.8); and (2) commenced an identical action in the Delaware Chancery Court (*see* accompanying Declaration of Andrew L. Morrison dated October 22, 2018 at Exhibit "1").[1]  To the extent that the Court elects to determine the remaining common law claims, Plaintiff cannot overcome the fact that the Amended Complaint (and the proposed Second Amended Complaint) fails to allege any specific conduct by any of the Former Outside Directors, fails to allege a non-exculpated claim, fails to overcome the business judgment rule, and fails to allege the elements of an unjust enrichment claim against the Former Outside Directors.

**ARGUMENT**

**POINT I**

**PLAINTIFF FAILS TO STATE A FEDERAL CLAIM
AGAINST THE FORMER OUTSIDE DIRECTORS**

In their opening memorandum of law, the Former Outside Directors set forth how the Amended Complaint fails to plead a claim against them under Section 14(a) or Rule 14a-9.  (*See* Moving Br. at 9-15)  In response, Plaintiff states that he does not oppose the motion to dismiss the federal securities claim asserted against the Former Outside Directors.  (*See* Opp. Br. at 11, n.8)  Accordingly, this claim should be dismissed with prejudice.

---

[1] Capitalized terms have the same meaning ascribed to them in the Former Outside Directors' moving memorandum of law ("Moving Br.") dated August 23, 2018 (Dkt. No. 80).  The Moving Brief inadvertently defined New York Global Group, Inc. as "NYGG-Asia."  However, references to NYGG-Asia in the Moving Brief actually refer to Defendant NYGG (Asia), Ltd.

## POINT II

## PLAINTIFF FAILS TO STATE A COMMON LAW CLAIM
## AGAINST THE FORMER OUTSIDE DIRECTORS

### A.   The Amended Complaint Fails To Specify
### The Former Outside Directors' Alleged Misconduct

The Former Outside Directors have demonstrated that the Amended Complaint fails to plead specific misconduct on their part during the relatively brief time that they served on 6D's board of directors.  (*See* Moving Br. at 17-19)  In response, Plaintiff once again lumps the Former Outside Directors in with 6D's management and other defendants and contends: "[t]he other Defendants – as officers and directors of the Company – have breached their duties of care, loyalty, and good faith by failing to implement and execute adequate financial and internal controls to reign [sic] in Wey's abuses . . . ."  (Opp. Br. at 1)  However, the Amended Complaint contains no facts to support these conclusions as they relate to the Former Outside Directors.  There are no specific allegations of how the Former Outside Directors failed to "reign in" Wey's alleged but unspecified abuses during their limited tenure on 6D's board.  There are no specific allegations that any of the Former Outside Directors knew about Wey's unspecified alleged abuses during their limited tenure on 6D's board.  In fact, the criminal indictment against Wey, incorporated by reference in the Amended Complaint and unsealed in September 2015, identifies Wey's alleged criminal conduct as involving companies separate and distinct from 6D that occurred three to seven years prior to the time that the Former Outside Directors served on 6D's board of directors: "[f]rom at least in or about 2007 through at least in or about 2011 . . . ."  (Am. Comp., Ex. A at 2, ¶ 7; *see also* Am. Comp. ¶¶ 233-43)

This failure to allege specific misconduct on the part of any of the Former Outside Directors dooms Plaintiff's fiduciary duty claim.  *See* Fed. R. Civ. P. 9(b); *see also Steinberg v. Sherman*, No. 07 Civ. 1001(WHP), 2008 WL 2156726, at *5 (S.D.N.Y. May 8, 2008); *In re*

2

*Shengdatech, Inc. Sec. Litig.,* No. 11 Civ. 1918(LGS), 2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12, 2014).  None of Plaintiff's arguments can save his claims against the Former Outside Directors.

First, Plaintiff argues that the gravamen of the Amended Complaint does not sound in fraud and, accordingly, Rule 9(b) is not applicable to the fiduciary duty claim against the Former Outside Directors.  (Opp. Br. at 8, n.5)  This represents a willful misreading of the pleading.  (*See, e.g.,* Am. Comp. ¶ 334) ("The [allegedly false and misleading] 2015 Proxies formed an essential link in the accomplishment of the continuation of Defendants' continued violation of their fiduciary duties in connection with the stock manipulation scheme . . . .") (brackets added))

Second, Plaintiff desperately combs the 85-page Amended Complaint to find examples of allegations of specific misconduct attributable to the Former Outside Directors.  Although Plaintiff argues that the Amended Complaint "is replete with allegations pertaining to these specific directors," it is obvious that the allegations on Plaintiff's list fail to include specific facts relating to the Former Outside Directors.  (*See* Opp. Br. at 10, n.6)  For example, Amended Complaint ¶¶ 70-72, 78-80, and 81-83 are biographical allegations that allege no misconduct; ¶ 92 is a group and conclusory allegation with no specific misconduct alleged: "[t]he conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations to 6D Global"; ¶¶ 265-66 are quotes from 6D's 8-K regarding departures; ¶ 277 contains no allegations of specific misconduct; ¶ 307 references the resignations of the Former Outside Directors, an undisputed fact, and then layers on Plaintiff's speculation and conclusions regarding the resignations, without any additional facts, including the wild speculation that the resignations were part of a "conspiracy" with the current directors to enable the Former Outside Directors to obtain "get-home free tickets" (whatever that means); ¶ 310 is another group and

3

conclusory allegation involving "the Current and Former Directors"; ¶ 313 does not specify any alleged misconduct; and ¶ 321 does not specify any alleged misconduct.

In a related case, this Court previously dismissed claims against Terry McEwen, a former chairman of 6D's board of directors who also served as 6D's CEO. Mr. McEwen resigned from 6D's board a week after Defendants Kaufman and Saxena resigned. (Am. Comp. ¶¶ 73, 74) That dismissal was affirmed by the U.S. Court of Appeals for the Second Circuit. (*See* Moving Br. at 12) The Former Outside Directors are even more attenuated than Mr. McEwen, and the claims against them should similarly be dismissed.

### B.    The Amended Complaint Fails To Plead A Non-Exculpated Claim

The Former Outside Directors have demonstrated that the Amended Complaint fails to plead a non-exculpated claim for breach of fiduciary duty. (*See* Moving Br. at 17-19) Plaintiff responds by arguing that the Former Outside Directors' alleged failure to monitor and check Wey's alleged abuses amounts to a breach of the duty of loyalty which is not exculpated. (Opp. Br. at 8-17) Plaintiff is wrong as a matter of law.

In order to convert a failure of oversight claim into a breach of the duty of loyalty (known as a "*Caremark*" claim), a plaintiff must plead and demonstrate lack of good faith, which is an extremely difficult hurdle to clear:

> [O]nly a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability. Such a test of liability—lack of good faith as evidenced by sustained or systematic failure of a director to exercise reasonable oversight—is quite high. But, a demanding test of liability in the oversight context is probably beneficial to corporate shareholders as a class, as it is in the board decision context, since it makes board service by qualified persons more likely, while continuing to act as a stimulus to *good faith performance of duty* by such directors.

*In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 971 (Del. Ch. 1996) (emphasis in original).

Accordingly, "[i]n order to plead a claim under *Caremark* . . . a plaintiff must plead facts that allow a reasonable inference the directors acted with 'scienter' which, in turn, 'requires [not only] proof that a director acted inconsistent[ly] with his fiduciary duties but, 'most importantly, that the director *knew* he was so acting.'" *Marchand v. Barnhill*, C.A. No. 2017–0586–JRS, 2018 WL 4657159, at *16 (Del. Ch. Sept. 27, 2018) (citation omitted); *see also Oklahoma Firefighters Pension & Ret. Sys. v. Corbat*, C.A. No. 12151–VCG, 2017 WL 6452240, at *1 (Del. Ch. Dec. 18, 2017) ("The inaction must suggest, not merely inattention, but actual scienter.").

The Amended Complaint not only fails to allege scienter but also eviscerates any reasonable inference of the Former Outside Directors' scienter. The Amended Complaint alleges that 6D's board of directors engaged a well-regarded accounting firm, BDO, to audit 6D's 2015 financials and that such audit "included investigative procedures designed to assess whether Defendant Wey's control over 6D Global was a material weakness in its internal controls." (Am. Comp. ¶ 268) The Amended Complaint goes on to allege that "BDO further discovered instances of Defendants Wey and Kang *circumventing Board controls*." (*Id.* ¶ 269) (emphasis added). The Amended Complaint further alleges "BDO wrote, if 6D Global did not fire Defendant Kang, BDO would have to resign as 6D Global's auditor." (*Id.* ¶ 271) The Amended Complaint alleges: "On March 17, 2016, 6D Global's Board met to discuss BDO's ultimatum. Defendant Kang rejected the request that he resign. Defendant Hartung then moved to terminate Defendant Kang, but his motion was not seconded and therefore not voted upon." (*Id.* ¶ 272) The Amended Complaint then alleges that, as a result, both BDO and Hartung resigned. (*Id.* ¶¶ 273-74)

5

The conduct alleged in the Amended Complaint defeats the *Caremark* claim as a matter of law. *See Stone v. Ritter,* 911 A.2d 362, 372 (Del. 2006) (sustaining a motion to dismiss and holding "[f]or the plaintiffs' derivative complaint to withstand a motion to dismiss, 'only a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability.'") (quoting *Caremark*, 698 A.2d at 971)); *see also Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong,* 66 A.3d 963, 980-81 (Del. Ch. 2013) [hereinafter *Chong*] ("Demonstrating lack of good faith is the reef upon which most *Caremark* claims founder."). *Chong* makes clear that "a finding of liability [under *Caremark*] is conditioned on a plaintiff's showing that the directors knew they were not fulfilling their fiduciary duties." 66 A.3d at 981.

Plaintiff's attempt at legal alchemy fails. He simply cannot convert his unsupported allegations regarding the Former Outside Directors' alleged failure to control Wey (which includes the alleged false and misleading proxies) into a claim for a breach of the duty of loyalty.[2] The Amended Complaint's failure to allege any specific facts to support the Former Outside Directors' scienter renders Plaintiff's case law unavailing. *See, e.g., Shaev v. Baker*, No. 16-CV-05541-JST, 2017 WL 1735573, *10-15 (N.D. Cal. May 4, 2017) (plaintiff provided particularized allegations that board members knew of illegal activities and consciously disregarded their oversight duties, including the CEO's congressional testimony acknowledging integrity issues); *Pfeiffer v. Toll*, 989 A.2d 683, 691-95 (Del. Ch. 2010), *abrogated by Kahn v.*

---

[2] The court in *Chong* set forth "[e]xamples of directors' 'disabling themselves from being informed'" to include "a corporation's lacking an audit committee, or a corporation's not utilizing its audit committee." *Id.* at 981. Neither is alleged here and, in fact, the Amended Complaint alleges that the audit committee engaged BDO to perform an audit, that BDO was tasked specifically with investigating the issue of Wey's alleged control, that BDO recommended action, and that defendant Hartung attempted to implement BDO's suggested course of action. (*See* Am. Comp. ¶¶ 268-72)

6

*Kohlberg Kravis Roberts & Co., L.P.*, 23 A.3d 831 (Del. Ch. 2011) (plaintiff stated a claim for breach of duty of loyalty based upon independent directors' insider trading). The litany of characterizations of the allegations in the Amended Complaint set forth at pages 9-11 of Plaintiff's opposition brief do not create allegations of a breach of the duty of loyalty.

Courts are loath to use the duty of loyalty to find liability for outside directors in the face of an exculpation provision because to do so would dissuade qualified individuals from serving as outside directors, which would be detrimental to shareholders in general. Plaintiff has failed to allege facts that show egregious conduct and/or requisite scienter by the Former Outside Directors of the type that will support a duty of loyalty claim which, according to *Caremark*, is "possibly the most difficult theory in corporation law ." *Caremark*, 698 A.2d at 967; *see, e.g., Central Laborers' Pension Fund v. Dimon,* No. 14 Civ. 1041(PAC), 2014 WL 3639185, at *3 (S.D.N.Y. July 23, 2014), *aff'd,* 638 F. App'x 34 (2d Cir. 2016) (dismissing *Caremark* claim, in part, where plaintiff alleged that defendant's systems or controls were only inadequate, and not wholly non-existent); *Sampson v. Robinson,* No. 07 Civ. 6890(PAC), 2008 WL 3884386, at *8 (S.D.N.Y. Aug. 20, 2008) (acknowledging "*Caremark's* caution that mere labels describing Board actions—'stupid,' 'egregious,' 'irrational,'—do not provide grounds for liability.").

Nor can Plaintiff rely on the undisputed fact that the Former Outside Directors resigned from 6D's board of directors to support his claim for breach of fiduciary duty. The cases cited by Plaintiff to support his argument are not helpful to him. In *Chong,* the court analyzed director resignations in the context of demand futility for a derivative claim and not in the context of the merits of a fiduciary duty claim. *See Chong*, 66 A.3d at 979. Moreover, the *Chong* court was presented with a company that had not performed an audit in three years and let an investigation into accounting abuses stall by refusing to pay the accountants and lawyers. *Id*. at 972. This is

7

not remotely similar to the facts here. Similarly, *In re China Agritech, Inc.,* C.A. No. 7163-VCL, 2013 WL 2181514 (Del. Ch. May 21, 2013) involved a company that had an audit committee that did not meet and the company was engaged in massive fraud when several outside directors resigned. The *China Agritech* court found that under those specific circumstances, it could draw the inference that the board could not properly consider a *litigation demand*. *Id.* at *21. The court made a special effort to limit its holding to the particular facts of the case and held further: "The Court's ability to draw such an inference on the facts alleged here does not suggest that an independent director's resignation typically would support either an inference of culpability or the inability to consider a demand." *Id.* at *23. *In re Puda Coal, Inc.*, C.A. No. 67476-CS (Del. Ch. Feb. 6, 2013) (TRANSCRIPT) similarly involved "extreme circumstances" concerning an utter failure to monitor overseas operations in China. Chancellor Strine held: "This is a little bit distinct from your typical Caremark case. Why? Because the entire asset base of the company was sold out from under the independent directors nearly two years before they discovered it. And did they discover it? No. Apparently people who can blog about things discovered it." *Id.* at 18-19. In fact, Delaware courts have recognized that cases like *Puda* are outliers and atypical of the general rule that no inference is to be taken from a director's resignation: "Leaving one's job could be a breach of contract, but the act of resigning and therefore choosing to no longer work for a company or owe it fiduciary duties, without more, generally would not give rise to a breach of the duty of loyalty, absent unusual circumstances such as those existing in *In re Puda Coal, Inc. Stockholders Litigation.*" *OptimisCorp v. Waite,* No. CV 8773-VCP, 2015 WL 5147038, at *73 (Del. Ch. Aug. 26, 2015), *aff'd,* 137 A.3d 970 (Del. 2016).

     **C.**     **Plaintiff Cannot Overcome The Business Judgment Rule**

The Former Outside Directors have demonstrated that the Amended Complaint fails to overcome the business judgment rule which protects them from claims that second guess their

8

decisions. (*See* Moving. Br. at 19-20) Plaintiff's response is that bad faith and breach of duty of loyalty rebuts the presumption. (Opp. Br. at 17-18) As set forth above, Plaintiff has failed to allege the Former Outside Directors' bad faith or breach of the duty of loyalty. *See supra* at 4-8. Next, Plaintiff argues that the business judgment rule does not apply because there is no transaction that is being challenged. (Opp. Br. at 18) However, courts have applied the business judgment rule to corporate decisions other than merger transactions, and Plaintiff's claim challenges the myriad corporate decisions made by the Former Outside Directors in terms of how they monitored 6D. *See, e.g.*, *In re Citigroup, Inc. Shareholder Deriv. Litig.*, 964 A.2d 106, 123-26 (Del. Ch. 2009) ("The Delaware Supreme Court made clear in *Stone* that directors of Delaware corporations have certain responsibilities to implement and monitor a system of oversight; however, this obligation does not eviscerate the core protections of the business judgment rule.") Finally, Plaintiff argues that the Former Outside Directors were self-interested when they resigned from 6D's board of directors. (Opp. Br. at 16-17) As set forth above, resignation, without additional extreme circumstances, is not actionable. *See supra* at 7-8.

### D. The Unjust Enrichment Claim Fails As A Matter Of Law

The Former Outside Directors have demonstrated that the Amended Complaint fails to state an unjust enrichment claim against them. (Moving Br. at 20) Plaintiff responds by relying on two inapposite California cases that allowed unjust enrichment claims to be asserted against a company's senior officers. *See In re Wells Fargo & Co. Shareholder Deriv. Litig.*, 282 F. Supp. 3d 1074, 1085-86, 1109-10 (N.D. Cal. 2017) (noting that one senior officer "netted over $20.7 million in gains" from selling Wells Fargo shares "at an artificially inflated [stock] price using his employee stock options" and another "netted over $3.9 million in gains" selling Wells Fargo shares "at an artificially inflated [stock] price") (internal quotation marks and citation omitted);

*In re Asyst Techs., Inc. Derivative Litig.,* No. C–06–04669 EDL, 2008 WL 2169021, *11 (N.D. Cal. May 23, 2008) (allowing, without citation, a claim against senior officers). The Former Outside Directors were not senior officers and these cases are unavailing.[3]

## CONCLUSION

For all the foregoing reasons, and for the reasons set forth in their Moving Brief, the Former Outside Directors respectfully request the Court to dismiss, with prejudice, the claims asserted against them and to award the Former Outside Directors such further relief as the Court deems proper.

| | |
|---|---|
| Dated: New York, New York.<br>October 22, 2018 | MANATT, PHELPS & PHILLIPS, LLP<br><br>By: s/ Andrew L. Morrison<br>Andrew L. Morrison<br>Samantha J. Katze<br>7 Times Square<br>New York, New York 10036<br>Tel.: (212) 790-4500<br>Fax: (212) 790-4545<br>amorrison@manatt.com<br>skatze@manatt.com<br>*Attorneys for Defendants Adam Hartung,*<br>*David S. Kaufman, and Anubhav Saxena* |

---

[3] Plaintiff has placed his argument with respect to improper forum in his opposition to the 6D Defendants' motion to dismiss the Second Amended Complaint. (*See* Plaintiff's Opp. Br. (Dkt. No. 103) at 3-9) To the extent that Plaintiff relies upon his section 14(a) claim to argue that 6D's forum selection clause is unenforceable, such argument is meritless given the fact that Plaintiff has withdrawn his section 14(a) claim. With respect to Plaintiff's waiver argument, the Former Outside Directors have not answered or moved against any pleading or contested any of the claims on the merits prior to the instant motion.