UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALLAN SCOTT, DERIVATIVELY AND ON
BEHALF OF 6D GLOBAL TECHNOLOGIES,
INC.,

                              Plaintiff,                    Case No. 1:15-cv-09691-RWS

      -    against -

BENJAMIN TIANBING WEI A/K/A
BENJAMIN WEY; NEW YORK GLOBAL
GROUP, INC.; NYGG (ASIA) LTD., TEJUNE
KANG; MARK SZYNKOWSKI; ADAM
HARTUNG; DAVID S. KAUFMAN; TERRY
MCEWEN; ANUBHAV SAXENA; PIOTR A.
CHRZASZCZ, and MICHAEL BANNOUT,

                              Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE 6D
DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT**

CATAFAGO FINI LLP
350 Fifth Ave., Suite 7710
New York, NY 10118
(212) 239-9669

## TABLE OF CONTENTS

PRELIMINARY STATEMENT......................................................................................1

ARGUMENT .................................................................................................................2

    I.     PLAINTIFF COMMITTED FRAUD ON THE COURT TO AVOID THE DELAWARE CHANCERY COURT FORUM SELECTION CLAUSE..........................................................2

        A.    Plaintiff Never Had Standing to Assert a Section 14(a) Claim – a Fact that Plaintiff Concealed Until the Recent Filing of the Proposed Second Amended Complaint.................2

        B.    The 6D Defendants Did Not "Waive" the Forum Selection Clause in 6D's Bylaws Because They Relied on Plaintiff's Fraudulent Assertion that He Owned 6D Stock When the Proxy Statements were Distributed and the Proxy Vote Occurred, and In Any Event, No Waiver Has Occurred at This Early Stage...............................................................................5

    II.    BECAUSE THE CORE OF THE ALLEGEDLY WRONGFUL CONDUCT OCCURRED PRIOR TO PLAINTIFF'S PURCHASE OF 6D SHARES, PLAINTIFF DOES NOT HAVE STANDING TO ASSERT *ANY* OF HIS CLAIMS..............................................8

    III.   PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE HE HAS NOT ADEQUATELY PLEAD DEMAND FUTILITY .....................................................................9

    CONCLUSION..........................................................................................................11

i

# TABLE OF AUTHORITIES

## Cases

*A.D.M. Club Mgmt. Sys. v. Gary Jonas Computing Ltd.*, 2006 WL 2689400 (D. N.J.  Sept. 19, 2006) ...........................................................................................................................4

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49 (2013) ..................8

*Brodsky v. Match.com LLC*, 2009 WL 3490277 (S.D.N.Y. Oct. 28, 2009) ...................................7

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41 (1st Cir. 2014)..........6, 7

*CMS Inv. Holdings, LLC v. Castle*, 2016 WL 4411328 (Del. Ch. Aug. 19, 2016)........................8

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585 (S.D.N.Y. 2010) .................................................................................................................................6, 7

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 91 F.R.D. 524 (S.D.N.Y. 1981).......................10

*Huffington v. T.C. Grp., LLC*, 2012 WL 1415930 (Del. Super. Ct. Apr. 18, 2012) .....................8

*In re Bank of New York Derivative Litigation*, 320 F.3d 291 (2d Cir. 2003)................................9

*In re Envirolite Enterprises, Inc.*, 53 B.R. 1007 (S.D.N.Y. Bankr. 1985).....................................4

*Kasparov v. Ambit Texas, LLC*, 2016 WL 10749156 (E.D.N.Y. March 10, 2016) ......................4

*Keitt v. New York City*, 882 F. Supp. 2d 412 (S.D.N.Y. 2011).....................................................4

*KTV Media International, Inc. v. Galaxy Group, LA LLC*, 812 F. Supp. 2d 377 (S.D.N.Y. 2011)4

*Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78 (2d Cir. 2015) ........................................................................................................................................5

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)..............................................................6

*Martinez v. Bloomberg LP*, 883 F.Supp.2d 511 (S.D.N.Y. 2012) .............................................7, 8

*Milliken & Co. v. FTC*, 565 F. Supp. 511 (D. S.C. 1983)..............................................................7

*United States Fidelity & Guaranty Company v. Petroleo Brasileiro S.A.*, 2001 WL 300735 (N.D. W. Va. March 27, 2001).....................................................................................................6

The 6D Defendants respectfully submit the following Reply Memorandum in Further Support of their Motion to Dismiss Plaintiff's Second Amended Complaint.

## PRELIMINARY STATEMENT

In their opening brief, the 6D Defendants demonstrated what Plaintiff now concedes: that the Plaintiff never had standing to assert his Section 14(a) claim, because he in fact did not purchase his 6D stock until August 2015, months after the April 2015 proxies at issue were voted on at the June 3, 2015 6D shareholder meeting.

Indeed, as set forth in defendants' moving brief, the Plaintiff and his counsel committed a serious fraud on this Court for nearly three years, because they deliberately concealed from the Court Plaintiff's actual purchase date of 6D stock.  In the original Complaint filed in December 2015, and the First Amended Complaint filed in July 2016, Plaintiff not only concealed the actual purchase date, but the Plaintiff and his counsel also affirmatively and falsely represented that Plaintiff owned 6D stock no later than June 16, 2014 – a blatant lie that Plaintiff finally admitted only in June 2018 after defendants demanded to know the actual purchase date.  Only years after the Plaintiff and his counsel misled the Court did they finally, in the proposed Second Amended Complaint filed recently on June 24, 2018, admit the truth of Plaintiff's purchase date of *August 2015*.

Now that Plaintiff's fraud was exposed in Defendants' motion, he has even abandoned his Section 14(a) claim – but only in response to Defendants' motion, and only after Defendants' were forced to incur the fees to make this motion to eliminate this facially frivolous claim.  Indeed, after reading Defendants' motion to dismiss which called out Plaintiff's fraud on the Court, the Plaintiff has now filed a nearly identical derivative action in Delaware Chancery Court – a public and stunning acknowledgment by Plaintiff's counsel that this derivative action always belonged in Delaware Chancery Court, and that his gamesmanship in this forum is about to come to an end.

Because the frivolous Section 14(a) claim was the *only* basis for the Plaintiff to purport to avoid the forum selection clause that designated Delaware Chancery Court for this derivative action, it is impossible for the Plaintiff to rely on that federal claim to avoid dismissal of this action.  Astonishingly, Plaintiff argues that the Defendants somehow "waived" the forum selection clause

because they simply agreed to stay this action, including to engage in settlement discussions. However, due to Plaintiff's fraud on the Court in concealing the actual date of purchase of 6D stock, Defendants only recently became aware that Plaintiff never even had ***standing*** to assert the Section 14(a) claim – a stunning fact which, if Plaintiff had not defrauded the Court and the parties, would have made it obvious that this case belonged in Delaware Chancery Court all along, since the federal claim never existed.

Moreover, the cases cited herein show that it is well-established that by simply agreeing to stay this action to attempt settlement – where no discovery whatsoever has taken place and we are at the motion to dismiss stage – Defendants as a matter of law did not "waive" the forum selection clause that the Plaintiff chose to ignore at his peril.

Under well-settled law discussed below, Plaintiff's decision to ignore the Delaware forum selection clause, and then on top of that deceive the Court and Parties into thinking he had standing to assert a Section 14(a), was a faulty and fraudulent litigation tactic which Plaintiff and his counsel chose to engage in at their peril. The law is absolutely clear that the fact that Plaintiff's claims in Delaware may well now be time barred (defendants believe they clearly are) is no basis to deny this motion, as it was the Plaintiff who knowingly made the strategic decision to file in the wrong forum, based on a blatant lie and concealment as to the actual purchase date of his 6D stock. There are additional reasons to dismiss this action as discussed below, but Plaintiff and his counsel's fraud on the Court and utterly baseless Section 14(a) is reason alone to not only dismiss this action, but to also impose sanctions *sua sponte* to compensate the defendants for the fees in making this motion.

## <u>ARGUMENT</u>

### I.  PLAINTIFF COMMITTED FRAUD ON THE COURT TO AVOID THE DELAWARE CHANCERY COURT FORUM SELECTION CLAUSE

#### A.  Plaintiff Never Had Standing to Assert a Section 14(a) Claim – a Fact that Plaintiff Concealed Until the Recent Filing of the Proposed Second Amended Complaint

For nearly three years, the Plaintiff blatantly misled the parties and the Court by asserting in his pleadings that he "has continuously held 6D Global common stock at all relevant times."

Complaint (Doc. 1) ¶ 14; First Amended Complaint (Doc. 17) ¶ 44.  This represented to the Court and the parties that Plaintiff owned his shares during the "Relevant Time Period," which the original Complaint asserted was **November 3, 2010** through September 10, 2015 Doc. 1 ¶ 1, and which the First Amended Complaint asserted was "**June 16, 2014** through the present."  Doc. 17 ¶ 1.

Thus, Plaintiff clearly represented in his first two pleadings that he owned 6D shares when the Proxy Materials at issue were distributed in April of 2015, and when the proxy vote was held on June 3, 2015 – the wrongful acts allegedly giving rise to the purported Section 14(a) claim.  However, only after the 6D Defendants demanded in 2018 that Plaintiff disclose the actual date that he purchased the 6D stock, *Plaintiff admitted for the first time* in his proposed Second Amended Complaint filed on June 24, 2018 that Plaintiff did not purchase his shares of 6D until **August 17, 2015** – which was over two months **after** the June 3, 2015 proxy vote, and long after the core of the alleged wrongful acts in pleadings occurred.  Doc. 59-2 ¶ 50.  Thus, the proposed Second Amended Complaint shockingly revealed that Plaintiff had committed a serious fraud on the Court.

In light of Plaintiff's admission that he did not own any shares of 6D until months after the June 3, 2015 proxy vote which formed the basis of his Section 14(a) claim, it is now clear that Plaintiff in fact never had standing to assert such a claim, and that Plaintiff's Section 14(a) claim was and is utterly frivolous.  Thus, the only claim in this case that would have justified avoiding the Delaware forum selection provision (because federal courts have exclusive jurisdiction over a Section 14(a) claim) has been revealed to be a sham and a product of Plaintiff's counsel's shameless deceit on the Court.

Indeed, it is notable that Plaintiff does not even try to defend his Section 14(a) claim in his opposition to the 6D Defendants' motion to dismiss, and even abandons it.  *See* Doc. 103 at 10 n.12.  Thus, what everyone can agree on now is that the only purported claim that acted as a basis to avoid the Delaware forum selection clause in the 6D bylaws was an utterly frivolous claim from the outset, which never in fact existed, and was just made up by Plaintiff's counsel in an outrageous effort to dodge the Delaware forum selection clause.

Having been caught committing a blatant fraud on the Court, Plaintiff's counsel digs in deeper, and makes a number of desperate and strained arguments in efforts to somehow avoid dismissal of this derivative action, since it clearly always belonged in Delaware Chancery Court.  First, Plaintiff makes the absurd argument that "venue is determined at the time the complaint is filed."  Doc. 103 at 4.[1]  But the general rule Plaintiff cites is not applicable to situations where there is a forum selection clause, and a plaintiff alleges a frivolous federal claim in efforts to evade the chosen forum.  Where, as where, the sole federal claim asserted to avoid the forum selection clause is dismissed, courts properly enforce the forum selection clause and dismiss the remaining claims, holding that they should instead be filed in the forum that was agreed to.  *See, e.g.*, *A.D.M. Club Mgmt. Sys. v. Gary Jonas Computing Ltd.*, 2006 WL 2689400, *7 (D. N.J.  Sept. 19, 2006) (after dismissing federal antitrust claim, which was sole basis to avoid forum selection clause, the court dismissed the claims that were subject to the forum selection clause, as they belonged in another forum).

Indeed, any other outcome but dismissal would mean that a plaintiff could avoid a valid forum selection clause simply by asserting a frivolous federal claim – even one that is literally made up by the plaintiff's attorney and based on a complete lie to the Court as to when the plaintiff purchased stock.  It is well settled that courts do not allow artful or deceptive pleadings to bypass valid forum selection clauses.  *KTV Media International, Inc. v. Galaxy Group, LA LLC*, 812 F. Supp. 2d 377, 387 (S.D.N.Y. 2011) ("The court will not allow a forum selection clause to be defeated by artful pleading . . . ."); *Kasparov v. Ambit Texas, LLC*, 2016 WL 10749156, *5 (E.D.N.Y. March 10, 2016) ("A forum selection clause should not be defeated by artful pleading . . . ."); *In re Envirolite Enterprises, Inc.*, 53 B.R. 1007, 1009 (S.D.N.Y. Bankr. 1985) ("If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading . . . .").  This Court should follow well-settled law, and, in light of the fact that the Section 14(a) has now been admitted by Plaintiff to be a dead claim (and was indeed frivolous at its

---

[1] Plaintiff cites *Keitt v. New York City*, 882 F. Supp. 2d 412 (S.D.N.Y. 2011) for the proposition that "venue is assessed at the time the action is filed, not based on subsequent changes to claims, parties, or events in the action."  Doc. 103 at 4. However, that case did not involve a forum selection clause or a frivolous federal claim.  That case stands for the completely inapposite position that venue should not be affected by subsequent events such as the dismissal of a party.

inception and based on a fraud on the Court), enforce the Delaware forum selection clause by dismissing this action, as Plaintiff should have brought it in Delaware Chancery Court to begin with.

**B. The 6D Defendants Did Not "Waive" the Forum Selection Clause in 6D's Bylaws Because They Relied on Plaintiff's Fraudulent Assertion that He Owned 6D Stock When the Proxy Statements were Distributed and the Proxy Vote Occurred, and In Any Event, No Waiver Has Occurred at This Early Stage**

Plaintiff's next desperate attempt to evade the Delaware forum selection clause is his assertion that the 6D Defendants have somehow "waived" the forum selection clause.  In support of this argument, the Plaintiff asserts that, even though absolutely no discovery has taken place, and we are at the initial pre-answer motion to dismiss stage, the fact that the Defendants agreed to a stay this action (in part to explore settlement), somehow "waived" the forum selection clause.  This argument fails for several reasons.

First, it was the Plaintiff and his counsel who created any delay here by deceiving the Court and the Defendants *for nearly three years* in asserting – falsely – that Plaintiff owned 6D stock at the time the challenged proxy statement was issued and voted on in April and June 2015.  If Defendants had not been deceived by the Plaintiff for years, and if the Defendants earlier knew that Plaintiff did not even have standing to assert the Section 14(a) claim, this would have made it obvious to the Court and the defendants from the outset that there was no standing to assert the only federal claim being used to purportedly bypass the Delaware forum selection clause.

Waiver involves a knowing relinquishment of a right.  *Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015) ("A contractual right may be waived if it is knowingly, voluntarily and intentionally abandoned.").  While Plaintiff secretly knew that he did not have standing to assert a Section 14(a) claim, the 6D Defendants were not aware of this fact because Plaintiff had chosen to lie to the Court and claim that he had standing to assert a Section 14(a) claim.  It is absurd for Plaintiff to argue waiver, since it was the Defendants who were deceived for nearly three years, and did not know that the Plaintiff did not even own 6D stock at the time of the challenged proxy statement and vote at issue.

Second, even if the Plaintiff had not falsely represented that it owned 6D stock during the period relevant to the Section 14(a) claim, under well-settled law, the minimal activity of the Defendants in this action would not result in any "waiver" of the Delaware forum selection clause. When one party breaches a forum selection clause by filing in the wrong forum (as Plaintiff did here), and the defending party takes some defensive measures in the action, the Supreme Court and other courts have held that the taking of defensive measures does not constitute waiver of the forum selection clause. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19-20 (1972) ("Unterweser had no other prudent alternative but to protect itself by filing for limitation of its liability.  Its action in so doing was a direct consequence of Zapata's failure to abide by the forum clause of the towage contract.  There is no basis on which to conclude that this purely necessary defensive action by Unterweser should preclude it from relying on the forum clause it barged for.").

Indeed, given that no discovery whatsoever has taken place in this action, and that we are at the initial, pre-answer motion to dismiss stage, it is well-settled that no waiver of the forum selection clause has occurred as a matter of law.  *See, e.g.*, *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp*., 689 F. Supp. 2d 585, 605-06 (S.D.N.Y. 2010) (where defendant had already answered and waited three years to raise the forum selection clause, and even participated in discovery, the court still enforced the forum selection clause); *United States Fidelity & Guaranty Company v. Petroleo Brasileiro S.A.*, 2001 WL 300735, at *17 (N.D. W. Va. March 27, 2001) (filing of counterclaims and participating in mediation sessions and discovery held not to act as waiver of forum selection clause;  *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 49 (1st Cir. 2014) (even where parties were engaged in discovery, significant resources had been expended, and substantive and dispositive motions had been filed, no waiver found, because "[a] motion to dismiss based on a forum-selection clause may be raised at any time in the proceedings before disposition on the merits.".)

In *Claudio-DeLeon*, the court held that while "waiting so long to enforce the clause does, at first blush, appear unfair to Appellants," any such concern was outweighed by the fact that "if Appellants wanted to avoid any seeming unfairness, they should have filed their suit in the proper

forum to begin with." *Id.*  In the *Fendi* decision, Judge Sand made the same observation:  "Burlington made the decision to bring this case in this [incorrect] Court with full knowledge of the forum-selection clause it drafted . . . ."  689 F. Supp. 2d at 606.

Having strategically made the unsound decision to deliberately file in the wrong forum, and having compounded this tactic with lies and deception on the Court as to when he purchased 6D stock in order to concoct a fake Section 14(a) claim aimed at bypassing the forum selection clause, the Plaintiff cannot now blame the victim and accuse the Defendants of delay in raising the forum selection clause.  In fact, Defendants have raised the forum selection clause at the earliest possible time, namely on this pre-answer motion.  Indeed, Plaintiff oddly cites Fed. R. Civ. P. 12(h) in support of its argument that some waiver has occurred (Doc. 103 at 6), yet Defendants timely raised this forum objection in this, its very first pre-answer motion to dismiss under the doctrine of *forum non-conveniens* and Rule 12(b).

Plaintiff cites a District Court of South Carolina case, *Milliken & Co. v. FTC*, 565 F. Supp. 511 (D. S.C. 1983), in support of his waiver argument.  *See* Doc. 103 at 7-8.  However, *Milliken & Co.* is inapposite for several reasons.  First, *Milliken & Co.* did not involve a forum selection clause. Rather, the FTC was relying on a provision in a federal statute that allowed for a change of venue for convenience of parties and witnesses.  *Id.* at 513 ("The provision in the 1980 amendment (57b-2(c)) is permissive, and no language is employed to dictate that the *venue shall* be in the District of Columbia.").  Moreover, unlike here, in *Miliken & Co.*, the defendants' delay in raising their objections to venue was not caused by the plaintiff's fraud in asserting a fake Section 14(a) claim. *See id.*

Plaintiff makes the frivolous argument that enforcement of the forum selection clause would prejudice him because the statute of limitations has run in the correct forum.  In making this argument, Plaintiff commits another Rule 11 violation because the black letter law is that "a forum selection clause is enforceable even if, as may be the case here, the applicable statute of limitations has run in the relevant forum."  *Martinez v. Bloomberg LP*, 883 F.Supp.2d 511, 521 (S.D.N.Y. 2012); *Brodsky v. Match.com LLC*, 2009 WL 3490277, at *3 (S.D.N.Y. Oct. 28, 2009) ("Furthermore, even an

expired limitations period in the selected forum would be insufficient to render the clause unenforceable.").[2] The Supreme Court and the Second Circuit have made abundantly clear that when a plaintiff chooses to file an action in the wrong forum and the statute of limitations expires in the correct forum, that is no basis for disregarding the forum selection clause, because it was the plaintiff who made the strategic choice to file in the incorrect forum. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 66 (2013) ("Such caution is not warranted…when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause. In such a case, dismissal would work no injustice on the plaintiff."); *Martinez v. Bloomberg LP*, 883 F.Supp.2d 511, 521 (S.D.N.Y. 2012) ("[T]o hold that an expired statute of limitations would vitiate an otherwise enforceable forum selection clause would create a large loophole for the party seeking to avoid enforcement of the forum selection clause who could simply postpone his cause of action until the statute of limitations has run in the chosen forum and then file his action in a more convenient forum.").

## II.   BECAUSE THE CORE OF THE ALLEGEDLY WRONGFUL CONDUCT OCCURRED PRIOR TO PLAINTIFF'S PURCHASE OF 6D SHARES, PLAINTIFF DOES NOT HAVE STANDING TO ASSERT *ANY* OF HIS CLAIMS

As set forth above, Plaintiff's Second Amended Complaint, and this action, should be dismissed, as it should have been brought in Delaware Chancery Court.  However, even if the SAC could not be dismissed on that ground, in the alternative, the entire case should still be dismissed because Plaintiff did not own 6D stock at the time that the core of the allegedly wrongful conduct occurred.

In their moving brief, the 6D Defendants argued that the bulk of the alleged wrongdoing asserted by the Plaintiff occurred *prior* to the time that Plaintiff purchased his 6D stock.  Doc. 84 at 2, 11 n. 11.  Thus, just as Plaintiff never had standing to assert his Section 14(a) claim, he also had

---

[2] Delaware courts have likewise held that where a party knowingly ignores a forum selection clause and files in an incorrect forum, the tolling statute will not act to save a claim for which the statute of limitations has expired. *Huffington v. T.C. Grp., LLC*, 2012 WL 1415930, at *9 (Del. Super. Ct. Apr. 18, 2012) (refusing to apply the tolling statute because plaintiff "tried to avoid the clear and unambiguous forum selection clause by filing in Massachusetts"); *CMS Inv. Holdings, LLC v. Castle*, 2016 WL 4411328, at *2 (Del. Ch. Aug. 19, 2016) (refusing to apply the tolling statute).

no standing to assert the remaining claims, because the core of the alleged wrongdoing occurred prior to the time he purchased his 6D stock.

As Plaintiff acknowledges in his brief, the core of the alleged wrongful conduct is that "Defendants have *long concealed* that Wey…beneficially owned nearly a majority of the Company's shares, and exercised day-to-day control over the Company." Doc. 103 at 1. Making clear that the core of this conduct occurred prior to Plaintiff's purchase of his 6D shares, Plaintiff spends dozens of paragraphs in the SAC describing Wey's alleged control – virtually all of which occurred prior to August 17, 2015. *See* Doc. 59-2 ¶¶ 184-200. Because Plaintiff did not own any shares of 6D during the time period of the core alleged wrongful conduct, the only argument that Plaintiff makes is that the Defendants' alleged concealment ***continued*** after Plaintiff bought his 6D shares. Doc. 103 at 14 n.18. However, Plaintiff ignores that under binding Second Circuit law "a proper plaintiff must have acquired his or her stock in the corporation before the core of the allegedly wrongful conduct transpired." *In re Bank of New York Derivative Litigation*, 320 F.3d 291, 298 (2d Cir. 2003) ("[I]n order to invoke derivative standing…, a plaintiff must have owned stock in the corporation throughout the course of the activities that constitute the primary basis of the complaint."). As the case law makes clear, merely alleging that the Defendants continued the core alleged wrongdoing that occurred before Plaintiff owned his shares of 6D stock cannot confer standing on Plaintiff for any claims arising out of the core alleged wrongful conduct.

## III.  PLAINTIFF'S CLAIMS MUST BE DISMISSED BECAUSE HE HAS NOT ADEQUATELY PLEAD DEMAND FUTILITY

The Court need not reach the demand futility issues, because this action should be dismissed for the reasons set forth above. In any event, Plaintiff's demand futility argument fails for several reasons.

First, Plaintiff's own Second Amended Complaint argues and alleges that the previous members of the 6D Board were at 6D during many months of the "Relevant Period," and that the Board was engaged in the wrongdoing. However, Plaintiff has not adequately alleged that the 6D Board was "interested," for the reasons explained in the 6D Defendants' opening brief. *See* Doc. 84

9

at 15-24.  Because Plaintiff's Second Amended Complaint alleges demand futility as to the 6D Board at the time of the filing of the previous pleadings, Plaintiff cannot fault the 6D Defendants for responding to those allegations.

Second, to the extent that Plaintiff is arguing now that Kang is the only director relevant to the demand futility inquiry, Plaintiff is engaged in gamesmanship.  As explained in Section II above, Plaintiff never had standing to assert the core alleged wrongdoing set forth in his pleadings.  Plaintiff's dumping into the Second Amended Complaint a number of allegations that the core wrongdoing continued ignores the fundamental point that Plaintiff never had standing to assert the earlier allegations.[3]

Third, even assuming that Plaintiff were only required to plead demand futility as to Kang and that Plaintiff could bypass the fact that he did not have standing to assert his claims, Plaintiff still has not adequately plead demand futility.  Plaintiff's allegations of demand futility with respect to Kang focus on the theory that Kang is somehow beholden to Wey.  Plaintiff alleges that Kang "had extensive contacts with Defendant Wey" (Doc. 59-2 ¶ 405), that as CEO he "depends on Defendant Wey for his primary source of income" (Doc. 59-2 ¶ 399), and that he "borrowed money from Defendant Wey's wife" (Doc. 59-2 ¶ 407).  However, these allegations do not sufficiently allege for demand futility purposes that Kang could not adequately exercise independent business judgment.[4]  As set forth in the 6D Defendants' moving brief, there are no particularized allegations that Kang made any money or gained any concrete benefit from his alleged contacts with Wey.  Thus, Plaintiff has not plead allegations sufficient to rebut the presumption that Kang is an independent and disinterested director.

---

[3] *C.f. Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 91 F.R.D. 524, 527 (S.D.N.Y. 1981) ("The effect of allowing a plaintiff, after litigation has been commenced, to construct a sufficient complaint obviously relates to the operation of the short statute of limitations applicable in respect of computable damages. The new claim based upon the July 1981 demand would not relate back to the filing of the insufficient claim in 1979. To rule otherwise would be to expunge the necessity of demand for a valid claim and set Rule 23.1 of the Federal Rules of Civil Procedure at naught.").

[4] Delaware courts have explicitly dismissed these types of allegations as insufficient to plead demand futility. *See, e.g., Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1051 (Del. 2004) ("Allegations that Stewart and the other directors moved in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' even when coupled with Stewart's 94% voting power, are insufficient, without more, to rebut the presumption of independence.").

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in the 6D Defendants' initial moving brief, this Court should dismiss this action in its entirety.

Dated: New York, New York
       October 22, 2018

                                **CATAFAGO FINI LLP**

                      By:   /s/  Tom M. Fini
                            Tom M. Fini, Esq.
                            Jacques Catafago, Esq.
                            Sarah M. Dyer, Esq.
                            The Empire State Building
                            350 Fifth Avenue, Suite 7710
                            New York, NY  10118
                            212-239-9669
                            tom@catafagofini.com
                            *Counsel for Defendants 6D Global*
                            *Technologies, Inc., Tejune Kang,*
                            *Mark Szynkowski, Terry McEwen,*
                            *Michael Bannout and Piotr A.*
                            *Chrzaszcz*