# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLAN SCOTT, DERIVATIVELY AND ON BEHALF OF 6D GLOBAL TECHNOLOGIES, INC., <br><br>      PLAINTIFF, <br><br> - AGAINST - <br><br> BENJAMIN TIANBING WEI A/K/A BENJAMIN WEY; NEW YORK GLOBAL GROUP, INC.; NYGG (ASIA) LTD., TEJUNE KANG; MARK SZYNKOWSKI; ADAM HARTUNG; DAVID S. KAUFMAN; TERRY MCEWEN; ANUBHAV SAXENA; PIOTR A. CHRZASZCZ, AND MICHAEL BANNOUT, <br><br>      DEFENDANTS, <br><br> -AND – <br><br> 6D GLOBAL TECHNOLOGIES, INC., <br><br>      NOMINAL DEFENDANT. | Case No: 15-cv-9691-AJN <br><br> **DECLARATION OF TIMOTHY BROWN IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT** |

I, Timothy Brown, declare as follows:

1.      I am the managing partner at The Brown Law Firm, P.C. ("The Brown Law Firm"), counsel for plaintiff Allan Scott ("Derivative Plaintiff")[1] in the above-captioned shareholder derivative action (the "Federal Derivative Action") and the action filed in the Delaware Court of Chancery, captioned, *Scott v. Wei, et al*., C.A. No. 2018-0665-TMR (the "Delaware Derivative Action" and, together with the Federal Derivative Action , the "Derivative Actions"), derivatively on behalf of 6D Global Technologies, Inc. ("6D Global" or the "Company"). I am duly licensed to practice before the courts of the State of New York and this Court. The testimony provided herein is based upon my personal knowledge, information, and belief, and, if called upon, I could and would competently testify thereto.

2.      I submit this Declaration in support of Derivative Plaintiff's Motion for Final Approval of Derivative Settlement (the "Motion"), which is being filed contemporaneously herewith. The purpose of this Declaration is to set forth the background and procedural history of the Derivative Actions, Derivative Plaintiff's factual investigation and prosecution of the claims, the negotiations that led to the Settlement, and the results achieved. This Declaration further demonstrates that: (i) the Settlement is fair, reasonable, and adequate, and in the best interest of 6D Global; and (ii) the agreed-to amount of attorneys' fees and expenses to be paid to Derivative Plaintiff's Counsel is fair and reasonable.

3.      Attached hereto as Exhibit A is a true and correct copy of The Brown Law Firm's resume describing the background and experience of the lawyers at The Brown Law Firm.

---

[1] All capitalized terms herein, unless otherwise stated, have the same definitions as set forth in the Stipulation, which was executed on October 7, 2019 and filed with the Court on October 8, 2019 as Exhibit 1 to the Declaration of Timothy Brown in support of Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Derivative Settlement ("Stipulation" or "Stip").

4.     Attached hereto as Exhibit B is a true and correct copy of the Order and Final Judgment dated October 5, 2017 in *In re Lihua International, Inc. Shareholder Derivative Action*, No. 1:14-cv-03543 (S.D.N.Y.) (the "*Lihua* Action"). The final approval order in the *Lihua* Action (the "*Lihua* Final Approval Order") "approves the Settlement set forth in the [*Lihua*] Stipulation" and "finds that the Settlement is in all respects fair, just, reasonable, and adequate to, and in the best interests of Lihua, Lihua's shareholders, and Plaintiffs[.]" *Lihua* Final Approval Order, p.1." Exhibit B also includes a true and correct copy of the Stipulation of Settlement dated March 22, 2017 in the *Lihua* Action (the "*Lihua* Stipulation"), which consisted of a $1.2 million monetary payment from the company's insurers to be used to fund part of the settlement of a related securities class action. *See Lihua* Stipulation §IV, B., ¶1-2.

5.     Attached hereto as Exhibit C is a true and correct copy of the Order and Final Judgment dated January 28, 2014 in *Cook v. McCullough*, No. 1:11-cv-09119 (N.D. Ill.) (the "*Cook* Action"). The final approval order in the *Cook* Action (the "*Cook* Final Approval Order") "approves the Settlement set forth in the [*Cook*] Stipulation and finds that the Settlement is, in all respects, fair, reasonable, and adequate." *Cook* Final Approval Order, p.1. Exhibit C also includes a true and correct copy of the Stipulation of Settlement dated October 25, 2013 in the *Cook* Action (the "*Cook* Stipulation"), which consisted of a $20 million monetary payment from the company's insurers, half of which was to be used to fund the settlement or resolution of a related securities class action. *See Cook* Stipulation §VI., ¶2.2.

6.     Attached hereto as Exhibit D is a true and correct copy of the Order Approving Derivative Settlement and Order of Dismissal with Prejudice dated November 17, 2016 in *In re Lumber Liquidators Holdings, Inc. Securities Litigation*, No. 4:13-cv-00157 (E.D. Va.) (the "*Lumber* Action"). The final approval order in the *Lumber* Action (the "*Lumber* Final Approval

Order") fully approved the settlement and found "the terms of the Stipulation and Settlement [in the *Lumber* Action] [to be] fair, reasonable and adequate as to each of the Settling Parties." *Lumber* Final Approval Order, ¶5. Exhibit D also includes a true and correct copy of the Stipulation of Settlement dated July 18, 2016 in the *Lumber* Action (the "*Lumber* Stipulation"), which provided for an insurer payment of $26 million for the resolution of a related securities class action. *Lumber* Stipulation §V., ¶2.1.

## I.   **OVERVIEW**

7.     After much effort on behalf of 6D Global, and substantial arm's-length negotiations, facilitated by Magistrate Judge Sarah Netburn ("Judge Netburn"), between experienced and informed legal counsel, the Settling Parties reached an agreement that settles the Derivative Actions (the "Settlement") as set forth in the Stipulation. Derivative Plaintiff brought the Derivative Actions on behalf of 6D Global against the Individual Defendants, Benjamin Tianbing Wei a/k/a Benjamin Wey ("Wey"), New York Global Group, Inc. ("NYGG"), and NYGG (Asia), Ltd. ("NYGG-Asia"), asserting, *inter alia*, breach of fiduciary duty, unjust enrichment, and violations of Section 14 of the Securities and Exchange Act of 1934 ("Exchange Act"). *See* Stip., A-B.[2]

8.     The Settlement provides for the payment of $240,000 by the Settling Defendants' insurer into the Escrow Account for the benefit of 6D Global's shareholders in order to fund part of the settlement of the putative class action captioned *Castillo, IV v. 6D Global Technologies,*

---

[2] The "Individual Defendants" include defendants Tejune Kang, Mark Szynkowski, Adam Hartung, David S. Kaufman, Terry McEwen, Anubhav Saxena, Piotr A.Chrzaszcz, and Michael Bannout (together with 6D Global, the "Settling Defendants"). Defendants Wey, NYGG, and NYGG-Asia are not parties to the Settlement. Defendants Wey, NYGG and NYGG-Asia together with the Settling Defendants are referred to collectively as the "Defendants."

*Inc., et al.*, No. 1:15-CV-08061-AJN (the "Class Action"), also pending in this Court. *See* Stip., ¶2.5. The Settling Defendants expressly acknowledge that the Settlement confers a substantial benefit upon Current 6D Global Shareholders given that Derivative Plaintiff's efforts in the filing, prosecution, and settlement of the Derivative Actions "enabled the settlement of the Class Action." *Id.* Moreover, "[a]s 6D Global's Insurer will pay $240,000 for the settlement of the Derivative Action, (i) 6D Global does not have to exhaust its own funds to resolve the Class Action, and (ii) Current 6D Global's Shareholders will directly benefit by payment of the Gross Settlement Amount." *Id.*

9.     On October 1, 2020, this Court entered an order that preliminary approved the Settlement ("Preliminary Approval Order"). Dkt. No. 129. Pursuant to the Preliminary Approval Order, the Notice was provided to Current 6D Global Shareholders as part of the notice of the settlement of the Class Action. *Id*., ¶5; *see* Class Action, Dkt. No. 227, Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ¶¶12, 15-16. Specifically, by October 16, 2020, Class Action Lead Counsel (i) emailed the Summary Notice to Current 6D Global Shareholders for whom the Claims Administrator was able to obtain email addresses or, if no email address could be obtained, caused the Postcard Notice to be mailed, by first class mail, postage prepaid, to Current 6D Global Shareholders that could be reasonably identified through the Claims Administrator; and (ii) posted the preliminary approval order in the Class Action, the Class Action Stipulation and its exhibits, and a copy of the Long Notice and Proof of Claim and Release Form to the Claim Administrator's website. Additionally, on October 23, 2020, Class Action Lead Counsel published the Summary Notice electronically on *GlobeNewswire*. The Notice contained a description of the Derivative Actions and the Settlement, the claims that will be released, the agreed-to Fee and Expense Award to be paid to Derivative Plaintiff's Counsel by

the Insurer, and the service award to be paid to Derivative Plaintiff out of the Fee and Expense

Award. The Notice disclosed the time and location of the Settlement Hearing and advised Current

6D Global Shareholders of the procedures for objecting to the proposed Settlement, the Fee and

Expense Award, and the Award to Derivative Plaintiff. To date, Derivative Plaintiff's Counsel is

unaware of any objections. Derivative Plaintiff now seeks final approval of the Settlement.

10.     In light of the substantial benefit that the Settlement confers upon 6D Global and

Current 6D Global Shareholders, Derivative Plaintiff and Derivative Plaintiff's Counsel also seek

final approval of the fair and reasonable payment of Derivative Plaintiff's Counsel's attorneys'

fees and reimbursement of expenses in the agreed-to amount of $80,000 (the "Fee and Expense

Award"), which shall include an Award to Derivative Plaintiff of up to $1,500 for Derivative

Plaintiff's efforts in the Derivative Actions. *See* Stip., ¶6.

11.     Derivative Plaintiff's Counsel's recommendation that the Court approve the

Settlement is based upon extensive experience in stockholder representative litigation, a robust

and independent investigation, and rigorous evaluation of the strengths and limitations of the

claims weighed against the expense, delay, and risk of continued litigation, including the

likelihood of Derivative Plaintiff recovering anything for 6D Global and its shareholders. *See* Stip.,

F. For these reasons, as detailed more fully herein, (and in the Motion), final approval of the

Settlement is warranted.

## II.     BACKGROUND OF THE DERIVATIVE ACTIONS

### A.     Relevant Procedural Overview

#### 1.     Federal Derivative Action

12.     Derivative Plaintiff commenced the Federal Derivative Action on December 11,

2015, by filing a verified shareholder derivative complaint on behalf of 6D Global against certain

of 6D Global's then current and former officers and directors (the Individual Defendants), and certain third parties, Defendants Wey, NYGG, and NYGG-Asia. *See* Stip., A. Before Derivative Plaintiff initiated the Federal Derivative Action, on October 13, 2015, the Class Action was filed in this Court against 6D Global and others alleging violations of federal securities laws.

13.     On January 4, 2016, the Class Action and the Federal Derivative Action were deemed "related" cases. On February 16, 2016, given the relatedness of the actions, Derivative Plaintiff and the Settling Defendants stipulated to stay the Federal Derivative Action, pending the outcome of an anticipated motion to dismiss in the Class Action. Dkt. No. 6.

14.     On July 5, 2016, Derivative Plaintiff filed a verified shareholder derivative amended complaint. Dkt. No. 17.

15.     In March 2017, Judge Robert Sweet granted defendants' motion to dismiss a second amended complaint filed in the Class Action, which plaintiffs in the Class Action timely appealed. *See* Class Action, Dkt. Nos. 121-123. Derivative Plaintiff sought the Court's leave to file a verified shareholder second amended complaint, in July 2018. The proposed second amended complaint was attached to motion papers filed with the Court on July 9, 2018. *See* Dkt. Nos. 52-54.

16.     In August 2018, on appeal, the Second Circuit vacated and remanded this Court's order granting defendants' motion to dismiss the Class Action. *See* Class Action, Dkt. No. 125. Also in August 2018, the Settling Defendants filed their respective motions to dismiss and opposition to Derivative Plaintiff's motion for leave to file the verified shareholder second amended complaint. *See* Dkt. Nos. 78-84. Defendants Wey and NYGG did the same in September 2018. Dkt. Nos. 89-91. The motions to dismiss the Federal Derivative Action argued, *inter alia*, that Derivative Plaintiff did not sufficiently plead demand futility or actionable claims and that the Federal Derivative Action should be dismissed due to a forum selection clause in 6D Global's

Bylaws that selects the Delaware Court of Chancery as the forum for shareholder derivative actions. *See* Dkt. Nos. 80, 84, 90.

17.     On October 24, 2018, the Court held a hearing in the Federal Derivative Actions. However, instead of hearing oral argument on the fully briefed motions to dismiss and for leave to amend that had been filed in the Federal Derivative Action, the Court ordered the parties to report to Judge Netburn for the purpose of negotiating a settlement. Stip., A. Thereafter, the parties to the Federal Derivative Action briefed the motion for leave to file an amended complaint and the motions to dismiss. Dkt. Nos. 101-105, 108-111. Simultaneously, the parties continued to report to Judge Netburn for purposes of potentially resolving the Federal Derivative Action *See* Dkt. No. 116.

18.     On April 8, 2019, the Federal Derivative Action was reassigned to Judge Alison J. Nathan. *See* Dkt. No. 115. On May 21, 2019, the Court entered an order administratively denying Defendants' motions to dismiss in light of the parties having negotiated a settlement. Dkt. No. 118.

19.     On October 8, 2019, Derivative Plaintiff filed an unopposed motion for preliminary approval of proposed Derivative Settlement. Dkt. Nos. 124-26. On October 1, 2020, the Court entered the Preliminary Approval Order and scheduled the Settlement Hearing for February 23, 2021. *See* Dkt. No. 129, Preliminary Approval Order, ¶4.

           2.     <u>Delaware Derivative Action</u>

20.     On September 7, 2018, without conceding that the only forum for the derivative claims to be litigated is the Delaware Court of Chancery, Derivative Plaintiff filed a second derivative action on behalf of 6D Global in the Delaware Court of Chancery against the Defendants. Stip., B.

21.     In November 2018, the Settling Defendants filed motions to dismiss or stay the Delaware Derivative Action, arguing that proceedings in the Delaware Derivative Action should be stayed and that only proceedings in the Federal Derivative Action should proceed. *See* Delaware Derivative Action, Dkt. Nos. 82310591-82310593, 82344086-82344089. The Settling Defendants did not file briefs in support of those motions. *Id*. In December 2018, the Settling Defendants filed a motion to stay the Delaware Derivative Action given pending negotiations of a settlement of the Derivative Actions, which motion was opposed by Derivative Plaintiff. Delaware Derivative Action, Dkt. Nos. 82445408-82445410, 82486176-82486180. On December 28, 2018, the Delaware Court of Chancery stayed proceedings in the Delaware Derivative Action to allow the parties to work on the settlement documents. *See* Delaware Derivative Action, Dkt. No. 82661314.

**B.     Settlement Negotiations and the Settlement**

22.     In March 2017, the Settling Parties attended a mediation session with Jed Melnick of JAMS. The mediation did not result in the Settling Parties signing a settlement agreement. The Settling Parties subsequently negotiated terms of a settlement that included 6D Global's agreement to certain corporate governance modifications, but the Court entered an order on May 17, 2018 denying final approval of that settlement agreement. *See* Dkt. No. 47.

23.     After the Second Circuit's reversal of the order granting the motion to dismiss in the Class Action, the Settling Parties negotiated new terms of a settlement. Stip., D. The Settling Parties engaged in hard-fought and extensive negotiations over the course of more than a year, including participating in a settlement conference before Judge Netburn on October 9, 2018. Their arm's-length negotiations eventually resulted in the Settling Parties agreeing to a Settlement that confers substantial benefit upon Current 6D Global Shareholders in the form of monetary relief that enables the Company to fund the settlement of the Class Action.

24.     Subject to the terms of the Stipulation, the Settling Defendants' insurer shall pay the gross settlement sum of $640,000 into the Escrow Account (including $18,633.13 from the escrow held by Catafago Fini LLP). Stip., ¶2.1. Out of the $640,000 Gross Settlement Amount, $240,000 is being paid in consideration for the settlement of the Derivative Actions, and $400,000 is being paid in consideration for the settlement of the Class Action. Stip., ¶2.3. The Settling Parties acknowledge and agree that the settlement of the Class Action, and thus the settlement of the Derivative Actions—given the fact that the latter settlement enabled the settlement of the Class Action, confer substantial benefits upon Current 6D Global Shareholders. Stip., ¶2.5. Because 6D Global's Insurer will pay $240,000 out of the $640,000 for the settlement of the Derivative Actions, (1) the Company does not have to exhaust its own funds to resolve the Class Action, and (2) Current 6D Global Shareholders will be directly benefitted by payment of the Gross Settlement Amount. *See* Stip., ¶2.5.

25.     The Stipulation memorializes the agreement between the Settling Parties to release derivative claims against the Individual Defendants and other Released Parties with prejudice. Stip., D. The Settling Parties negotiated at arm's length the attorneys' fees and reimbursement of expenses to be paid to Derivative Plaintiff's Counsel in recognition of the substantial benefits that will be conferred upon the Company as a direct result of the prosecution and settlement of the Derivative Actions. *See* Stip., ¶6.1. Accordingly, the Settling Defendants agreed to the payment of the Fee and Expense Award to Derivative Plaintiff's Counsel in the amount of $80,000, subject to approval by the Court. *Id*.

**C.     Preliminary Approval Granted and Notice Issued to Current 6D Global Shareholders**

26.     On October 1, 2020, this Court entered the Preliminary Approval Order, *inter alia*, preliminarily approving the Settlement and approving the form and content of the notice of the

Settlement to Current 6D Global Shareholders substantially in the form of Exhibits A-1, A-3, and A-4 attached to the Class Action Stipulation, which is comprised of the Notice of Pendency and Proposed Partial Settlement of Class Action and Derivative Actions ("Long Notice"), the Summary Notice of Pendency and Proposed Partial Settlement of Class Action and Derivative Actions ("Summary Notice"), and the Postcard Notice. Class Action, Dkt. Nos. 205, 205-2, 205-4-5. The Court found that the form and content of the notice of the Settlement meet the requirements of Fed R. Civ. P. 23.1(c) and due process and such notice constitutes valid, due, reasonable, and sufficient notice of all matters relating to the Settlement. Preliminary Approval Order, ¶5.

27.     In accordance therewith, on or before October 16, 2020, Class Action Lead Counsel provided notice to Current 6D Global Shareholders by either (a) emailing the Summary Notice to Current 6D Global Shareholders for whom the Claims Administrator was able to obtain email addresses, substantially in the form annexed as Exhibit A-3 to the Class Action Stipulation; or (b) causing the Postcard Notice substantially in the form annexed as Exhibit A-4 to the Class Action Stipulation, if no email address was able to be obtained, to be mailed, by first class mail, postage prepaid, to Current 6D Global Shareholders who were identified with reasonable effort by Class Action Lead Counsel, through the Claims Administrator. Class Action, Dkt. Nos. 205, 205-4-5. In further accord with the Preliminary Approval Order, on October 12, 2020, Class Action Lead Counsel, through the Claims Administrator, caused the Stipulation and its exhibits, the preliminary approval order in the Class Action, and a copy of the Notice and Proof of Claim and Release Form to be posted on the Claim Administrator's website. Also pursuant to the Preliminary Approval Order, on October 23, 2020, the Summary Notice was published electronically on *GlobeNewswire*.

28.     To date, Derivative Plaintiff's Counsel is not aware of any shareholder that has objected to the Settlement. The deadline for shareholder objections is February 2, 2021. *See* Preliminary Approval Order, ¶8.

## III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND MERITS FINAL APPROVAL

### A.     The Settlement is Entitled to A Strong Presumption of Fairness Because It Resulted from Arm's Length Negotiations

29.     Derivative Plaintiff's Counsel's recommendation to approve the Settlement here is entitled to considerable weight. First, the Settlement is the product of more than a years' worth of hard-fought, arm's-length negotiations, that were ultimately facilitated by Judge Netburn. Second, the Settling Parties were represented by counsel experienced in complex shareholder litigation. Third, Derivative Plaintiff's Counsel's position during the negotiations was informed by careful analysis of applicable law, thorough examination of the facts, and consideration of the uncertainty and risks associated with protracted litigation of the Derivative Actions, including the impact of the Settling Defendants' limited resources on any potential recovery for Derivative Plaintiff on behalf of 6D Global. *See* Stip., F.

30.     Notably, the Settlement preserves for 6D Global the right to prosecute the claims made in the Derivative Actions directly against Wey, NYGG and NYGG-Asia and preserves the right for Current 6D Global Shareholders to file a derivative action in the future against Wey, NYGG and NYGG-Asia, among other third parties. *See* Stip., ¶¶1.29, 1.30. Moreover, the Settlement is not contingent on the Court's allowance or disallowance of the Fee and Expense Application for the Fee and Expense Award and Derivative Plaintiff's Counsel's application is to be considered separately from the Court's consideration of the fairness, reasonableness, and

adequacy of the Settlement. *See* Stip., ¶6.3. Thus, the proposed Settlement is entitled to a strong presumption of fairness and should be approved in its entirety.

### B.    The Settlement is Fair, Reasonable, and Adequate

31.    The Settlement here is further supported by application of the relevant legal factors, as detailed in Derivative Plaintiff's accompanying memorandum of law in support of the Motion. Under the applicable standards, the Settlement is thus fair, reasonable, and adequate and, consequently, warrants final approval.

1.    <u>Settlement Appropriately Balances Substantial Benefits Secured for Current 6D Global Shareholders Against the Risks of Establishing Liability & Damages</u>

32.    While Derivative Plaintiff strongly believes that the Derivative Actions have merit, the fact is the claims against many of the Defendants rest on circumstantial evidence, and the claims against the former outside directors, in particular, could be construed as "*Caremark*" claims, or failures to conduct proper oversight, which is "the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996) ("*Caremark*").

33.    Even assuming liability could be established, Derivative Plaintiff would face substantial difficulties in attempting to prove that 6D Global suffered cognizable damages caused by the Individual Defendants given that competing expert testimony could rest on many assumptions and premises, any one of which could be rejected by a trier of fact as speculative or unreliable. Thus, Defendants' experts might be able to persuade a trier of fact that 6D Global's losses were caused by factors other than the alleged wrongdoing or were de minimis.

34.    Additionally, the monetary damages allegedly suffered by 6D Global as a result of the Defendants' misconduct would likely be difficult to recover at trial. Moreover, even if

Derivative Plaintiff surpassed each of these hurdles, he would likely face challenges collecting on a judgment due to Settling Defendants' limited resources.

35.     The initiation and prosecution of the Derivative Actions, and the ensuing Settlement, provides immediate and long-lasting benefits to 6D Global and Current 6D Global Shareholders in the form of a monetary payment made by the Insurer to settle the Class Action. Given the risks of recovery should this action continue, including the Settling Defendants' limited resources, the Settlement is an excellent result for 6D Global and Current 6D Global Shareholders, and that the investment of additional time and expense in further litigation would not necessarily improve upon and may prove to be pyrrhic.

2.     <u>Risks, Costs, & Delays of Continued Litigation Weigh in Favor of the Settlement</u>

36.     One important purpose of settlement is to avoid the inherent uncertainty in proceeding with the litigation. Here, the likely complexity, expense, and duration of further litigation, and the significant risk that it would produce no benefit at all for 6D Global, strongly support the final approval of the Settlement.

37.     Derivative Plaintiff faced the formidable task of prosecuting the Derivative Actions in various jurisdictions, conducting costly, time-consuming discovery, potentially in multiple countries, and then establishing liability and damages at trial. Specifically, the Derivative Actions involve numerous individual defendants, complex facts concerning NYGG and NYGG-Asia's business conducted in People's Republic of China, and would potentially require the deposition and trial testimony of non-party fact and expert witnesses in China.

38.     Absent the Settlement, a decision would need to be made on Defendants' three pending motions to dismiss filed on August 23, 2018, August 30, 2018, and September 14, 2018. Dkt. Nos. 78-80, 82-84, 89-91. Among other contentions, Defendants argued in their respective

motions that the Federal Derivative Action should be dismissed pursuant to the doctrine of *forum non conveniens* based upon a forum selection clause in the Company's corporate bylaws, contested standing to bring the claim for violations of Section 14(a) of the Exchange Act, and asserted that Derivative Plaintiff failed to make a demand or sufficiently plead demand futility. *See id*. Furthermore, the former outside directors argued that Derivative Plaintiff failed to satisfy the heightened pleading requirements pursuant to Federal Rules of Civil Procedure 9(b), which apply to claims that sound in fraud, and categorized allegations in Derivative Plaintiff's amended complaint as "*Caremark*" claims seeking recovery for the Defendants' failure to exercise oversight over the Company's business, financial condition, and risk management. *See* Dkt. No.80 at 7-13.

39.     Although Derivative Plaintiff believes he would overcome Defendants' motions, there is no guarantee that the Court would hold, *inter alia*, that a majority of 6D Global's directors were incapable of considering a demand with the requisite level of disinterestedness. Establishing the level of conscious disregard and bad faith required to succeed on a *Caremark* claim against directors of a corporation, "is 'possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *See In re Yahoo! Inc. S'holder Derivative Litig*., 153 F. Supp. 3d 1107, 1121 (N.D. Cal. 2015) (citing *Caremark*, 698 A.2d at 967).  Given the applicable legal standards, the complexity of the evidence, and the vagaries of litigation and trial, the odds against successfully making the required showing are high.

40.     The discovery required to bring this case to trial would be exceedingly costly, complex, and time-consuming, as it would likely encompass millions of pages of internal complex corporate documents, depositions of myriad fact witnesses, and preparation of expert reports and depositions of experts concerning multiple subjects. Experts would need to be prepared and expert discovery conducted. In addition, a myriad of complex issues of law and fact would need to be

mastered in trying the case and pursuing it through appeal—all without any guarantee of materially improving on the Settlement's recovery.

41.     The Settlement eliminates these risks, ensures that 6D Global and the Current 6D Global Shareholders obtain immediate and substantial benefits, and secures the benefit of freeing Company resources that would otherwise be spent on litigating the Derivative Actions. Thus, the prospect of continued protracted, expensive, and uncertain litigation strongly supports approval of the Settlement.

### 3.     The Stage of the Proceedings Weigh in Favor of Settlement

42.     The derivative litigation has been pending for over five years, and the Settlement was negotiated after Derivative Plaintiff's Counsel had, *inter alia*: (1) inspected, analyzed, and reviewed 6D Global's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) drafted and filed initial shareholder derivative complaints in state and federal court; (3) researched the applicable law with respect to the claims asserted in the Derivative Actions and the potential defenses thereto; (4) reviewed and analyzed the relevant pleadings in the Class Action, the action filed by the SEC against certain of the Defendants, captioned *United States Securities and Exchange Commission v. Benjamin Wey, et al.*, CA No. 15-7116-PKC (S.D.N.Y. September 10, 2015), and the Department of Justice action against two individuals, including one of the Defendants, captioned *USA v. Benjamin Wey, et al.*, 15-CR-00611-AJN (S.D.N.Y. September 8, 2015); (5) drafted and filed the first and second amended shareholder derivative complaints in the Federal Derivative Action; (6) researched and drafted briefs in support of the motion for leave to file the second amended shareholder derivative complaint and in opposition to three motions to dismiss in the Federal Derivative Action; and (7)

engaged in extensive settlement communications with Defendants' counsel, facilitated by Judge Netburn.

43.     Accordingly, Derivative Plaintiff and Derivative Plaintiff's Counsel's determination that the Settlement is fair, reasonable, and adequate, and in 6D Global's best interests, is exceedingly well-informed.

## IV.     THE NEGOTIATED FEE AND EXPENSE AWARD IS FAIR AND REASONABLE AND SHOULD ALSO BE APPROVED

44.     Over five years after commencing the derivative litigation, Derivative Plaintiff's Counsel's efforts on behalf of 6D Global have conferred a substantial benefit upon 6D Global and its shareholders. Counsel who secure a substantial benefit, as is the case here, are entitled to an award of reasonable attorneys' fees and expenses commensurate with the value of the benefit, the risks undertaken in prosecuting the action, and the amount of legal work reasonably performed.

45.     Unlike a class action, the Court is not being called upon to fashion a fee and expense award; rather it is being asked to determine whether the Fee and Expense Award of $80,000 that was agreed to by the Settling Parties falls within the range of reasonableness. Stip., ¶6.1. The United States Supreme Court has endorsed the determination of attorneys' fees through agreement as the ideal to which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally . . . litigants will settle the amount of a fee."). Thus, the Settling Parties' conclusion that the agreed-to Fee and Expense Award is fair and reasonable is entitled to substantial deference, and application of the relevant legal factors discussed in Plaintiff's accompanying memorandum confirm its reasonableness and support its approval.

### A.     The Benefits Recovered in Relation to the Settlement

46.     The Settlement here merits an award of attorneys' fees because it confers a substantial benefit upon the Company and Current 6D Global Shareholders. The Settlement

achieved by Derivative Plaintiff's Counsel provides for a $240,000 payment by 6D Global's Insurer to fund in part the settlement of the related Class Action, ensuring that the Company will not have to exhaust its own limited cash reserve. Significantly, the $240,000 in monetary benefits will go directly to Current 6D Global Shareholders and will allow 6D Global to resolve the Class Action promptly and efficiently. Indeed, the Settling Parties acknowledged and agreed that the Settlement "confers substantial benefits upon Current 6D Global's Shareholders" and "enabled the settlement of the Class Action." Stip., ¶2.5.

47.    The value of the substantial benefits conferred on Current 6D Global Shareholders by the Settlement has been recognized by other courts that awarded attorneys' fees and approved settlements comprising a financial payment to the company that is a defendant in a related securities class action and in which the money is used to settle the class action. *See, e.g*., Exhibits B-D submitted herewith, discussed *supra* at ¶¶4-6.

**B.    The Contingent Nature of the Fee and Substantial Litigation Risk**

48.    Despite the significant financial risk, Derivative Plaintiff's Counsel undertook the Derivative Actions on an entirely contingent basis and obtained a settlement that confers a substantial benefit upon the Company and Current 6D Global Shareholders. As discussed, Derivative Plaintiff's Counsel faced tremendous litigation risks in pursuing the Derivative Actions. These risks and the benefits secured for the Company and Current 6D Global Shareholders fully justify the proposed award.

**C.    The Magnitude and Complexity of the Action**

49.    Shareholder derivative actions are notoriously complex and involve much uncertainty. As discussed *supra*, Derivative Plaintiff faced many difficult hurdles if litigation were to continue and Derivative Plaintiff's Counsel would be required to expend significant time and

effort to master an enormous body of complex facts and law to effectively pursue and successfully resolve the claims. The Settlement provides a guaranteed benefit to 6D Global. The complexity and magnitude of this litigation, thus, support the Fee and Expense Award.

### D.    The Quality of Representation and Public Policy Considerations

50.    Here, Derivative Plaintiff's Counsel are seasoned and skilled practitioners in this highly specialized area of the law. *See* Exhibit A hereto (The Brown Law Firm Resume). Further, Settling Defendants are represented by Manatt, Phelps & Phillips, LLP, a premier defense firm, and other experienced and capable counsel from well-credentialed firms, who were formidable adversaries and tough negotiators in this case.

51.    Derivative actions play a critical role in protecting corporate interests. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (a derivative action can "protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers") (internal quotation marks omitted); *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966) ("derivative suits have played a rather important role in protecting shareholders of corporations from the designing schemes and wiles of insiders"). Awarding attorneys' fees in these complex actions encourages skilled counsel to protect corporations and investors. *See In re AOL Time Warner S'holder Derivative Litig.*, 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010) (fee award should incentivize "future counsel to devise remedies as an alternative to money, strengthening corporate America in the long run through innovation and prophylaxis").

### E.    Counsel's Modest Fee and Expense Award Is Supported by Their Reasonable Time and Expense Devoted to This Litigation

52.    The Brown Law Firm, as Derivative Plaintiff's Counsel, actively engaged in the prosecution of the Derivative Actions for years leading up to the Settlement. A lodestar cross-

check analysis and review of Derivative Plaintiff's Counsel's expense records confirms that the Fee and Expense Award is fair and reasonable.

53.     The Brown Law Firm's time report was compiled from contemporaneous records made by each biller and then compiled in an electronic database maintained by the firm. The hours totals reported here reflect reductions that I made in the exercise of billing judgment. I supervised the work of and/or worked directly with the lawyers and clerks who billed time to this matter. Having reviewed their time records, I can aver that the hours reported and the work they reflect were reasonably necessary to the successful institution, prosecution, and resolution of this litigation.

54.     Derivative Plaintiff's Counsel devoted over *887* hours on this litigation, which represents a ***$596,585.00*** lodestar at Derivative Plaintiff's Counsel's customary rates, and which is substantially higher than the agreed-to Fee and Expense Award. Thus, the Fee and Expense Award results in a "negative" lodestar multiplier of *0.13* before deducting expenses and the Award to Derivative Plaintiff. This multiplier is far below the fees awarded in other similar settlements of derivative cases, especially given the substantial benefits achieved and the complexity of the issues presented.[3]

---

[3] *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 123 (2d Cir. 2005)(affirming multiplier of 3.5); *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 283 (S.D.N.Y. 2015) (awarding a lodestar multiplier of 1.35); *In re Abercrombie & Fitch Co. Shareholders Derivative Litig.*, 886 A.2d 1271, 1273 (Del. 2005) (affirming a 2.39 lodestar multiplier); *Velez v. Novartis Pharms. Corp.*, 2010 WL 4877852, at *23 (S.D.N.Y. Nov. 30, 2010) (collecting cases approving lodestar multipliers ranging from 2.09 to 5.5); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) (awarding multiplier of 4); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 and noting multipliers between 3 and 4.5 are common).

55.     The schedule was prepared from contemporaneous, daily time records prepared and maintained by the firm. The hourly rates shown below are the usual and customary rates charged for each individual in all of the firm's cases. These rates are based on market rates for lawyers of comparable skill and experience, and they have been approved by federal and state courts throughout the nation. The chart below summarizes the hours, rate, and lodestar of each attorney and clerk at The Brown Law Firm who worked on this matter.

| ATTORNEY/POSITION* | | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|---|
| Timothy Brown | P | 339.2 | $825 | $279,840 |
| Alex McBride | C | 204.7 | $700 | $143,290 |
| Saadia Hashmi | A | 60.3 | $500 | $30,150 |
| Robert Kaplan | A | 62.2 | $550 | $34,210 |
| Matthew Lee | A | 180.8 | $525 | $94,920 |
| Ning Zhu | LC | 40.5 | $350 | $14,175 |
| *Totals* | | *887.7* | | *$596,585* |

*(P) Partner,
(C) Counsel,
(A) Associate,
(LC) Law Clerk

56.     The Brown Law Firm's compensation for services rendered in this case was wholly contingent on the success of the Derivative Actions for Derivative Plaintiff. None of the attorneys' fees and expenses submitted to this Court has been paid from any source or has been the subject of any prior request or prior award in any litigation or other proceeding.

57.     Derivative Plaintiff's Counsel incurred a total of **$6,576.72** in unreimbursed expenses in connection with the prosecution of this litigation. They are broken down in the chart below.

| DISBURSEMENT | TOTAL |
|---|---|
| Transportation, Meals | $406.86 |
| Postage | $74.42 |
| Mediation Fees | $2,575.74 |
| Court Fees | $2,257.25 |
| Service of Process | $1,103.16 |
| Online Research and Docket Fees | $159.29 |
| *TOTAL* | *$6,576.72* |

58.     The expenses incurred are reflected in the books and records contemporaneously prepared by the firm. These books and records are prepared from expense vouchers, invoices, and other billing records, and are an accurate record of the expenses incurred. As noted, I have reviewed the expenses for which reimbursement is sought and confirmed that they were reasonably necessary for the effective and efficient prosecution and resolution of the litigation and reasonable in amount. The expenses are all of a type that would normally be charged to a fee-paying client in the private legal marketplace.

59.     The Brown Law Firm's compensation for services rendered and out-of-pocket expenses incurred in this case was and is entirely contingent on the success of the Derivative Action in providing 6D Global a substantial benefit, and on the Court's approval of the fee and expense application. A review of the tasks and the hours devoted to the Derivative Actions

demonstrates that the work done was reasonably necessary and substantially contributed to Derivative Plaintiff's Counsel's ability to secure the benefit conferred. There is no question that the proposed Settlement is the direct result of Derivative Plaintiff's Counsel's vigorous efforts and provides substantial benefits to 6D Global. Thus, the Fee and Expense Award is reasonable.

## V.   THE AWARD TO DERIVATIVE PLAINTIFF IS REASONABLE AND SHOULD BE APPROVED

60.     It is well-settled that service awards may be given to compensate named plaintiffs for efforts expended "for the benefit of the lawsuit." *Dornberger v. Metro. Life Ins. Co*., 203 F.R.D. 118, 124 (S.D.N.Y. 2001) (internal quotations marks omitted). Derivative Plaintiff has devoted his time and energy to this uncertain litigation, standing up for the Company and Current 6D Global Shareholders. The requested Award to Derivative Plaintiff of $1,500 is modest and will be paid out of the Fee and Expense Award and should therefore, be approved. *See* Stip., ¶6.1; *In re Presidential Life Sec.*, 857 F. Supp. 331, 337 (S.D.N.Y. 1994) (incentive awards "need not be subjected to intense scrutiny inasmuch as these funds will come out of the attorney's fees").

## VI.   CONCLUSION

61.     The proposed Settlement is a fair compromise of the issues in dispute and provides substantial benefits to 6D Global and its shareholders, especially when balanced against the uncertainty and risks of continued litigation. The Settlement should thus be approved in its entirety.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of January, 2021, at Oyster Bay, New York.

*/s/ Timothy Brown*
TIMOTHY BROWN