USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/12/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Allan Scott,

                        Plaintiff,

                        –v–

Benjamin Wei, *et al.*,

                        Defendants.

15-cv-9691 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

        On October 1, 2020, the Court granted preliminary approval of the proposed settlement agreement between Derivative Plaintiff Allan Scott, the Nominal Defendant 6D Global Technologies, and the Defendants Tejune Kang, Mark Szynkowski, Terry McEwen, Adam Hartung, David S. Kaufman, Anubhav Saxena, Piotr A. Chrzaszcz, and Michael Bannout. Dkt. No. 129. A hearing was held on February 23, 2021, during which time the Court heard Plaintiff's Motion for Final Approval of the Derivative Settlement. Having considered the written submissions of the parties, having held a final fairness hearing, and having considered the arguments offered at that hearing, it is hereby ordered that the Derivative Settlement is finally approved.

## I.    THE SETTLEMENT IS FINALLY APPROVED

        The Court presumes the parties' familiarity with this matter. The procedural history was recounted at length in the briefing papers in support of preliminary and final settlement approval, *see* Dkt. No. 125 at 4–7, Dkt. No. 132 at 4–9, and it was discussed at greater length at the February 23, 2021 fairness hearing.

Federal Rule of Civil Procedure 23.1 provides that "[a] derivative action may be settled . . . only with the court's approval." Fed. R. Civ. P. 23.1(c). As in the class action settlement approval context, "[t]he central question . . . is whether the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982). In the context of a derivative action settled on behalf of the class of all shareholders, the Court must consider whether the settlement was procedurally fair—*i.e.*, whether it was the result of arm's-length negotiations and whether Plaintiffs' counsel adequately and effectively represented the interests of the shareholder class—and whether the substantive terms of the settlement "are in the interests of the company and its shareholders relative to the likely rewards of litigation." *See In re Pfizer Inc. S'holder Derivative Litig.,* 780 F. Supp. 2d 336, 340 (S.D.N.Y.2011) (internal quotation marks and citations omitted).

A. **The Settlement Is Procedurally Fair**

The Court concludes that the settlement is procedurally fair. When engaging in this analysis, district courts "must pay close attention to the negotiating process." *In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 280–81 (S.D.N.Y. 2015). And it must ensure ensures that the settlement is the result of "arms-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *See In re AOL Time Warner S'holder Derivative Litig.,* No. 02-CV-6302 (SWK), 2006 WL 2572114 at *3 (S.D.N.Y. Sept. 6, 2006) (citing *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001)).

The presumption of fairness is appropriate because the settlement was reached without collusion by capable counsel experienced in shareholder derivative litigation after arm's-length negotiations. The Court concludes that both sides' counsel are capable and experienced. *See*

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel") (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also* Dkt. No. 133, Ex. A, BLF Resume.

In addition, as the parties' papers make clear, this settlement would not have been reached but for the hard work of Magistrate Judge Sarah Netburn. *See* Dkt. No. 133, Brown Decl. ¶ 29, 42; *see also Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd,* 559 F. App'x 151 (3d Cir. 2014) (recognizing a presumption of fairness when a settlement is reached with the assistance of a mediator). Taking into account the record as a whole, the Court concludes that the presumption of fairness applies and that the settlement is procedurally fair.

### B. The Settlement Is Substantively Fair

Before approving the settlement of a derivative action, the Court must be satisfied that the compromise is fair, reasonable, and adequate. *See, e.g., Mautner v. Hirsch*, No. 91-CV-4928 (WCC), 1992 WL 106318, at *3 (S.D.N.Y. May 4, 1992). In the context of shareholder derivative actions, the factors enunciated in *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974), inform the Court's evaluation of whether a settlement is fair, reasonable, and adequate. *See In re AOL Time Warner S'holder Derivative Litig.*, No. 02-CV-6302 (SWK), 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2006). In particular, the Court focuses on (1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to the proposed settlement. *Id.*; *see also In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d

277, 281 (S.D.N.Y. 2015) (applying *Grinnell* factors in shareholder derivative action). The Court finds that these factors, individually and weighed against one another, support approval of the settlement.

The Court first acknowledges that litigation through trial would be complex and expensive. Were this litigation to continue, Derivative Plaintiff would have to conduct expensive and time-consuming discovery in multiple continents, including potential deposition and trial testimony of fact and expert witnesses in China. *See* Dkt. No. 133, Brown Decl. ¶¶ 37, 40; *see also In re Advanced Battery Techs. Secs. Litig.*, 298 F.R.D. 171, 175 (S.D.N.Y. 2014) ("With respect to discovery generally, given the complexities of the issues involved in this action, thousands of pages of documents would have been reviewed and numerous depositions taken. Moreover, the [] Defendants and key witnesses are located in China, which would add tremendous complication and cost to pursue discovery."). Because this litigation is in its early stages, furthermore, Derivative Plaintiff would have to survive potential motions to dismiss, potential summary judgment motions, and prevail at trial before having a chance at recovery.

In addition, Derivative Plaintiff would shoulder substantial risk were this litigation to proceed. As he notes in his briefing, the claims against many of the Defendants rely on circumstantial evidence. *See* Dkt. No. 132 at 13. Beyond potential issues marshaling sufficient evidence, some of the claims would also be difficult to prove at trial. In particular, the claims against the former outside directors would plausibly be construed as *Caremark* claims, insofar as they turn on alleged failures to conduct proper oversight. As the *Caremark* court noted, this is perhaps "the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

Establishing liability, therefore, would by no means be a guarantee, and continuing to litigate would pose significant risks for the Derivative Plaintiff.

Even if Derivative Plaintiff could prevail on liability, proof of damages caused by the Individual Defendants would be difficult to marshal. This is particularly true because the litigation would inevitably entail competing expert testimony, which introduces natural uncertainty to the process of estimating damages. *See In re Bear Stearns Cos.,* 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). "The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable." *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, 2003 WL 21982207, (2d Cir. Aug. 20, 2003). Establishing damages would be further complicated by the nature of the claims asserted in this litigation. *See In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 293 (S.D.N.Y. 1996).

Further supporting approval of the settlement is the potential difficulty that Derivative Plaintiff would face in collecting on a judgment in light of the Settling Defendants' limited resources. *See* Dkt. No. 133, Brown Decl. ¶ 34; *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) ("[G]iven Del Global's dire financial condition, it is unlikely that the Company could withstand a substantial judgment."). Indeed, *Grinnell* also calls for consideration of whether the Defendants could withstand a greater judgment, and the risks associated with pursuing litigation in the face of Defendants' potential resource constraints bears on the analysis of substantive reasonableness. *See Hertzberg v. Asia Pulp & Paper Co.*, 197 F. Appx. 38, 41 (2d Cir. 2006) ("The Court [] assessed 'the range of reasonableness of the settlement fund in light of the best possible recovery' and determined that 'the ability of [APP] to

withstand a greater judgment' was irrelevant because plaintiffs were unlikely to recover any of whatever larger award of damages might be achieved by further litigation." (quoting *Grinnell*, 495 F.2d at 463)).

Other factors discussed in *Grinnell* and applied to the facts of this case support approval. A lack of objection, for instance, is often seen as strong evidence of the settlement's fairness. *Grinnell,* 495 F.2d at 462. "If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118. No written objections were submitted to the Court, and no objectors appeared at the fairness hearing.

The Court thus concludes that the *Grinnell* factors, whether considered independently or weight against each other, support approval of the settlement. The benefits achieved by the settlement, as compared to the potential recovery at trial, are reasonable. Furthermore, the risks posed by continued litigation color the likelihood of success were Derivative Plaintiff to continue prosecuting this action. And continued litigation would take years and would require the parties to undertake expensive and complicated discovery and motions practice. Even if the Derivative Plaintiff were to prevail, therefore, he would face even greater risk that the Settling Defendants would lack the resources to satisfy the judgment.

## II. THE ATTORNEYS' FEES AND EXPENSES ARE REASONABLE

"The equitable fund doctrine provides that a court may award fees to attorneys who have created a common fund or conferred some other substantial benefit on a class of plaintiffs." *Steiner v. Williams*, No. 99-CV-10186 (JSM), 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001). When assessing whether attorneys' fees are appropriate, courts consider the so-called *Goldberger* factors: (i) the benefit recovered in relation to the settlement; (ii) the magnitude and complexities of the litigation; (iii) the litigation risk; (iv) the quality of representation; (v)

public policy considerations; and (vi) the time and labor spent. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). In this case, the parties have stipulated to a fee and expense award of $80,000. *See* Dkt. No. 126, Ex. 1, Stipulation and Agreement of Settlement ¶ 6.1; Dkt. No. 133, Brown Decl. ¶ 45.

In negotiating this settlement, Derivative Plaintiff's counsel has secured a "substantial benefit" for 6D and its shareholders. The settlement includes a $240,000 payment from 6D's insurer that will allow 6D to resolve the related class action settlement, Case No. 15-cv-8061, without depleting the company's existing resources. *See* Dkt. No. 133, Brown Decl. ¶ 46; *see also* Dkt. No. 133, Brown Decl., Exhibit B (*In re Lihua International, Inc. Shareholder Derivative Action*, No. 1-14-cv- 03543, slip op. (S.D.N.Y.) (approving derivative settlement where the settlement contained a monetary payment from the company's insurers to be used to fund part of the settlement of a related securities class action)). The Court also concludes that the amount of work that counsel expended on this action, and the risk that they took on by prosecuting this action, favor the stipulated-to award of attorneys' fees and expenses.

Furthermore, the lodestar in this case also supports the proposed fees' reasonableness. Derivative Plaintiff's counsel devoted at least 887 hours to this litigation, which they estimate amounts to a $596,585 lodestar at their customary rates. *See* Dkt. No. 133, Brown Decl. ¶ 54. The lodestar multiplier is thus 0.13, well below what courts have deemed reasonable in other cases. *See, e.g.*, *Wal-Mart Stores,* 396 F.3d at 123 (affirming multiplier of 3.5).

Finally, in light of the efforts they expended for the benefit of the class, an incentive award of $1,500 for the Derivative Plaintiff is appropriate. Although the Derivative Plaintiff may not have undertaken significant risk in agreeing to serve as class representatives, the award he seeks is correspondingly minimal. *See Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (describing payments ranging from $2,500 to $85,000). As Derivative

Plaintiff, he has undertaken a leadership role and devoted time and energy to this litigation. And in addition to the award's reasonableness, the requested award would be paid out of the fee and expense award and would therefore not impact the rest of the settlement. *See* Dkt. No. 133, Brown Decl. ¶ 60; Dkt. No. 126, Ex. 1, Stipulation and Agreement of Settlement ¶ 6.1. The award is correspondingly adequate.

### III. CONCLUSION

For the reasons stated, the Settlement is determined to be fair, reasonable, and adequate. Accordingly, Derivative Plaintiff's Motion for Final Approval of the Derivative Settlement is GRANTED. The Court will enter the proposed Final Order and Judgment.

This resolves Dkt. Nos. 131, 132, 133, and 134.

SO ORDERED.

Dated: May 12, 2021
       New York, New York

_____
ALISON J. NATHAN
United States District Judge